IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Partners Pharmacy Services, LLC, *et al.*,[1] | Case No. 25-34698 |
| Debtors. | (Joint Administration Requested) (Emergency Hearing Requested) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE
THEIR CASH MANAGEMENT SYSTEM AND MAINTAIN EXISTING BANK
ACCOUNTS, AND (B) CONTINUE TO PERFORM INTERCOMPANY
TRANSACTIONS; AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than 4:00 p.m. (prevailing Central Time) on August 14, 2025.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion (the "Motion"):

### RELIEF REQUESTED

1.    The Debtors seek entry of interim and final orders, substantially in the forms

attached hereto as **Exhibit A** and **Exhibit B**, (a) authorizing the Debtors to: (i) operate their Cash

Management System (defined below) and maintain their existing bank accounts, including

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Arrow Envoy Holdings, LLC (5695); Arrow Pharmacy Holdings, LLC (0080); Partners of Connecticut, LLC (1828); Partners of Massachusetts, LLC (2604); Partners of New York, LLC (0039); Partners of Pennsylvania, LLC (0841); Partners Pharmacy of Florida, LLC (9364); Partners Pharmacy of Maryland, LLC (0961); Partners Pharmacy of Texas, LLC (2017); Partners Pharmacy of Virginia, LLC (6232); Partners Pharmacy Services, LLC (9038); Partners Pharmacy Shell Point, LLC (1616); Partners Pharmacy, L.L.C. (4578); and Solutions Homecare, L.L.C. (1583). The Debtors' service address in these chapter 11 cases is 173 Bridge Plaza North, Fort Lee, NJ 07024.

honoring certain pre-petition and post-petition obligations related thereto, and (ii) continue intercompany transactions and funding consistent with the Debtors' historical practices, subject to the terms described in this Motion; and (b) granting related relief, including scheduling a final hearing to consider approval of the Motion on a final basis.

## JURISDICTION AND VENUE

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors consent to entry of a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested are sections 105, 345, 363, and 553 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 1075-1 and 9013-1(i) of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules").

## BACKGROUND

5.      On August 13, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these cases.

4929-1148-8844

6.      The Debtors serve the medication management needs of residents at skilled nursing facilities, assisted living communities, long-term care residences, long-term acute care hospitals, and institutional care facilities across the United States. These services are delivered through a network of in-house pharmacies and supported by a range of advanced technologies and capabilities, including automation systems, infusion therapy technologies, compounding services, clinical decision-support tools, and a dedicated team offering clinical support services.

7.      Additional information about the Debtors, including their business operations, corporate and capital structure, and the events leading to the filing of these cases is detailed in the *Declaration of Ronald M. Winters in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

### A.      Overview of Cash Management System

8.      To facilitate the efficient operation of their businesses, the Debtors and their non-debtor affiliates (together with the Debtors, the "Company") use an integrated, centralized cash management system (the "Cash Management System"), as illustrated on **Exhibit C** attached hereto, to collect, transfer, and disburse funds and to facilitate cash monitoring, forecasting, and reporting. The Company's accounting and finance departments maintain oversight of the Cash Management System and implement cash management controls for accepting, processing, and releasing funds, including in connection with any Intercompany Transactions (defined below).  The Company's accounting and finance departments regularly reconcile the Company's books and records to ensure that all transfers are accounted for properly.

9.      The Cash Management System is similar to those commonly employed by businesses comparable in size and scale to the Debtors to help control funds, ensure cash availability for each entity, and reduce administrative expenses by facilitating the movement of funds among multiple entities.  As described below, any disruption to the Cash Management

4929-1148-8844

System would be detrimental to the Debtors' operations and estates.  To minimize disruption and ensure a smooth transition into chapter 11, the Debtors request authority to continue operating the Cash Management System during these chapter 11 cases.  Accordingly, pursuant to sections 105(a) and 363(c) of the Bankruptcy Code, the Debtors seek authority to maintain their existing bank accounts and continue using their Cash Management System in the ordinary course.

**B.      The Bank Accounts**

10.      As of the Petition Date, the Cash Management System includes a total of 22 bank accounts maintained at First Citizens Bank (collectively, the "Bank Accounts").  The Debtors also make payments to a payroll and benefits account at Bank of America maintained by non-debtor affiliate Care Solutions, LLC (the sole beneficial owner of all Debtors).

11.      The following table describes each Bank Account in the Cash Management System:

| Account Owner | Depository Institution | Last 4 Digits of Account No. | Account Description |
|---|---|---|---|
| Partners Pharmacy Services, LLC | First Citizens Bank | 7530 | Sweep Account – sweeps funds from each Debtor's depository accounts to the main concentrated operating account |
| Partners Pharmacy Services, LLC | First Citizens Bank | 7549 | Depository Account – collections account for all non-governmental payors |
| Partners Pharmacy Services, LLC | First Citizens Bank | 7555 | Operating Account – pays all Debtors' accounts payable by ACH/EFT or wire transfer |
| Partners Pharmacy Services, LLC | First Citizens Bank | 8024 | Check-Writing Account – pays all Debtors' accounts payable by check |
| Partners Pharmacy of Texas, LLC | First Citizens Bank | 7563 | Depository Account – collections account for all non-governmental payors |
| Partners Pharmacy of Texas, LLC | First Citizens Bank | 7571 | Depository Account – collections account for governmental payors |
| Partners Pharmacy of Maryland, LLC | First Citizens Bank | 7598 | Depository Account – collections account for all non-governmental payors |
| Partners Pharmacy of Maryland, LLC | First Citizens Bank | 7603 | Depository Account – collections account for governmental payors |
| Partners Pharmacy of Florida, LLC | First Citizens Bank | 7611 | Depository Account – collections account for all non-governmental payors |
| Partners Pharmacy of Florida, LLC | First Citizens Bank | 7638 | Depository Account – collections account for governmental payors |
| Partners of Pennsylvania, LLC | First Citizens Bank | 7646 | Depository Account – collections account for all non-governmental payors |

