**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Partners Pharmacy Services, LLC, *et al.*,[1] | Case No. 25-34698 |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' EMERGENCY MOTION FOR AN ORDER (I) APPROVING FORM OF
ADEQUATE ASSURANCE OF PAYMENT TO UTILITY COMPANIES;
(II) ESTABLISHING PROCEDURES FOR RESOLVING OBJECTIONS BY UTILITY
COMPANIES; (III) PROHIBITING UTILITY COMPANIES FROM ALTERING,
REFUSING, OR DISCONTINUING SERVICE; AND
(IV) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than 4:00 p.m. (prevailing Central Time) on August 14, 2025.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion (the "Motion"):

**RELIEF REQUESTED**

1.      The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Proposed Order") (i) approving the Debtors' proposed form of adequate assurance

of payment to the Utility Companies (defined below); (ii) establishing procedures for resolving

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Arrow Envoy Holdings, LLC (5695); Arrow Pharmacy Holdings, LLC (0080); Partners of Connecticut, LLC (1828); Partners of Massachusetts, LLC (2604); Partners of New York, LLC (0039); Partners of Pennsylvania, LLC (0841); Partners Pharmacy of Florida, LLC (9364); Partners Pharmacy of Maryland, LLC (0961); Partners Pharmacy of Texas, LLC (2017); Partners Pharmacy of Virginia, LLC (6232); Partners Pharmacy Services, LLC (9038); Partners Pharmacy Shell Point, LLC (1616); Partners Pharmacy, L.L.C. (4578); and Solutions Homecare, L.L.C. (1583). The Debtors' service address in these chapter 11 cases is 173 Bridge Plaza North, Fort Lee, NJ 07024.

objections by the Utility Companies relating to the adequacy of the Debtors' proposed adequate assurance; (iii) prohibiting the Utility Companies from altering, refusing, or discontinuing service to, or discriminating against, the Debtors on account of the commencement of these chapter 11 cases or outstanding pre-petition invoices; and (iv) granting related relief.

JURISDICTION AND VENUE

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors consent to entry of a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested are sections 105(a) and 366 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules").

BACKGROUND

5.      On August 13, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these cases.

6.      The Debtors serve the medication management needs of residents at skilled nursing facilities, assisted living communities, long-term care residences, long-term acute care hospitals, and institutional care facilities across the United States. These services are delivered through a network of in-house pharmacies and supported by a range of advanced technologies and capabilities, including automation systems, infusion therapy technologies, compounding services, clinical decision-support tools, and a dedicated team offering clinical support services.

7.      Additional information about the Debtors, including their business operations, corporate and capital structure, and the events leading to the filing of these cases is detailed in the *Declaration of Ronald M. Winters in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

## I.      Utility Services and Utility Companies

8.      In the ordinary course of business, the Debtors incur expenses for utility services, including electricity, gas, water, waste management, fire protection, telephone, telecommunications, security, and other similar services (collectively, the "Utility Services") from various utility companies (collectively, the "Utility Companies"), which are generally paid on a monthly basis.  A nonexclusive list of Utility Companies that provide Utility Services to the Debtors is provided in **Exhibit 1** to the Proposed Order (the "Utility Services List").

9.      Based on their monthly average for the twelve months before the Petition Date, the Debtors estimate that, on average, they spend approximately **$269,020** per month on Utility Services.

10.      Preserving uninterrupted Utility Services is essential to the Debtors' ongoing operations and to ensuring continued supply of pharmaceuticals and other resources to patient care facilities.  Should any Utility Company alter, refuse, or discontinue service, even briefly, the

Debtors' operations could be severely disrupted, and patient care could be affected.  Accordingly, it is essential that the Utility Services continue uninterrupted during these chapter 11 cases.

## II.     Proposed Adequate Assurance of Payment

11.     The Debtors intend to pay all post-petition obligations owed to the Utility Companies in a timely manner and have sufficient funds to do so.  To provide the Utility Companies with adequate assurance pursuant to section 366 of the Bankruptcy Code, the Debtors propose to deposit cash in an amount equal to approximately one half of the Debtors' average monthly cost of Utility Services (less any deposits already in place and any amounts supported by a surety bond issued in favor of any such Utility Company that are in excess of any outstanding pre-petition amounts) (the "Adequate Assurance Deposit"), calculated, where practicable, using the historical average for such payments during the twelve months before the Petition Date, into a segregated account for the benefit of the Utility Companies (the "Utility Deposit Account").  The Adequate Assurance Deposit may be adjusted by the Debtors if the Debtors terminate any of the Utility Services provided by a Utility Company, make other arrangements with certain Utility Companies for adequate assurance of payment, determine that an entity listed on the Utility Services List is not a utility company as defined by section 366 of the Bankruptcy Code, or supplement the Utility Services List to include additional Utility Companies as defined by section 366 of the Bankruptcy Code.  Based on the foregoing, the Debtors estimate that the total amount of the Adequate Assurance Deposit will be approximately **$134,510**.