4

| Account Owner | Depository Institution | Last 4 Digits of Account No. | Account Description |
|---|---|---|---|
| Partners of Pennsylvania, LLC | First Citizens Bank | 7652 | Depository Account – collections account for governmental payors |
| Partners of New York, LLC | First Citizens Bank | 7660 | Depository Account – collections account for all non-governmental payors |
| Partners of New York, LLC | First Citizens Bank | 7679 | Depository Account – collections account for governmental payors |
| Arrow Pharmacy Holdings, LLC | First Citizens Bank | 7687 | Depository Account – collections account for all non-governmental payors |
| Arrow Pharmacy Holdings, LLC | First Citizens Bank | 7695 | Depository Account – collections account for governmental payors |
| Partners of Connecticut, LLC | First Citizens Bank | 7709 | Depository Account – collections account for all non-governmental payors |
| Partners of Connecticut, LLC | First Citizens Bank | 7717 | Depository Account – collections account for governmental payors |
| Partners of Massachusetts, LLC | First Citizens Bank | 7725 | Depository Account – collections account for all non-governmental payors |
| Partners of Massachusetts, LLC | First Citizens Bank | 7733 | Depository Account – collections account for governmental payors |
| Partners Pharmacy, L.L.C. | First Citizens Bank | 7741 | Depository Account – collections account for all non-governmental payors |
| Partners Pharmacy, L.L.C. | First Citizens Bank | 7758 | Depository Account – collections account for governmental payors |
| Partners Pharmacy of Virginia, LLC | First Citizens Bank | 7766 | Depository Account – collections account for all non-governmental payors |
| Partners Pharmacy of Virginia, LLC | First Citizens Bank | 7774 | Depository Account – collections account for governmental payors |
| Care Solutions, LLC (non-debtor affiliate) | Bank of America | 6887 | Payroll Account – pays Debtors' and non-debtor affiliates' payroll and other employee benefits |

## C.    The Bank Fees

12.    The Debtors incur periodic service charges and other fees in connection with their Cash Management System (collectively, the "Bank Fees").  The Debtors incur approximately $11,000 per month in Bank Fees to First Citizens Bank, which are generally due and paid monthly. As of the Petition Date, the Debtors are current on their Bank Fees.  The Debtors seek authority to continue paying Bank Fees in the ordinary course consistent with historical practices, including pre-petition Bank Fees.

5

D.     **Corporate Credit Cards**

13.     The Debtors use corporate credit cards issued by Bank of America (collectively, the "Corporate Credit Cards").  As of the Petition Date, eight employees, each a director of their respective sites, hold Corporate Credit Cards that they typically use to cover miscellaneous expenses incurred in the ordinary course of business.  The Debtors pay the amounts outstanding on the Corporate Credit Cards directly to the card issuer.

14.     The Debtors' ability to continue using the Corporate Cards in the ordinary course is essential to ongoing operations and assures the relevant employees and vendors that they will be able to incur business expenses without having to seek reimbursement from their own account or otherwise seek proper remittance.  Consequently, the continued functionality of the Corporate Credit Cards is critical to avoid disruptions to the Debtors' ordinary business operations.

15.     The average monthly balance on the Corporate Credit Cards is approximately $60,000.  The Debtors estimate that they owe approximately $60,000 on the Corporate Credit Cards as of the Petition Date.  The Debtors seek authority to continue paying the Corporate Credit Cards in the ordinary course consistent with historical practices, including charges incurred pre-petition.

E.     **The Debtors' Intercompany Transactions**

16.     In the ordinary course of business, the Debtors maintain business relationships with each other and the non-debtor affiliates and regularly engage in transactions through various intercompany arrangements (the "Intercompany Transactions") resulting in intercompany receivables and payables (the "Intercompany Balances").[2]  At any given time, there may be Intercompany Balances owing between Debtor entities and between the Debtors and their non-

---

[2]   This Motion provides an overview of the Debtors' typical Intercompany Transactions.  The Debtors, however, seek relief with respect to all Intercompany Transactions, not only those described in this Motion.

4929-1148-8844

debtor affiliates.  Such Intercompany Transactions arise, among other ways, pursuant to: (a) the provision of corporate services by certain entities for the benefit of other entities and (b) arrangements pursuant to which certain entities satisfy ordinary course obligations on account of other entities.

17.     The Company engages in Intercompany Transactions between Debtors and between Debtors and non-debtor affiliates.  For example, all Debtors' collection accounts are swept into a sweep account (ending 7530) maintained by debtor Partners Pharmacy Services, LLC and then into a main operating account (ending 7555) also maintained by debtor Partners Pharmacy Services, LLC.  Those funds are then used to pay the Debtors' accounts payable.  These series of transactions create Intercompany Balances among the applicable entities.  For another example, the accounting and finance services provided by non-debtor affiliate Care One, LLC are booked as accounts payable on the Debtors' books of account, thereby creating Intercompany Balances among the applicable entities.  The largest Intercompany Balances that the Debtors anticipate settling in the ordinary course during these chapter 11 are monthly premiums of approximately $16,600 and quarterly premiums of approximately $81,700 on automobile, cyber, management liability, property, workers' compensation, and umbrella insurance policies, all held in the name of non-debtor affiliate Care One, LLC, under which the Debtors are named insureds.

18.     Intercompany Balances are either (a) cash settled; (b) documented in the Company's books and records; or (c) "netted" against one another if multiple Intercompany Balances exist between the same two entities.  Each payment from a Debtor and each bookkeeping entry between Debtors and between Debtors and non-debtor affiliates on account of Intercompany Transactions are essential components of the Cash Management System.  The Debtors maintain, and will continue to maintain, records of these transfers of cash and bookkeeping entries on a post-

7

petition basis (each, a "Post-Petition Intercompany Transaction") and can ascertain, trace, and account for Post-petition Intercompany Transactions, including any Post-Petition Intercompany Transactions that reconcile Intercompany Balances by "netting" outstanding amounts due and owing.[3]

19.     The Debtors' ability to engage in Post-Petition Intercompany Transactions is critical to ensure uninterrupted operations.  If the Intercompany Transactions were discontinued, the Cash Management System and the Debtors' operations would be disrupted unnecessarily to the detriment of the Debtors, their vendors, creditors, and other stakeholders. Accordingly, the Debtors request authority to honor any obligations associated with pre-petition Intercompany Transactions and to continue entering into ordinary course Post-Petition Intercompany Transactions (including with respect to netting or setoffs).  The Debtors also request that all valid post-petition Intercompany Balances owed to a Debtor or non-debtor affiliate on account of an Intercompany Transaction with a Debtor be afforded administrative expense priority pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code.  This relief will ensure that each entity receiving payments from a Debtor or benefiting from a payment made by a Debtor on behalf of such entity will continue to bear ultimate repayment responsibility for such ordinary course transactions, thereby reducing the risk that these transactions would jeopardize the recoveries available to each Debtor's respective creditors.