## III.    Proposed Adequate Assurance Procedures

12.     Any Utility Company that is not satisfied with the Proposed Adequate Assurance may request additional or different adequate assurance of future payment (the "Adequate Assurance Procedures") pursuant to the procedures set forth below:

a.      Within three business days after the Court grants this Motion, the Debtors will e-mail, serve by mail, or otherwise expeditiously send a copy of the Motion and the order granting this Motion to the Utility Companies on the Utility Services List.

b.      The funds in the Utility Deposit Account will constitute adequate assurance for each Utility Company in the amount set forth for such Utility Company in the column labeled "Amount of Deposit to be Provided" on the Utility Services List.

c.      If an amount relating to Utility Services provided post-petition by a Utility Company is unpaid, and remains unpaid beyond any applicable grace period, such Utility Company may request a disbursement from the Utility Deposit Account by giving notice to (a) proposed counsel to the Debtors, Pillsbury Winthrop Shaw Pittman LLP, 1200 Seventeenth Street, NW, Washington, DC 20036 (Attn: Patrick J. Potter (patrick.potter@pillsburylaw.com)), Pillsbury Winthrop Shaw Pittman LLP, 31 West 52nd Street, New York, NY 10019 (Attn: Dania Slim (dania.slim@pillsburylaw.com), Amy West (amy.west@pillsburylaw.com)), and Pillsbury Winthrop Shaw Pittman LLP, 609 Main Street, Suite 2000, Houston, TX 77002 (Attn: L. James Dickinson (james.dickinson@pillsburylaw.com)); (b) the Office of the United States Trustee, 515 Rusk Street, Suite 3516, Houston, TX 77002; and (c) counsel for any official committee of unsecured creditors appointed in these chapter 11 cases (collectively, the "Utility Notice Parties").  The Debtors will honor such request within five (5) business days after the date the request is received by the Debtors, subject to the ability of the Debtors and any such requesting Utility Company to resolve any dispute regarding such request without further order of the Court.  To the extent a Utility Company receives a disbursement from the Utility Deposit Account, the Debtors will replenish the Utility Deposit Account in the amount so disbursed.

d.      The portion of the Adequate Assurance Deposit attributable to each Utility Company will be returned to the Debtors automatically, without further order of the Court, on the earlier of (a) reconciliation and payment by the Debtors of the Utility Company's final invoice in accordance with applicable nonbankruptcy law following the Debtors' termination of Utility Services from such Utility Company; (b) the effective date of any chapter 11 plan confirmed in these chapter 11 cases; or (c) the consummation of a sale, pursuant to section 363 of the Bankruptcy Code, of all or substantially all of the assets of the applicable Debtors that use the services of such Utility Company.

e.      Any Utility Company desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must serve a request for additional assurance (an "Additional Assurance Request") on the Utility Notice Parties.

.v

f.      The Additional Assurance Request must (a) be made in writing; (b) set forth the location(s) for which Utility Services are provided, the account number(s) for such location(s), and the outstanding balance for each such account; (c) summarize the Debtors' payment history relevant to the affected account(s), including any security deposits or surety bonds; and (d) explain why the Utility Company believes the Proposed Adequate Assurance is insufficient adequate assurance of future payment.

g.      An Additional Assurance Request may be made at any time.  If a Utility Company does not file and serve an Additional Assurance Request, the Utility Company will be (a) deemed to have received "satisfactory" adequate assurance of payment in compliance with section 366 of the Bankruptcy Code and (b) forbidden from discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtors on account of any unpaid pre-petition charges or requiring additional assurance of payment other than the Proposed Adequate Assurance.

h.      The Debtors may, without further order from the Court, resolve an Additional Assurance Request by mutual agreement with a Utility Company, and the Debtors, in connection with any such agreement, may provide a Utility Company with additional adequate assurance of payment including cash deposits, prepayments, or other forms of security if the Debtors believe that such adequate assurance is reasonable.

i.      If the Debtors and the Utility Company are not able to reach a resolution within fourteen days of receipt of the Additional Assurance Request, the Debtors will request a hearing before the Court to determine the adequacy of assurances of payment with respect to a particular Utility Company (the "Determination Hearing") pursuant to section 366(c)(3) of the Bankruptcy Code.

j.      Pending resolution of the Determination Hearing, the Utility Company making such Additional Assurance Request will be prohibited from altering, refusing, or discontinuing Utility Services to the Debtors on account of unpaid charges for pre-petition services or on account of any objections to the Proposed Adequate Assurance.