### F.     The Business Forms

20.     As part of the Cash Management System, the Debtors use a variety of preprinted business forms (including checks, letterhead, correspondence forms, invoices, and other business

---

[3]  For the avoidance of doubt, the Debtors request authority to set off mutual pre-petition obligations and mutual post-petition obligations relating solely to Intercompany Transactions and will not set off any pre-petition obligations against any post-petition obligations.

forms) in the ordinary course of business (collectively, the "Business Forms"). The Debtors also maintain books and records to document their financial results and a wide array of operating information (collectively, the "Books and Records"). To avoid a significant disruption to their business operations and to minimize administrative expense to their estates, the Debtors request authority to continue using all of the Business Forms and Books and Records in a manner consistent with pre-petition practice, without reference to the Debtors' status as chapter 11 debtors in possession.

**BASIS FOR RELIEF**

**A.    The Court Should Approve the Debtors' Continued Use of the Cash Management System as Essential to the Debtors' Operations**

21.    Although the Debtors maintain the Bank Accounts as part of an established Cash Management System, the United States Trustee's Operating Guidelines for Chapter 11 Cases (the "U.S. Trustee Guidelines") require that the Debtors, as debtors in possession, take certain actions with respect to their pre-petition Bank Accounts in order for the U.S. Trustee to supervise the administration of the chapter 11 cases. These requirements are designed to draw a clear line of demarcation between pre-petition and post-petition transactions and operations, and prevent the inadvertent post-petition payment of pre-petition claims.

22.    The Debtors understand that First Citizens Bank is a well-capitalized and financially stable institution that is federally insured by the Federal Deposit Insurance Corporation ("FDIC"). Consequently, First Citizens Bank is well-positioned to perform the depository and cash management functions during these chapter 11 cases and the Debtors should be allowed to continue using the Bank Accounts consistent with historical practices.

23.    The Cash Management System is highly integrated and crucial to the ongoing stability of the Debtors' businesses and transition into chapter 11. Requiring the Debtors to transfer

9

the Bank Accounts at First Citizens Bank would place a needless and excessive administrative burden on the Debtors and impose significant, value-destructive costs to the Debtors' estates. Additionally, any effort to relocate the Bank Accounts to an authorized depository could have tax or regulatory impacts and would require extensive diligence and analysis to ensure that no unwarranted or detrimental effects would stem from such a transition.

24.     Section 345(a) of the Bankruptcy Code authorizes deposits of money as "will yield the maximum reasonable net return on such money, taking in account the safety of such deposit or investment." 11 U.S.C. § 345(a).  For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code requires debtors to obtain, from the entity with which the money is deposited, a bond in favor of the United States secured by the undertaking of an adequate corporate surety, or "the deposit of securities of the kind specified in section 9303 of title 31," unless the court "for cause" orders otherwise. 11 U.S.C. §§ 345(a)–(b).

25.     Enforcement of the U.S. Trustee's requirements without modification would significantly disrupt the Debtors' businesses.  Indeed, as explained above, the Bank Accounts comprise an established Cash Management System that the Debtors must maintain to ensure collections and disbursements occur without interruption.  The Cash Management System allows the Debtors to centrally manage cash and includes the necessary accounting controls to enable the Debtors to trace funds through the system and ensure that all transactions are adequately documented and readily ascertainable.  While the chapter 11 cases are pending, the Debtors will continue to maintain detailed records reflecting all transfers of funds.

4929-1148-8844

26.     Accordingly, to avoid delays in payments to administrative creditors, to ensure a smooth transition into chapter 11, and to maximize the value of their estates, the Debtors should be permitted to continue to maintain their existing Bank Accounts, open new accounts, and close existing accounts as needed.

27.     Both as part of the Motion and in other motions that have been concurrently filed, the Debtors are requesting authority to pay, in their discretion, certain pre-petition obligations. With respect to certain of these obligations, the Debtors may have issued checks prior to the Petition Date that have yet to clear the banking system.  The Debtors request that the banks be authorized and directed to rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored.  The Debtors further request that any orders granting this Motion specify that the banks will not have any liability to any party for relying on such representations.  This relief is reasonable and appropriate because the banks are not able to independently verify or audit whether a particular pre-petition check may be honored in accordance with an order of the Court or otherwise.

28.     Allowing the Debtors to use their pre-petition Cash Management System and engage in related "routine transactions" comports with applicable provisions of the Bankruptcy Code.  In particular, section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).  The purpose of this section is to provide a debtor with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court.  *In re Roth Am., Inc.,* 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation

11

of the estate's assets.") (citations omitted); *In re Vision Metals, Inc.,* 325 B.R. 138, 145 (Bankr. D. Del. 2005) (same).  The authority granted by section 363(c)(1) of the Bankruptcy Code extends to a debtor in possession's continued use of its customary cash management system and thus supports the relief requested.  *See, e.g., In re Nellson Nutraceutical, Inc.,* 369 B.R. 787, 796 (Bankr. D. Del. 2007) (noting that courts have shown a reluctance to interfere in a debtor's making of routine, day-to-day business decisions) (citations omitted); *Vision Metals*, 325 B.R. at 142 ("[W]hen a Chapter 11 debtor-in-possession continues to operate its business, as permitted by section 1108, no court authorization is necessary for the debtor to enter transactions that fall within the ordinary course of its business.").

29.     To the extent that use of the existing Cash Management System falls outside the ordinary course of business, such use is permitted by sections 363(b)(1) and 105(a) of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code further provides that the Court may "issue any order . . . that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.  11 U.S.C. § 105(a).  As described above, the continuation of the Cash Management System is necessary and appropriate and will allow the Debtors to expeditiously carry out these chapter 11 cases, while still providing protections to the Debtors' creditors by ensuring that the Debtors' cash is used appropriately and in accordance with the applicable provisions of the Bankruptcy Code and the Court's orders.