## IV.     Subsequent Modifications to the Utility Services List

13.     Although the Debtors have made an extensive and good faith effort to identify all of the Utility Companies that provide Utility Services as set forth on the Utility Services List, certain Utility Companies may not be listed therein.  To the extent the Debtors identify additional Utility Companies, the Debtors will promptly file amendments to the Utility Services List and

serve copies of the order granting this Motion on any newly identified Utility Companies.  In addition, the Debtors will increase the amount of the Adequate Assurance Deposit to account for any newly identified Utility Companies.  The Debtors request that the Proposed Order bind all Utility Companies, regardless of when the Utility Companies are added to the Utility Services List.

14.     The Debtors further request that all Utility Companies, including any newly identified Utility Companies added to the Utility Services List, be prohibited from altering, refusing, or discontinuing any Utility Services to the Debtors absent further order of the Court.

## BASIS FOR RELIEF

15.     Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going concern value.'"  *In re CEI Roofing, Inc*., 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)).

16.     The relief requested in this Motion will help ensure the continuation of the Debtors' businesses at this critical juncture as they transition into chapter 11.  The relief requested also provides the Utility Companies with a fair and orderly procedure for determining requests for additional adequate assurance, without which the Debtors could be forced to address multiple requests by Utility Companies in a disorganized manner when the Debtors' efforts should be more focused on continuing to operate their businesses for the benefit of all parties in interest.

## I.     Proposed Adequate Assurance Is Sufficient

17.     Section 366 of the Bankruptcy Code is designed to serve the dual purposes of protecting a debtor from being cut off from utility services and providing utility companies with "adequate assurance" that the debtor will be able to pay for post-petition services.  *See* H.R. Rep. No. 95-595, at 350 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6306.  To that end, pursuant to section 366(c) of the Bankruptcy Code, during the first 30 days of a chapter 11 case, a utility

7

company may not alter, refuse, or discontinue service to, or discriminate against, a debtor solely on the basis of the commencement of a chapter 11 case or unpaid pre-petition amounts, but after the first 30 days, however, a utility company may alter, refuse, or discontinue service if a debtor does not provide adequate "assurance of payment" for post-petition utility services in satisfactory form.  *See* 11 U.S.C. § 366(c).

18.     Section 366(c)(1)(A) of the Bankruptcy Code defines "assurance of payment" of post-petition charges as "(i) a cash deposit; (ii) a letter of credit; (iii) a certificate of deposit; (iv) a surety bond; (v) a prepayment of utility consumption; or (vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee."  *Id.* § 366(c)(1)(A).  In addition, section 366(c)(3)(B) of the Bankruptcy Code provides a list of factors that courts may not consider when evaluating whether a proposed assurance payment is in fact adequate.  *See id.* § 366(c)(3)(B).  These factors include (i) the absence of security before the petition date; (ii) the debtor's history of timely payments; and (iii) the availability of an administrative expense priority. *Id.*

19.     Although section 366(c) of the Bankruptcy Code clarifies what does and does not constitute "assurance of payment" and what can be considered in determining whether such assurance is adequate, Congress, in enacting such section, did not divest bankruptcy courts of their power to determine the amount, if any, necessary to provide adequate assurance of payment to a utility.  *See id.* § 366(c).  Specifically, section 366(c)(3)(A) of the Bankruptcy Code states that "[o]n request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment."  *Id.* § 366(c)(3)(A).  Thus, nothing prevents a court from determining, on the facts before it, that the amount required of a debtor to provide adequate assurance of payment to a utility company should be nominal or even zero.  *See, e.g.*, *In re SQLC*

*Senior Living Ctr. at Corpus Christi, Inc.*, No. 19-20063 (DRJ) (Bankr. S.D. Tex. Feb. 12, 2019) (Docket No. 40); *In re Pac-West Telecomm, Inc.*, No. 07-10562 (BLS) (Bankr. D. Del. May 2, 2007) (Docket No. 39) (approving adequate assurance in the form of one-time supplemental prepayment to each utility company equal to prorated amount of one week's charges).