**B.     The Court Should Authorize First Citizens Bank to Continue to Maintain, Service, and Administer the Bank Accounts in the Ordinary Course**

30.     The Debtors request that the Court authorize and direct First Citizens Bank to receive, process, honor, and pay any and all checks, electronic fund transfers, credit cards

4929-1148-8844

(including the Corporate Credit Cards), ACH payments and other instructions, and drafts payable through, or drawn or directed on, the Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto, irrespective of whether such checks, drafts, electronic fund transfers, credit card (including the Corporate Credit Cards), or ACH payments are dated prior or subsequent to the Petition Date.  The Debtors also request that First Citizens Bank is not held liable to the Debtors or to their estates to the extent it honors a pre-petition check or other item drawn on any account that is the subject of this Motion, either at the direction of the Debtors or in a good-faith belief that the Court has authorized such pre-petition check or item to be honored. Such relief is reasonable and appropriate because First Citizens Bank is not in a position to independently verify or audit whether the Debtors may pay a particular item in accordance with an order by this Court or otherwise.  If the Debtors are denied the opportunity to conduct transactions by debit, electronic fund, ACH payments, or other methods used in the ordinary course of business, the Debtors would have difficulty performing on their contracts and the Debtors' business operations would be disrupted unnecessarily, burdening the Debtors and their creditors with additional costs.

### C.  The Debtors Should Be Granted Authority to Use Existing Business Forms

31.     The Debtors request that they be authorized to continue to use their Business Forms and Books and Records, substantially in the form existing immediately before the Petition Date, without reference to their status as debtors in possession.  Parties doing business with the Debtors will be aware of their status as debtors in possession because they will receive notice of these chapter 11 cases, and changing forms (such as letterhead) would be an unnecessary additional expense and unduly burdensome.

32.     The Debtors should be permitted to maintain their existing Books and Records rather than open a new set as required under the U.S. Trustee Guidelines.  The Debtors use a

4929-1148-8844

sophisticated recordkeeping system that enables them to consolidate their Books and Records for financial reporting purposes while maintaining separate records on an entity-by-entity basis to track the operations and results of individual entities across their corporate structure. Continued use of the Debtors' current Books and Records, therefore, will maximize efficiency and decrease administrative burden while maintaining the precise entity-by-entity reporting contemplated by the U.S. Trustee.

**D.     The Court Should Authorize the Debtors to Continue Engaging in Intercompany Transactions and Grant Administrative Expense Status to Post-Petition Intercompany Balances**

33.     Allowing the Debtors to continue engaging in Intercompany Transactions is in the best interests of the Debtors' estates and their creditors, and the Debtors seek authority to enter into such Intercompany Transactions in the ordinary course of business.  The Debtors will continue to maintain records of Intercompany Transactions, including records of all current intercompany accounts receivables and payables.  If the Intercompany Transactions were to be discontinued, the Cash Management System and related administrative controls would be disrupted to the Debtors' and their estates' detriment.   The Debtors' continued performance of the Intercompany Transactions is in the best interest of the Debtors' estates and their creditors.

34.     Further, to ensure that the Debtors' creditors are sufficiently protected, the Debtors request that each payment (or other transfer of cash, whether to or from the Debtors) from a Debtor to another Debtor under any Intercompany Transaction, whether arising or initiated pre-petition or post-petition, be granted administrative expense status under section 503(b) of the Bankruptcy Code provided that all Intercompany Claims shall be junior and subordinate to any superpriority administrative expense claims or liens granted in any order approving post-petition financing or

14

the use of cash collateral.[4]  This relief will ensure that each entity receiving payments from a Debtor will continue to bear ultimate repayment responsibility for such ordinary course transaction, thereby reducing the risk that these transactions would jeopardize the recoveries available to each Debtors' respective creditors.

E.     **Cause Exists to Waive the U.S. Trustee Guidelines Regarding Authorized Depositories on an Interim and Final Basis**

35.     To the extent the Cash Management System does not strictly comply with section 345 of the Bankruptcy Code, the Debtors seek a waiver of the deposit and investment requirements.  Section 345(a) of the Bankruptcy Code authorizes a debtor in possession to make deposits or investments of estate money in a manner "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  11 U.S.C. § 345(a).  For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of an adequate corporate surety, "unless the court for cause orders otherwise."  11 U.S.C. § 345(b).  Alternatively, the debtor may require the entity to deposit governmental securities pursuant to 31 U.S.C. § 9303.[5]  Additionally, under the U.S. Trustee Guidelines, debtors in possession must, among other things, close pre-petition bank accounts and

---

[4]  Notwithstanding the administrative expense status requested for the Intercompany Transactions among Debtors, each Debtor reserves the right to dispute any Intercompany Transaction (or payment made on account of an Intercompany Transaction) on any ground.

[5]  Section 9303 of title 31 provides that when a person is required by law to give a surety bond, that person, in lieu of a surety bond, may instead provide an eligible obligation, designated by the Secretary of the Treasury, as an acceptable substitute for a surety bond.  31 U.S.C. § 9303.

4929-1148-8844

open new "debtor in possession" operating, payroll, and tax accounts at one or more authorized depositories.

36.     To the extent that the Cash Management System does not strictly comply with section 345 of the Bankruptcy Code, cause exists to waive the deposit and investment requirements set forth therein.  Courts may waive compliance with section 345 of the Bankruptcy Code and the U.S. Trustee Guidelines for "cause."  In evaluating whether "cause" exists, courts consider several factors, including: (a) the sophistication of the debtor's business; (b) the size of the debtor's business operations; (c) the amount of the investments involved; (d) the bank ratings (Moody's and Standard & Poor) of the financial institutions where the debtor in possession funds are held; (e) the complexity of the case; (f) the safeguards in place within the debtor's own business for ensuring the safety of the funds; (g) the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions; (h) the benefit to the debtor; (i) the harm, if any, to the debtor; (j) the harm, if any, to the estate; and (k) the reasonableness of the debtor's request for relief from section 345(b) of the Bankruptcy Code requirements in light of the overall circumstances of the case.  *In re Serv. Merch. Co., Inc*., 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

37.     The Bank Accounts are vital to the Cash Management System.  Requiring the Debtors to transfer funds to other banks would be unduly burdensome to the Debtors' operations, which span multiple jurisdictions, and could have tax consequences to the detriment of the Debtors' estates.  In addition, the Debtors believe that the banks at which the Debtors have their Bank Accounts are well-capitalized and financially stable.  Therefore, cause exists to waive the deposit and investment requirements of section 345 of the Bankruptcy Code.