20.     Prior to the enactment of section 366(c) of the Bankruptcy Code, courts frequently made such rulings pursuant to section 366(b) of the Bankruptcy Code.  *See Va. Elec. & Power Co. v. Caldor, Inc*., 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security' should be interpreted narrowly, we agree with the appellees that a bankruptcy court's authority to 'modify' the level of the 'deposit or other security,' provided for under § 366(b), includes the power to require no 'deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'").

21.     Although section 366(c)(2) of the Bankruptcy Code allows a utility to take action if the debtor fails to provide adequate assurance of payment that is "satisfactory" to the utility, it is the bankruptcy court and not the utility provider that is the ultimate arbiter of what is "satisfactory" assurance after taking into consideration the relationship between the debtor and the utility.  *See, e.g.*, *In re Penn Cent. Transp. Co*., 467 F.2d 100, 103–04 (3d Cir. 1972) (affirming the bankruptcy court's decision that no utility deposit was necessary where such deposits would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already [were] reasonably protected"); *In re Heard*, 84 B.R. 454, 459 (Bankr. W.D. Tex. 1987) (holding that since the utility had not had any difficulty with the debtors during fourteen years of service, "the utility need[ed] no adequate assurance").  Indeed, section 366 of the Bankruptcy Code only requires that assurance of payment be "adequate," and courts construing section 366(b) have long recognized that adequate assurance of payment does not constitute an absolute guarantee of

9

the debtor's ability to pay. *See, e.g.*, *In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires the Bankruptcy Court to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment.  The statute does not require an 'absolute guarantee of payment.'" (citation omitted)), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997); *In re New Rochelle Tel. Corp.*, 397 B.R. 633, 639 (Bankr. E.D.N.Y. 2008) ("Adequate assurance, however, is not a guarantee of payment; rather, it is intended to guard against the utility assuming an unreasonable risk of non-payment.").

22.     Further, courts consider what is "need[ed] of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Caldor*, 117 F.3d at 650.  Indeed, "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full." *In re Great Atl. & Pac. Tea Co.*, No. 11-CV-1338 (CS), 2011 WL 5546954, at *5 (S.D.N.Y. Nov. 14, 2011) (citations omitted).

23.     Here, the Utility Companies are adequately assured against any risk of nonpayment for future services.  The Adequate Assurance Deposit and the Debtors' ability to meet obligations as they come due in the ordinary course provide assurance of the Debtors' payment of their future obligations to the Utility Companies.  Accordingly, the Adequate Assurance Deposit and the Debtors' ongoing ability to meet obligations as they come due in the ordinary course provide assurance of the Debtors' payment of their future obligations to the Utility Companies.  Moreover, termination of the Utility Services could result in the Debtors' inability to operate their business, to the detriment of all stakeholders. *See In re Pilgrim's Pride Corp.*, No. 08-45664 (DML), 2009 WL 7313309, at *2 (Bankr. N.D. Tex. Jan. 4, 2009) ("The consequences of an unexpected

termination of utility service to [the debtors] could be catastrophic."); *In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that without utility service the debtors "would have to cease operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it").

24.     Courts have consistently found that adequate assurance of 50% of a debtor's estimated monthly cost or two weeks' estimated utilities cost satisfies the requirements of section 366 of the Bankruptcy Code. *See, e.g.*, *In re Air Methods Corp.*, No. 23-90886 (MI) (Bankr. S.D. Tex. Oct. 25, 2023) (Docket No. 91); *In re Genesis Care Pty Limited*, No. 23-90614 (DRJ) (Bankr. S.D. Tex. June 1, 2023) (Docket No. 72); *In re Serta Simmons Bedding, LLC*, No. 22-30020 (DRJ) (Bankr. S.D. Tex. Jan. 24, 2023) (Docket No. 107); *In re Core Scientific, Inc.*, No. 22-90341 (DRJ) (Bankr. S.D. Tex. Jan. 23, 2023) (Docket No. 334); *In re Talen Energy Supply*, LLC, No. 22-90054 (MI) (Bankr. S.D. Tex. May 13, 2022) (Docket No. 199).

II.     **Adequate Assurance Procedures Are Reasonable and Appropriate**

25.     The Court also has the power to approve the Adequate Assurance Procedures pursuant to section 105(a) of the Bankruptcy Code, which provides that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  The proposed Adequate Assurance Procedures are reasonable because they will ensure that the Utility Services continue while providing a streamlined process for Utility Companies to challenge the adequacy of the Proposed Adequate Assurance or seek an alternative form of adequate assurance.  If a Utility Company does not believe the Proposed Adequate Assurance is "satisfactory," then it may make an Adequate Assurance Request pursuant to the Adequate Assurance Procedures described above.