### PROCESSING OF CHECKS AND ELECTRONIC FUND TRANSFERS

38.     The Debtors have sufficient funds to pay the amounts described in this Motion by virtue of access to debtor-in-possession financing.  Based on the Cash Management System, the

16

4929-1148-8844

Debtors also believe that checks or electronic fund transfer requests, other than those relating to authorized payments, will not be honored inadvertently.   Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or electronic fund transfer requests in respect of the relief requested in this Motion.

**DEBTORS SATISFY REQUIREMENTS OF BANKRUPTCY RULE 6003**

39.     Pursuant to Local Rule 9013-1, the Debtors request emergency consideration of this Motion under Bankruptcy Rule 6003, which provides that the Court may grant relief within the first twenty-one days after the Petition Date to the extent necessary to avoid immediate and irreparable harm.  The relief requested is essential to avoid the immediate and irreparable harm that would be caused by the Debtors' inability to transition smoothly into chapter 11.  Accordingly, the requirements of Bankruptcy Rule 6003 are satisfied.

**REQUEST FOR WAIVER OF STAY IMPOSED BY BANKRUPTCY RULE 6004**

40.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h).  As described above, the relief requested in this Motion is necessary for the Debtors to operate without interruption and to preserve value for their estates.  Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable, as the exigent nature of the relief requested justifies immediate relief.

**RESERVATION OF RIGHTS**

41.     Nothing contained in this Motion is intended to be or shall be deemed as (i) an implication or admission as to the validity of any claim against the Debtors; (ii) a waiver or

17

limitation of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim; (iii) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law; (iv) a waiver of the obligation of any party in interest to file a proof of claim; (v) an agreement or obligation to pay any claims; (vi) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (vii) an admission as to the validity of any liens satisfied pursuant to this Motion; or (viii) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief requested, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any other party in interest's rights to dispute such claim subsequently.

## NOTICE

42.     Notice of this Motion will be served on the following parties or their respective counsel: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the Debtors' thirty largest unsecured creditors (on a consolidated basis); (c) the Internal Revenue Service; (d) the United States Attorney's Office for the Southern District of Texas; (e) the state attorneys general for all states in which the Debtors conduct business; (f) Glenn Agre Bergman & Fuentes LLP, as counsel to CS One, LLC; (g) Allen Stovall Neuman & Ashton LLP, as counsel to Cardinal Health 110, LLC and Cardinal Health 112, LLC; (h) First Citizens Bank; and (i) any party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(d).  Given the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

43.     WHEREFORE, the Debtors respectfully request that the Court grant (i) the relief requested in this Motion by entering the proposed interim and final orders, substantially in the

18

4929-1148-8844

forms attached as **Exhibit A** and **Exhibit B**, and (ii) such other and further relief as the Court

deems just and proper.

Dated: August 13, 2025          Respectfully submitted,
       Washington, DC

*/s/ Patrick J. Potter*
Patrick J. Potter (S.D. Tex. Fed. No. 3089812)
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1200 Seventeenth Street, NW
Washington, DC 20036
Telephone:(202) 663-8928
Facsimile: (202) 663-8007
Email:  patrick.potter@pillsburylaw.com

-and-

Dania Slim (S.D. Tex. Fed. No. 3049178)
Amy West (*pro hac vice* pending)
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 858-1000
Facsimile: (212) 858-1500
Email:  dania.slim@pillsburylaw.com
       amy.west@pillsburylaw.com

-and-

L. James Dickinson (Tex. Bar. No. 24105805)
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
609 Main Street, Suite 2000
Houston, TX 77002
Telephone: (713) 276-7654
Facsimile: (713) 276-7373
Email: james.dickinson@pillsburylaw.com

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

4929-1148-8844

## CERTIFICATE OF ACCURACY

In accordance with Local Rule 9013-1(i), I hereby certify that the foregoing statements regarding the nature of the emergency are true and accurate to the best of my knowledge.

*/s/ Patrick J. Potter*
Patrick J. Potter

## CERTIFICATE OF SERVICE

I certify that on August 13, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.  Additionally, the foregoing document will be served as set forth in a forthcoming affidavit filed by the Debtors' proposed claims agent.

*/s/ Patrick J. Potter*
Patrick J. Potter

**<u>Exhibit A</u>**

*Proposed Interim Order*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Partners Pharmacy Services, LLC, *et al.*,[1] | Case No. 25-34698 |
| Debtors. | (Joint Administration Requested) |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM AND MAINTAIN EXISTING BANK ACCOUNTS, AND (B) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS; AND (II) GRANTING RELATED RELIEF

Upon the motion (the "'Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order") (a) authorizing the debtors to (i) continue to operate their cash management system and maintain existing bank accounts and (ii) continue to perform intercompany transactions, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these cases

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Arrow Envoy Holdings, LLC (5695); Arrow Pharmacy Holdings, LLC (0080); Partners of Connecticut, LLC (1828); Partners of Massachusetts, LLC (2604); Partners of New York, LLC (0039); Partners of Pennsylvania, LLC (0841); Partners Pharmacy of Florida, LLC (9364); Partners Pharmacy of Maryland, LLC (0961); Partners Pharmacy of Texas, LLC (2017); Partners Pharmacy of Virginia, LLC (6232); Partners Pharmacy Services, LLC (9038); Partners Pharmacy Shell Point, LLC (1616); Partners Pharmacy, L.L.C. (4578); and Solutions Homecare, L.L.C. (1583).  The Debtors' service address in these chapter 11 cases is 173 Bridge Plaza North, Fort Lee, NJ 07024.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, their creditors and all parties in interest; and upon all of the proceedings had before the Court after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**,

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The final hearing on the Motion shall be held on September __, 2025 at ___ (prevailing Central Time) (the "<u>Final Hearing</u>").  Any objections or responses to entry of the proposed final order shall be filed on or before 4:00 p.m. (prevailing Central Time) on September 3, 2025.  If no objections to entry of a final order on the Motion are timely received, then this Court may enter a final order without need for the Final Hearing.