26.     Adequate Assurance Procedures are necessary and appropriate to carry out the provisions of the Bankruptcy Code, particularly section 366, and this Court has regularly approved

similar procedures in comparable complex chapter 11 cases.  Accordingly, the Proposed Adequate Assurance and the Adequate Assurance Procedures are necessary, appropriate, and in the best interests of the Debtors' estates and all other parties in interest in these chapter 11 cases.

## DEBTORS SATISFY REQUIREMENTS OF BANKRUPTCY RULE 6003

27.     Pursuant to Local Rule 9013-1, the Debtors request emergency consideration of this Motion under Bankruptcy Rule 6003, which provides that the Court may grant relief within the first twenty-one days after the Petition Date to the extent necessary to avoid immediate and irreparable harm.  The relief requested is essential to avoid the immediate and irreparable harm that would be caused by the Debtors' inability to transition smoothly into chapter 11.  Accordingly, the requirements of Bankruptcy Rule 6003 are satisfied.

## REQUEST FOR WAIVER OF STAY IMPOSED BY BANKRUPTCY RULE 6004

28.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  FED. R. BANKR. P. 6004(h).  As described above, the relief requested in this Motion is necessary for the Debtors to operate without interruption and to preserve value for their estates.  Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable, as the exigent nature of the relief requested justifies immediate relief.

## NOTICE

29.     Notice of this Motion will be served on the following parties or their respective counsel: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the Debtors' thirty largest unsecured creditors (on a consolidated basis); (c) the Internal Revenue Service; (d) the United States Attorney's Office for the Southern District of Texas; (e) the state

attorneys general for all states in which the Debtors conduct business; (f) Glenn Agre Bergman & Fuentes LLP, as counsel to CS One, LLC; (g) Allen Stovall Neuman & Ashton LLP, as counsel to Cardinal Health 110, LLC and Cardinal Health 112, LLC; (h) the Utility Companies identified on **Exhibit 1** to the Proposed Order; and (i) any party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(d).  Given the nature of the relief requested, no other or further notice need be given.

<u>**CONCLUSION**</u>

30.     WHEREFORE, the Debtors respectfully request that the Court grant (i) the relief requested in this Motion by entering the Proposed Order, substantially in the form attached as **Exhibit A**, and (ii) such other and further relief as the Court deems just and proper.

Dated: August 13, 2025          Respectfully submitted,
       Washington, DC

                                /s/ Patrick J. Potter
                                Patrick J. Potter (S.D. Tex. Fed. No. 3089812)
                                **PILLSBURY WINTHROP SHAW PITTMAN LLP**
                                1200 Seventeenth Street, NW
                                Washington, DC 20036
                                Telephone:(202) 663-8928
                                Facsimile: (202) 663-8007
                                Email: patrick.potter@pillsburylaw.com

                                -and-

                                Dania Slim (S.D. Tex. Fed. No. 3049178)
                                Amy West (*pro hac vice* pending)
                                **PILLSBURY WINTHROP SHAW PITTMAN LLP**
                                31 West 52nd Street
                                New York, NY 10019
                                Telephone: (212) 858-1000
                                Facsimile: (212) 858-1500
                                Email: dania.slim@pillsburylaw.com
                                       amy.west@pillsburylaw.com

                                -and-

                                L. James Dickinson (Tex. Bar. No. 24105805)
                                **PILLSBURY WINTHROP SHAW PITTMAN LLP**
                                609 Main Street, Suite 2000
                                Houston, TX 77002
                                Telephone: (713) 276-7654
                                Facsimile: (713) 276-7373
                                Email: james.dickinson@pillsburylaw.com

                                *Proposed Counsel to the Debtors and*
                                *Debtors in Possession*

**CERTIFICATE OF ACCURACY**

In accordance with Local Rule 9013-1(i), I hereby certify that the foregoing statements regarding the nature of the emergency are true and accurate to the best of my knowledge.

*/s/ Patrick J. Potter*
Patrick J. Potter

**CERTIFICATE OF SERVICE**

I certify that on August 13, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.  Additionally, the foregoing document will be served as set forth in a forthcoming affidavit filed by the Debtors' proposed claims agent.