3.      Subject to the limitations of this Interim Order, the Debtors are authorized, but not directed, to: (a) continue using the Cash Management System as described in the Motion and honor any pre-petition obligations related to the use thereof; (b) designate, maintain, close, and continue to use on an interim basis any or all of their existing Bank Accounts, including, but not limited to, the Bank Accounts identified in the Motion, in the names and with the account numbers existing immediately before the Petition Date; (c) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, electronic fund transfers, ACH transfers, and other debits or electronic means; (d) treat their pre-petition Bank Accounts for all purposes as debtor-in-possession accounts; and (e) open new debtor-in-possession Bank Accounts in accordance with

the terms of this Interim Order; *provided*, that in the case of each of clauses (a) through (e), such action is taken in the ordinary course of business and consistent with pre-petition practices.

4.     The Debtors are authorized, but not directed, to continue using, in their present form, the Business Forms, as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date, and maintain and continue using, in their present form, the Books and Records; *provided*, that once the Debtors have exhausted their existing stock of Business Forms, they shall ensure that any new Business Forms are clearly labeled with the "Debtor in Possession" designation as soon as reasonably practicable to do so. To the extent the Debtors print any new checks or use any electronic Business Forms, they shall include the "Debtor in Possession" designation and the corresponding bankruptcy case number on all such checks within 10 business days.

5.     Except as otherwise provided in this Interim Order and only to the extent funds are available in each applicable Bank Account, First Citizens Bank is directed to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course, and to receive, process, honor, and pay any and all checks, drafts, electronic fund transfers, and ACH transfers issued, whether before or after the Petition Date, and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.

6.     First Citizens Bank is authorized to charge, and the Debtors are authorized to pay, honor, or allow any reasonable Bank Fees or charges associated with the Bank Accounts, and charge back returned items to the Bank Accounts in the ordinary course and consistent with pre-petition practices.

3

7.      As soon as practicable after entry of this Interim Order, the Debtors shall serve a copy of this Interim Order on First Citizens Bank.

8.      The Debtors are authorized to: (a) pay undisputed pre-petition amounts outstanding as of the Petition Date, if any, owed in the ordinary course to First Citizens Bank as service charges for the maintenance of the Cash Management System; and (b) reimburse First Citizens Bank for any claims arising before or after the Petition Date in connection with customer checks deposited with First Citizens Bank that have been dishonored or returned as a result of insufficient funds in the Bank Accounts in the ordinary course, to the same extent the Debtors were responsible for such items prior to the Petition Date.

9.      The Debtors are authorized, but not directed, to continue issuing Corporate Credit Cards and reimbursing expenses incurred on the Corporate Credit Cards in the ordinary course of business consistent with pre-petition practices, including by paying obligations outstanding with respect thereto and applying any charges against pre-petition deposits on a pre-petition and post-petition basis, subject to the limitations of this Interim Order and any other orders of this Court. The Debtors are authorized, but not directed, to continue to use the Corporate Credit Cards in the ordinary course of business, to honor all past and future contractual obligations under the Corporate Credit Cards, and to make timely payments on account of charges that were made under the Corporate Credit Cards prior to the Petition Date.

10.     The Debtors are authorized to enter into and engage in the Intercompany Transactions, and to take any actions related thereto on the same terms as, and materially consistent with, the Debtors' operation of the business in the ordinary course and consistent with historical practice during the pre-petition period.  In connection therewith, the Debtors shall continue to maintain current records with respect to all transfers of cash so that all transactions, including the

4929-1148-8844

Intercompany Transactions, may be readily ascertained, traced, and recorded properly on applicable intercompany accounts.  The Debtors shall provide a report to counsel to any committee appointed in these cases, if any, the DIP Lenders and the U.S. Trustee upon request describing all transfers of cash constituting Intercompany Transactions (including, for each such transaction, the name of the Debtor transferor, the name of the transferee, and the amount of the transfers).  Each payment (or other transfer of cash, whether to or from the Debtors) from a Debtor to another Debtor under any post-petition Intercompany Transaction is hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code; *provided* that all Intercompany Claims shall be junior and subordinate to any superpriority administrative expense claims or liens granted in any order approving post-petition financing or the use of cash collateral (collectively, the "DIP Orders").  All transfers of cash to non-debtor affiliates will be reported in the monthly operating reports as disbursements of the Debtors.

11.     The Debtors are authorized, but not directed, to set off mutual post-petition obligations relating to Intercompany Claims through the Cash Management System. In connection therewith, the Debtors shall continue to maintain current records with respect to all transfers of cash so that all transactions, including Intercompany Transactions, may be readily ascertained, traced, and recorded properly on applicable intercompany accounts.

12.     Any agreements existing between the Debtors and First Citizens Bank shall continue to govern the post-petition cash management relationship between the Debtors and First Citizens Bank and, subject to applicable bankruptcy or other law, all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, offset rights and remedies afforded under such agreements shall remain in full force and effect absent further order of the Court.

13.     The Debtors are authorized, in the ordinary course and consistent with pre-petition practices, to open new bank accounts or close any existing Bank Account and enter into any ancillary agreements, including new deposit control agreements, related to the foregoing, as the Debtors may deem necessary and appropriate; *provided*, that: (a) all accounts opened by the Debtors on or after the Petition Date shall be at depositories (i) insured with the FDIC and (ii) designated as an authorized depository by the U.S. Trustee; and (b) such bank agrees to be bound by the terms of this Interim Order.  The Debtors shall provide seven days' prior written notice to the U.S. Trustee, counsel to the DIP Lenders and counsel to any statutory committee appointed in these chapter 11 cases of the opening or closure of such account, email notice being sufficient; *provided* that all accounts opened by any of the Debtors on or after the Petition Date at any bank shall, for purposes of this Interim Order, be deemed a Bank Account as if it had been listed under paragraph 11 of the Motion; *provided further* that such opening or closure shall be timely reported in the Debtors' monthly operating reports.