*/s/ Patrick J. Potter*
Patrick J. Potter

.v

## Exhibit A

*Proposed Order*

.v

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Partners Pharmacy Services, LLC, *et al.*,[1] | Case No. 25-34698 |
| Debtors. | (Joint Administration Requested) |

**ORDER (I) APPROVING FORM OF ADEQUATE ASSURANCE OF PAYMENT TO
UTILITY COMPANIES; (II) ESTABLISHING PROCEDURES FOR RESOLVING
OBJECTIONS BY UTILITY COMPANIES; (III) PROHIBITING UTILITY
COMPANIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE;
AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "'Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (i) approving the Debtors' proposed form of adequate assurance of payment to the Utility Companies; (ii) establishing procedures for resolving objections by the Utility Companies relating to the adequacy of the Debtors' proposed adequate assurance; (iii) prohibiting the Utility Companies from altering, refusing, or discontinuing service to, or discriminating against, the Debtors on account of the commencement of these chapter 11 cases or outstanding pre-petition invoices; and (iv) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Arrow Envoy Holdings, LLC (5695); Arrow Pharmacy Holdings, LLC (0080); Partners of Connecticut, LLC (1828); Partners of Massachusetts, LLC (2604); Partners of New York, LLC (0039); Partners of Pennsylvania, LLC (0841); Partners Pharmacy of Florida, LLC (9364); Partners Pharmacy of Maryland, LLC (0961); Partners Pharmacy of Texas, LLC (2017); Partners Pharmacy of Virginia, LLC (6232); Partners Pharmacy Services, LLC (9038); Partners Pharmacy Shell Point, LLC (1616); Partners Pharmacy, L.L.C. (4578); and Solutions Homecare, L.L.C. (1583). The Debtors' service address in these chapter 11 cases is 173 Bridge Plaza North, Fort Lee, NJ 07024.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

*for the Southern District of Texas*, dated May 24, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, their creditors and all parties in interest; and upon all of the proceedings had before the Court after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**,

1. The Motion is GRANTED as set forth herein.

2. The Adequate Assurance Deposit and the Adequate Assurance Procedures are hereby approved and are deemed adequate assurance of future payment as required by section 366 of the Bankruptcy Code.

3. The Debtors shall deposit the Adequate Assurance Deposit in the amount of **$134,510** in a segregated account for the benefit of the Utility Companies within twenty (20) days after the entry of this Order.  The Debtors are authorized to cause the Adequate Assurance Deposit to be held in the Utility Deposit Account until (a) the Debtors' termination of Utility Services from such Utility Companies, at the earliest, if there are no outstanding disputes related to post-petition payments due, or (b) at the conclusion of the chapter 11 cases, if not applied earlier. No liens shall encumber the Adequate Assurance Deposit or the Utility Deposit Account.

4. The following Adequate Assurance Procedures are hereby approved:

a.     Within three business days after entry of this Order, the Debtors will e-mail, serve by mail, or otherwise expeditiously send a copy of the Motion and this Order to the Utility Companies on the Utility Services List.

b.     The funds in the Utility Deposit Account will constitute adequate assurance for each Utility Company in the amount set forth for such Utility Company in the column labeled "Amount of Deposit to be Provided" on the Utility Services List.

c.     If an amount relating to Utility Services provided post-petition by a Utility Company is unpaid, and remains unpaid beyond any applicable grace period, such Utility Company may request a disbursement from the Utility Deposit Account by giving notice to (a) proposed counsel to the Debtors, Pillsbury Winthrop Shaw Pittman LLP, 1200 Seventeenth Street, NW, Washington, DC 20036 (Attn: Patrick J. Potter (patrick.potter@pillsburylaw.com)), Pillsbury Winthrop Shaw Pittman LLP, 31 West 52nd Street, New York, NY 10019 (Attn: Dania Slim (dania.slim@pillsburylaw.com), Amy West (amy.west@pillsburylaw.com), and Pillsbury Winthrop Shaw Pittman LLP, 609 Main Street, Suite 2000, Houston, TX 77002 (Attn: L. James Dickinson (james.dickinson@pillsburylaw.com)); (b) the Office of the United States Trustee, 515 Rusk Street, Suite 3516, Houston, TX 77002; and (c) counsel for any official committee of unsecured creditors appointed in these chapter 11 cases (collectively, the "Utility Notice Parties").  The Debtors will honor such request within five (5) business days after the date the request is received by the Debtors, subject to the ability of the Debtors and any such requesting Utility Company to resolve any dispute regarding such request without further order of the Court.  To the extent a Utility Company receives a disbursement from the Utility Deposit Account, the Debtors will replenish the Utility Deposit Account in the amount so disbursed.

d.     The portion of the Adequate Assurance Deposit attributable to each Utility Company will be returned to the Debtors automatically, without further order of the Court, on the earlier of (a) reconciliation and payment by the Debtors of the Utility Company's final invoice in accordance with applicable nonbankruptcy law following the Debtors' termination of Utility Services from such Utility Company; (b) the effective date of any chapter 11 plan confirmed in these chapter 11 cases; or (c) the consummation of a sale, pursuant to section 363 of the Bankruptcy Code, of all or substantially all of the assets of the applicable Debtors that use the services of such Utility Company.

e.     Any Utility Company desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must serve a request for additional assurance (an "Additional Assurance Request") on the Utility Notice Parties.