14.     The relief granted in this Interim Order is extended to any new bank account opened by the Debtors after the date hereof and pursuant to the terms of this Interim Order.

15.     In the event that any third party deposits funds (whether before, on or after, the Petition Date) into a Bank Account other than the Bank Account identified by the Debtors to such third party, such funds shall as soon as reasonably practicable be swept into the correct account. For the avoidance of doubt, if a Debtor or non-debtor affiliate sends funds to a Debtor or non-debtor affiliate, and such funds should be placed into another Debtor or non-debtor affiliate account, the Company reserves the right, without need for a hearing or order, to sweep such funds into the correct account.

4929-1148-8844

16.     To the extent that any of the Debtors' Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code and any provision of the U.S. Trustee Guidelines, the Debtors shall have forty-five (45) days from the Petition Date, without prejudice to seeking an additional extension or extensions, to come into compliance with section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines; *provided*, that nothing herein shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached. The Debtors may obtain a further extension of the time period set forth in this paragraph by entering into a written stipulation with the U.S. Trustee and filing such stipulation on the Court's docket without the need for further order.

17.     Notwithstanding any other provision of this Interim Order, should First Citizens Bank honor a pre-petition check or other item drawn on any account that is the subject of this Interim Order (a) at the direction of the Debtors to honor such pre-petition check or item; (b) in a good faith belief that the Court has authorized such pre-petition check or item to be honored; or (c) as the result of an innocent mistake made despite implementation of customary item handling procedures, First Citizens Bank shall not be deemed to be nor shall be liable to the Debtors or their estates or otherwise be in violation of this Interim Order.  Without limiting the foregoing, First Citizens Bank may rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of this Court, and First Citizens Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

18.     Nothing in this Interim Order constitutes (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or nonbankruptcy

4929-1148-8844

law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates.  Any payment made pursuant to this Interim Order is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

19.     Notwithstanding the relief granted in this Interim Order, any payment made or to be made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with the DIP Orders, including any budget attached thereto.  Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

20.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

21.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion under the circumstances and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

22.     Notwithstanding the applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

23.     The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

24.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

Signed: _____

                          United States Bankruptcy Judge

4929-1148-8844

**<u>Exhibit B</u>**

*Proposed Final Order*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Partners Pharmacy Services, LLC, *et al.*,[1] | Case No. 25-34698 |
| Debtors. | (Joint Administration Requested) |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM AND MAINTAIN EXISTING BANK ACCOUNTS, AND (B) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS; AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "'Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), (a) authorizing the debtors to (i) continue to operate their cash management system and maintain existing bank accounts and (ii) continue to perform intercompany transactions, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these cases

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Arrow Envoy Holdings, LLC (5695); Arrow Pharmacy Holdings, LLC (0080); Partners of Connecticut, LLC (1828); Partners of Massachusetts, LLC (2604); Partners of New York, LLC (0039); Partners of Pennsylvania, LLC (0841); Partners Pharmacy of Florida, LLC (9364); Partners Pharmacy of Maryland, LLC (0961); Partners Pharmacy of Texas, LLC (2017); Partners Pharmacy of Virginia, LLC (6232); Partners Pharmacy Services, LLC (9038); Partners Pharmacy Shell Point, LLC (1616); Partners Pharmacy, L.L.C. (4578); and Solutions Homecare, L.L.C. (1583).  The Debtors' service address in these chapter 11 cases is 173 Bridge Plaza North, Fort Lee, NJ 07024.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, their creditors and all parties in interest; and upon all of the proceedings had before the Court after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**,

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      Subject to the limitations of this Final Order, the Debtors are authorized, but not directed, to: (a) continue using the Cash Management System as described in the Motion and honor and pre-petition obligations related to the use thereof; (b) designate, maintain, close, and continue to use on a final basis any or all of their existing Bank Accounts, including, but not limited to, the Bank Accounts identified in the Motion, in the names and with the account numbers existing immediately before the Petition Date; (c) deposit funds in and withdraw funds from the Bank Accounts by all the usual means, including checks, electronic fund transfers, ACH transfers, and other debits or electronic means; (d) treat their pre-petition Bank Accounts for all purposes as debtor in possession accounts; and (e) open new debtor in possession Bank Accounts in accordance with the terms of this Final Order; *provided*, that in the case of each clauses (a) through (e), such action is taken in the ordinary course of business and consistent with pre-petition practices.

3.      The Debtors are authorized, but not directed, to continue using, in their present form, the Business Forms, as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date, and maintain and continue using, in their present form, the Books and Records; *provided*, that once the Debtors have exhausted their existing stock

4929-1148-8844

of Business Forms, they shall ensure that any new Business Forms are clearly labeled with the "Debtor in Possession" designation within 10 business days. To the extent the Debtors print any new checks or use any electronic Business Forms, they shall include the "Debtor in Possession" designation and the corresponding bankruptcy case number on all such checks as soon as reasonably practicable.

4. Except as otherwise provided in this Final Order and only to the extent funds are available in each applicable Bank Account, First Citizens Bank is maintained are directed to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course, and to receive, process, honor, and pay any and all checks, drafts, electronic fund transfers, and ACH transfers issued, whether before or after the Petition Date, and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.

5. First Citizens Bank is authorized to charge, and the Debtors are authorized to pay, honor, or allow any Bank Fees or charges associated with the Bank Accounts and charge back returned items to the Bank Accounts in the ordinary course and consistent with pre-petition practices.

6. As soon as practicable after entry of this Final Order, the Debtors shall serve a copy of this Final Order on First Citizens Bank.

7. The Debtors are authorized, but not directed, to: (a) pay undisputed pre-petition amounts outstanding as of the Petition Date, if any, owed in the ordinary course to First Citizens Bank as service charges for the maintenance of the Cash Management System, and (b) reimburse First Citizens Bank for any claims arising before or after the Petition Date in connection with customer checks deposited with First Citizens Bank that have been dishonored or returned as a

result of insufficient funds in the Bank Accounts in the ordinary course of business, to the same extent the Debtors were responsible for such items prior to the Petition Date.