3

f. The Additional Assurance Request must (a) be made in writing; (b) set forth the location(s) for which Utility Services are provided, the account number(s) for such location(s), and the outstanding balance for each such account; (c) summarize the Debtors' payment history relevant to the affected account(s), including any security deposits or surety bonds; and (d) explain why the Utility Company believes the Proposed Adequate Assurance is insufficient adequate assurance of future payment.

g. An Additional Assurance Request may be made at any time. If a Utility Company does not file and serve an Additional Assurance Request, the Utility Company will be (a) deemed to have received "satisfactory" adequate assurance of payment in compliance with section 366 of the Bankruptcy Code and (b) forbidden from discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtors on account of any unpaid pre-petition charges or requiring additional assurance of payment other than the Proposed Adequate Assurance.

h. The Debtors may, without further order from the Court, resolve an Additional Assurance Request by mutual agreement with a Utility Company, and the Debtors, in connection with any such agreement, may provide a Utility Company with additional adequate assurance of payment including cash deposits, prepayments, or other forms of security if the Debtors believe that such adequate assurance is reasonable.

i. If the Debtors and the Utility Company are not able to reach a resolution within fourteen days of receipt of the Additional Assurance Request, the Debtors will request a hearing before the Court to determine the adequacy of assurances of payment with respect to a particular Utility Company (the "Determination Hearing") pursuant to section 366(c)(3) of the Bankruptcy Code.

j. Pending resolution of the Determination Hearing, the Utility Company making such Additional Assurance Request will be prohibited from altering, refusing, or discontinuing Utility Services to the Debtors on account of unpaid charges for pre-petition services or on account of any objections to the Proposed Adequate Assurance.

5.    Absent compliance with the procedures set forth in the Motion and this Order, the Utility Companies, including those listed on **Exhibit 1** annexed hereto, are prohibited from altering, refusing, or discontinuing Utility Services, or otherwise discriminating against the Debtors, on account of any unpaid pre-petition charges or any perceived inadequacy of the Debtors' Proposed

4

Adequate Assurance.  The Utility Companies are prohibited from requiring additional adequate assurance of payment other than pursuant to the Adequate Assurance Procedures set forth herein.

6.      The inclusion of any entity in, as well as the omission of any entity from, the Utility Services List shall not be deemed an admission by the Debtors that such entity is, or is not, a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights and defenses with respect thereto.

7.      The Debtors are authorized to amend the Utility Services List attached hereto as **Exhibit 1**, to add or delete any Utility Companies, with such amendment to be filed with the Court and timely served on the affected Utility Company (the "Subsequently Identified Utility Company") to allow sufficient time for parties to object. The Debtors shall serve a copy of this Order upon any Subsequently Identified Utility Company added to the Utility Services List within three business days.  Upon such amendment, any Subsequently Identified Utility Company that is added to the Utility Services List has the right to object to such inclusion within fourteen days after it receives notice of the Motion and Order.  If no objection is timely received, the provisions of this Order shall apply to the Subsequently Identified Utility Company. Should any objection properly be made, such Subsequently Identified Utility Company shall be permitted to make an Adequate Assurance Request in accordance with the Adequate Assurance Procedures set forth herein.

8.      The Debtors shall increase the amount of the Adequate Assurance Deposit if an additional Utility Company is added to the Utility Services List by an amount equal to one half of the Debtors' average monthly cost of Utility Services provided by such Subsequently Identified Utility Company, calculated, where practicable, using the historical average for such payments during the 12 months prior to the Petition Date.  The Debtors may terminate the services of any

5

.v

Utility Company and reduce the Adequate Assurance Deposit by the amount held on account of such terminated Utility Company upon reconciliation and payment by the Debtors of the Utility Company's final invoice in accordance with applicable non-bankruptcy law following the Debtors' termination of Utility Services provided by such Utility Company; *provided, however*, that there are no outstanding disputes related to post-petition payments due; *provided* that Debtors shall, to the extent reasonably practicable, provide at least seven (7) days' notice to any Utility Company prior to removal and shall only reduce the Adequate Assurance Deposit absent a response from any such Utility Company.