8.      The Debtors are authorized, but not directed, to continue issuing Corporate Credit Cards and reimbursing expenses incurred on the Corporate Credit Cards in the ordinary course of business consistent with pre-petition practices, including by paying obligations outstanding with respect thereto and applying any charges against pre-petition deposits on a pre-petition and post-petition basis, subject to the limitations of this Final Order and any other orders of this Court.  The Debtors are authorized, but not directed, to continue to use the Corporate Credit Cards in the ordinary course of business, to honor all past and future contractual obligations under the Corporate Credit Cards, and to make timely payments on account of charges that were made under the Corporate Credit Cards prior to the Petition Date.

9.      The Debtors are authorized, but not directed, to enter into and engage in the Intercompany Transactions, and to take any actions related thereto on the same terms as, and materially consistent with, the Debtors' operation of the business in the ordinary course and consistent with historical practice during the pre-petition period.  In connection therewith, the Debtors shall continue to maintain current records with respect to all transfers of cash so that all transactions, including the Intercompany Transactions, may be readily ascertained, traced, and recorded properly on applicable intercompany accounts.  The Debtors shall provide a report to counsel to any committee appointed in these cases, if any, the DIP Lenders and the U.S. Trustee upon request describing all transfers of cash constituting Intercompany Transactions (including, for each such transaction, the name of the Debtor transferor, the name of the transferee, and the amount of the transfers).  Each payment (or other transfer of cash, whether to or from the Debtors) from a Debtor to another Debtor under any post-petition Intercompany Transaction is hereby

4929-1148-8844

accorded administrative expense status under section 503(b) of the Bankruptcy Code; *provided* that all Intercompany Claims shall be junior and subordinate to any superpriority administrative expense claims or liens granted in any order approving post-petition financing or the use of cash collateral (collectively, the "DIP Orders").

10.     The Debtors are authorized, but not directed, to set off mutual post-petition obligations relating to Intercompany Claims through the Cash Management System.  In connection therewith, the Debtors shall continue to maintain current records with respect to all transfers of cash so that all transactions, including Intercompany Transactions, may be readily ascertained, traced, and recorded properly on applicable intercompany accounts.

11.     Any agreements existing between the Debtors and First Citizens Bank shall continue to govern the post-petition cash management relationship between the Debtors and First Citizens Bank and, subject to applicable bankruptcy or other law, all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, offset rights and remedies afforded under such agreements shall remain in full force and effect absent further order of the Court or, with respect to any such agreement with any Cash Management Bank (including, for the avoidance of doubt, any rights of a Cash Management Bank to use funds from the Bank Accounts to remedy any overdraft of another Bank Account to the extent permitted under the applicable deposit agreement), unless the Debtors and such Cash Management Bank agree otherwise, and any other legal rights and remedies afforded to the Cash Management Banks under applicable law shall be preserved, subject to applicable bankruptcy law.

12.     The Debtors are authorized, in the ordinary course and consistent with pre-petition practices, to open new bank accounts or close any existing Bank Account and enter into any ancillary agreements, including new deposit control agreements, related to the foregoing, as the

4929-1148-8844

Debtors may deem necessary and appropriate; *provided*, that: (a) any such new account is with First Citizens Bank and consistent with pre-petition practices or with a bank that is (i) insured with the FDIC and (ii) designated as an authorized depository by the U.S. Trustee; and (b) such bank agrees to be bound by the terms of this Final Order. The Debtors shall provide seven days' prior written notice to the U.S. Trustee, counsel to the DIP Lenders, and counsel to any statutory committee appointed in these chapter 11 cases of the opening or closure of such account, email notice being sufficient; *provided* that all accounts opened by any of the Debtors on or after the Petition Date at any bank shall, for purposes of this Final Order, be deemed a Bank Account as if it had been listed under paragraph 11 of the Motion; *provided further* that such opening and closure shall be timely reported in the Debtors' monthly operating reports.

13. The relief granted in this Final Order is extended to any new bank account opened by the Debtors after the date hereof and pursuant to the terms of this Order.

14. In the event that any third party deposits funds (whether before, on or after, the Petition Date) into a Bank Account other than the Bank Account identified by the Debtors to such third party, such funds shall as soon as reasonably practicable be swept into the correct account. For the avoidance of doubt, if a Debtor or non-debtor affiliate sends funds to a Debtor or another non-debtor affiliate, and such funds should be placed into another Debtor or non-debtor affiliate account, the Company reserves the right, without need for a hearing or order, to sweep such funds into the correct account.

15. To the extent that any of the Debtors' Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code and any provision of the U.S. Trustee Guidelines, the Debtors shall have forty-five (45) days from the Petition Date, without prejudice to seeking an additional extension or extensions, to come into compliance with section 345(b) of the Bankruptcy

Code and the U.S. Trustee Guidelines; *provided*, that nothing herein shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached. The Debtors may obtain a further extension of the time period set forth in this paragraph by entering into a written stipulation with the U.S. Trustee and filing such stipulation on the Court's docket without the need for further order.

16.     Notwithstanding any other provision of this Final Order, should First Citizens Bank honor a pre-petition check or other item drawn on any account that is the subject of this Final Order (a) at the direction of the Debtors to honor such pre-petition check or item; (b) in a good faith belief that the Court has authorized such pre-petition check or item to be honored; or (c) as the result of an innocent mistake made despite implementation of customary item handling procedures, First Citizens Bank shall not be deemed to be nor shall be liable to the Debtors or their estates or otherwise be in violation of this Final Order.  Without limiting the foregoing, First Citizens Bank may rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of this Court, and First Citizens Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

17.     Nothing in this Final Order constitutes (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or nonbankruptcy law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability,

4929-1148-8844

or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates. Any payment made pursuant to this Final Order is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

18.     Notwithstanding the relief granted in this Final Order, any payment made or to be made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with the DIP Orders, including any budget attached thereto. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

19.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

20.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion under the circumstances and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

21.     Notwithstanding the applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

22.     The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Final Order.

23.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

Signed:

_____
United States Bankruptcy Judge

4929-1148-8844

## __Exhibit C__

*Cash Management Schematic*

## Partners Pharmacy  - Cash Management Schematic



4929-1148-8844