9.      The relief granted herein is for all Utility Companies providing Utility Services to the Debtors and is not limited to those parties or entities listed on the Utility Services List.

10.     Nothing in the Motion or this Order or any payment made pursuant to the authority granted by this Order is intended to be or shall be deemed as (a) an implication or admission as to the validity of any claim against the Debtors; (b) a waiver or limitation of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim; (c) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law; (d) a waiver of the obligation of any party in interest to file a proof of claim; (e) an agreement or obligation to pay any claims; (f) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (g) an admission as to the validity of any liens satisfied pursuant to the Motion; or (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code.

11.     Notwithstanding anything to the contrary in the Motion or this Order, any payment to be made hereunder, and any authorization contained herein, shall be subject to and in accordance with any interim and final orders, as applicable, authorizing the Debtors' use of cash collateral and

post-petition debtor-in-possession financing (such orders, the "<u>DIP Order</u>") and any budget in connection with any such use of cash collateral and post-petition debtor-in-possession financing. To the extent there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

12. The requirements of Bankruptcy Rule 6003(b) have been satisfied.

13. Notice of the Motion is adequate under Bankruptcy Rule 6004(a) and the Local Rules.

14. Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

15. The Debtors are authorized to take all actions necessary or appropriate to carry out the relief granted in this Order.

16. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Signed: _____

United States Bankruptcy Judge

7

.v

## **Exhibit 1**

*Utility Services List*

.v

**Utility Services List**

| Utility Provider | Utility Provider Mailing Address | Service Type(s) | Account Number(s) | Average Monthly Cost | Adequate Assurance Deposit |
|---|---|---|---|---|---|
| ADT Commercial LLC d/b/a Everon | PO Box 219044 Kansas City, MO 64121-9044 | Security | 999883101 | $2,500 | $1,250 |
| Confires Fire Protection | 910 Oak Tree Ave, Suite J South Plainfield, NJ 07080 | Fire | C-29990 | $1,000 | $500 |
| Connecticut Natural Gas Corp. | PO Box 847820 Boston, MA 02284-7820 | Gas | 040-0011153-1014 | $600 | $300 |
| Eversource | PO Box 56002 Boston, MA 02205-6002 | Electric, Gas | 5116 797 9046; 5103 571 4013; 5707 586 0007; 7300 210 4617 | $4,600 | $2,300 |
| Fluent Stream Tech LLC | PO Box 727818 Dallas, TX 75373 7818 | Phone | 11441824-001-085 | $25,000 | $12,500 |
| JCP&L (FIRSTENERGY) | PO Box 371422 Pittsburg, PA 15250-7422 | Electric | 100 119 913 158 | $3,000 | $1,500 |
| Meriplex Solutions | PO Box 737157 Dallas, TX 75373-7157 | IT Infrastructure | 22-PAPH001 | $180,000 | $90,000 |
| National Grid | PO Box 371396 Pittsburg, PA 15250-7396 | Electric | 78364-79038 | $6,000 | $3,000 |

| Utility Provider | Utility Provider Mailing Address | Service Type(s) | Account Number(s) | Average Monthly Cost | Adequate Assurance Deposit |
|---|---|---|---|---|---|
| New Jersey American Water | PO Box 371331 Pittsburg, PA 15250 | Water | 1018-220015686248; 1018-220015686200 | $1,000 | $500 |
| PSE&G CO | PO BOX 14444 New Brunswick, NJ 08906-4444 | Gas | 72 834 598 04 | $6,000 | $3,000 |
| ReadyFresh (Primo Brands, Blue Triton Brands, Inc.) | PO Box 9001003 Louisville, KY 40290-1003 | Water | 442178869 | $120 | $60 |
| Reliant | PO Box 650475 Dallas, TX 75265-0475 | Electric | 17 837 843-6 | $1,600 | $800 |
| The Connecticut Water Company | PO Box 981015 Boston, MA 02298-1015 | Water | 189880 | $600 | $300 |
| Waste Management (WM Corporate Services, Inc.) | PO Box13648 Philadelphia, PA 19101-3648 | Waste Services | 17-64594-53001 | $5,000 | $2,500 |
| Windstream | PO Box 9001013 Louisville, KY 40290-1013 | Internet Service | 208217295 | $32,000 | $16,000 |
| | | | Total | $269,020.00 | $134,510.00 |

.v