**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Partners Pharmacy Services, LLC, *et al.*,[1] | Case No. 25-34698 |
| Debtors. | (Joint Administration Requested)<br>(Emergency Hearing Requested) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING
THE DEBTORS TO (A) PAY PRE-PETITION WAGES, SALARIES, AND
OTHER COMPENSATION, AND (B) CONTINUE EMPLOYEE BENEFITS
PROGRAMS; AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested.  Relief is requested not later than 4:00 p.m. (prevailing Central Time) on August 14, 2025.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion (the "Motion"):

## RELIEF REQUESTED

1.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Debtors to (i) pay pre-petition wages, salaries, and other compensation (collectively, the "Compensation") to employees, as well as remit amounts withheld from the Compensation to applicable taxing authorities and third party benefits administrators, and

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Arrow Envoy Holdings, LLC (5695); Arrow Pharmacy Holdings, LLC (0080); Partners of Connecticut, LLC (1828); Partners of Massachusetts, LLC (2604); Partners of New York, LLC (0039); Partners of Pennsylvania, LLC (0841); Partners Pharmacy of Florida, LLC (9364); Partners Pharmacy of Maryland, LLC (0961); Partners Pharmacy of Texas, LLC (2017); Partners Pharmacy of Virginia, LLC (6232); Partners Pharmacy Services, LLC (9038); Partners Pharmacy Shell Point, LLC (1616); Partners Pharmacy, L.L.C. (4578); and Solutions Homecare, L.L.C. (1583).  The Debtors' service address in these chapter 11 cases is 173 Bridge Plaza North, Fort Lee, NJ 07024.

(ii) continue providing employees with benefits (the "<u>Benefits</u>") pursuant to the Debtors' employee benefits programs in the ordinary course of business, including payment of certain pre-petition obligations related thereto, and (b) granting related relief.

<strong><span style="font-variant: small-caps">Jurisdiction and Venue</span></strong>

2.      The United States Bankruptcy Court for the Southern District of Texas (this "<u>Court</u>") has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors consent to entry of a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested are sections 105(a), 363(b), 503(c)(1), and 507 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and rule 9013-1(b) of the Bankruptcy Local Rules for the Southern District of Texas (the "<u>Local Rules</u>").

<strong><span style="font-variant: small-caps">Background</span></strong>

**I.      Overview of Chapter 11 Cases**

5.      On August 13, 2025 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these cases.

2

6. The Debtors serve the medication management needs of residents at skilled nursing facilities, assisted living communities, long-term care residences, long-term acute care hospitals, and institutional care facilities across the United States. These services are delivered through a network of in-house pharmacies and supported by a range of advanced technologies and capabilities, including automation systems, infusion therapy technologies, compounding services, clinical decision-support tools, and a dedicated team offering clinical support services.

7. Additional information about the Debtors, including their business operations, corporate and capital structure, and the events leading to the filing of these cases is detailed in the *Declaration of Ronald M. Winters in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

## II. Debtors' Employees

8. As of the Petition Date, the Debtors employ approximately 284 employees, including approximately 239 full-time employees, 1 part-time employee with benefits, 4 part-time employees without benefits, and 40 per diem employees (employees working less than 30 hours per week). The Debtors' employees include pharmacists, pharmacy technicians, billing representatives, reimbursement specialists, maintenance staff, and administrative staff, and perform a wide variety of services that are critical to the Debtors' businesses.

9. The Debtors' employees' skills, knowledge, and understanding of the Debtors' infrastructure and operations are essential to the continued viability of the Debtors' business and to preserving operational stability and efficiency. Many of the employees are highly trained personnel who are not easily replaced. Without their continued, uninterrupted services, the Debtors be unable to maintain operations during these chapter 11 cases.

10. The Debtors believe that most of their employees rely exclusively on their compensation and benefits to pay their daily living expenses and support their families. Thus,

employees will be exposed to significant financial hardship if the Debtors are not permitted to continue paying their compensation, provide benefits, and maintain existing benefit programs. The Debtors seek to minimize any hardship employees would suffer if the Debtors' Compensation and Benefits obligations are not satisfied when due. The Debtors intend to continue their pre-petition employee practices, programs, and policies in the ordinary course of business and pay pre-petition amounts related thereto, if approved by the Court.

### III.    Employee Compensation and Benefits

11.    As of the Petition Date, the Debtors estimate their total pre-petition Compensation and Benefits obligations to be approximately $2,189,337.41. The Debtors' pre-petition Compensation and Benefits obligations consist of:

| Employee Compensation and Benefits | Estimated Approximate Amounts |
|---|---|
| Compensation Obligations | $947,000 |
| Employer Payroll Taxes Obligations | $655,000 |
| Employee Benefits Obligations | $484,054.25 |
| Workers' Compensation Obligations | $103,283.16 |
| **Total:** | **$2,189,337.41** |

### A.    Compensation Obligations

12.    The Debtors pay salaries, wages, and other compensation to employees in the ordinary course of business on a bi-weekly basis. Employees receive direct deposits every other Friday for the pay period covering the week that ended the previous Friday. Each paycheck includes earnings, net of deductions for taxes, for all work performed (and any paid time off) during that two-week period (collectively, the "Compensation Obligations"). The Debtors' last

4909-4418-4653

scheduled payroll before the Petition Date was made on August 8, 2025, which covered the two-week period ending on August 1, 2025.

13.     As of the Petition Date, the estimated unpaid pre-petition Compensation Obligations total approximately $947,000.  The Debtors seek authority to continue paying Compensation Obligations in the ordinary course and to pay any pre-petition amounts owed in full.

### B.     Reimbursement Obligations

14.     In the ordinary course of business, the Debtors reimburse their employees for certain eligible expenditures ("Reimbursable Expenses") incurred on the Debtors' behalf.  These reimbursements are made on account of employee out-of-pocket expenses incurred in the ordinary course in connection with their employment, including travel and mileage expenses (the "Reimbursement Obligations," and the programs such obligations are incurred under, the "Reimbursement Programs").

15.     As of the Petition Date, the Debtors have no outstanding pre-petition Reimbursement Obligations.  Out of an abundance of caution, the Debtors seek authority to continue administering the Reimbursement Programs in the ordinary course, including to pay any pre-petition Reimbursement Obligations that may subsequently come to the Debtors' attention.

### C.     Payroll and Withholding Tax Obligations

16.     The Debtors are required by law to withhold from employees' salaries, wages, and other compensation amounts for federal, state, and local income taxes, as well as Social Security and Medicare taxes (collectively, the "Withholding Taxes") and remit them to the appropriate taxing authorities (collectively, the "Taxing Authorities").  As of the Petition Date, the Debtors have no outstanding unpaid obligations on account of the Withholding Taxes.  The Debtors seek authority to continue collecting and remitting the Withholding Taxes incurred in the ordinary course and to remit any pre-petition amounts withheld or otherwise required to be paid.

17.     The Debtors are also required to pay from their own funds employer Social Security and Medicare taxes, state and federal unemployment insurance, and similar taxes and fees (the "Employer Payroll Taxes").  As of the Petition Date, the Debtors estimate they owe approximately $655,000 in pre-petition Employer Payroll Taxes.

**D.     Employee Benefits Programs**

18.     The Debtors also maintain various employee benefit plans and policies for eligible employees.  The Debtors' benefit programs consist of: (i) Medical Benefits Program, (ii) Insurance Benefits Program, (iii) Employee Assistance Program, (iv) 401(k) Savings Plan, and (v) Leave Program (each as defined below, and collectively, the "Employee Benefit Programs," and the obligations related thereto, the "Employee Benefits Obligations").

19.     PlanSource Benefits Administration, Inc. ("PlanSource") is the Debtors' third-party benefits administrator.   PlanSource assists the Debtors with managing the Employee Benefit Programs, including with functions such as enrollment, billing, and regulatory compliance.  As of the Petition Date, the Debtors estimate that their total accrued but unpaid obligations to PlanSource are approximately $42,106.94.

20.     As of the Petition Date, the aggregate accrued, but unpaid amounts related to Employee Benefit Programs, including withholdings for pre-tax and after-tax deductions payable pursuant to the Employee Benefits Program, totals approximately $484,054.25, which will not exceed the cap in section 507(a)(5) of the Bankruptcy Code on a per employee basis.   The Employee Benefit Programs are explained in more detail below.

**i.     Medical Benefits Program**

21.     The Debtors offer their employees and their eligible dependents the opportunity to participate in several health benefits plans, including the Medical Plan, Dental Plan, Vision Plan,

4909-4418-4653

HSA Program, FSA Program, COBRA, and Stop-Loss Insurance Plan (each as defined herein, and collectively, the "Medical Benefits Program").

22.     As of the Petition Date, the Debtors estimate that approximately $192,708.67 in pre-petition amounts are accrued and unpaid under the Medical Benefits Program.  The Debtors seek authority to continue paying their obligations under the Medical Benefits Programs in the ordinary course and to pay, in full, any pre-petition amounts on account thereof.  Each Medical Benefits Program is set forth in more detail below.

23.     Medical Plan.  The Debtors offer medical coverage (the "Medical Plan") to eligible employees and their dependents through Aetna Life Insurance Company ("Aetna").  The Medical Plan is self-funded by the Debtors, partly by funds withheld from the salaries of employees in the amount of their applicable share of the Medical Plan.  Under the Medical Plans, employees have access to Aetna's service network, and the Debtors pay Aetna administrative fees for its services. As of the Petition Date, the Debtors estimate that the Medical Plan has approximately 149 employee participants (not including employee dependents).  Every week, the Debtors receive a statement from Aetna with the amount owing for claims and administration fees for the preceding week, which amount is then withdrawn from the Debtors' specified account by Aetna weekly through self-billing services provided by PlanSource.  As of the Petition Date, the Debtors estimate that their total accrued but unpaid obligations under the Medical Plan are approximately $10,310.03.

24.     Dental Plan.  The Debtors offer eligible employees dental coverage (the "Dental Plan") through Delta Dental ("Delta").  As of the Petition Date, the Debtors estimate that the Dental Plan has approximately 159 employee participants (not including employee dependents).  The Dental Plan is fully funded by the premiums paid by participating employees.  The Debtors do not

4909-4418-4653

contribute to the Dental Plan, but withhold premiums from participating employees' salary and wages each pay period.  As of the Petition Date, the Debtors estimate that their total accrued but unpaid obligations under the Dental Plan are approximately $96,665.44.

25.    Vision Plan.  The Debtors offer eligible employees vision coverage (the "Vision Plan") through EyeMed Vision Care, LLC ("EyeMed").  As of the Petition Date, the Debtors estimate that the Vision Plan has approximately 148 employee participants (not including employee dependents).  The Debtors do not contribute to the Vision Plan, but withhold the applicable premiums from participating employees' salary and wages each pay period.  Vision Plan premiums for participating employees are collected via payroll deductions on a monthly basis. The Debtors then remit the participating employees' premiums to EyeMed through self-billing services provided by PlanSource.  As of the Petition Date, the Debtors estimate that their total accrued but unpaid obligations under the Vision Plan are approximately $65,145.40.

26.    Health Savings Account.  Employees who participate in a high-deductible Medical Plan may contribute a portion of their pre-tax compensation into a health savings account (the "HSA," and the applicable program the "HSA Program") administered by Inspira Financial ("Inspira").  Participating employees may pay eligible health-related expenses with funds from their HSA account.  The annual limit for all contributions, which is set by the IRS annually, is $4,300 for employees with single coverage and $8,550 for employees with family coverage.  The Debtors contribute to their employees' HSAs by offering a quarterly contribution of $125 or $250 based on single or family enrollment.  These funds are withdrawn from the Debtors' designated account by Inspira and subsequently credited to the participating employee's HSA account.  As of the Petition Date, the Debtors have no unpaid obligations on account of the HSA Program.

27.     <u>Flexible Spending Accounts</u>.  The Debtors offer eligible employees the ability to contribute a portion of their pre-tax compensation to flexible spending accounts ("<u>FSA</u>") administered by Optum Bank ("<u>Optum</u>") to pay for certain out-of-pocket health care and dependent care expenses (the "<u>FSA Program</u>").  Approximately 37 employees participate in the FSA Program.  As of the Petition Date, the Debtors estimate that their total accrued but unpaid obligations on account of the FSA Program are approximately $845.

28.     <u>COBRA</u>.     Under the Consolidated Omnibus Budget Reconciliation Act ("<u>COBRA</u>"), employees who are terminated have the right to continue their health benefits for a limited period of time under certain circumstances. The Debtors provide COBRA benefits as required by law.  Two members are currently enrolled in COBRA coverage, and each is responsible for paying the full premium.  As of the Petition Date, the Debtors estimate that there are no unpaid obligations related to COBRA.

29.     <u>Stop-Loss Insurance</u>.  The Debtors maintain stop-loss insurance (the "<u>Stop-Loss Insurance Plan</u>") through Aetna.  The Debtors seek authority to pay any unpaid pre-petition amounts on account of the Stop-Loss Insurance Plan and to continue the Stop-Loss Insurance Plan on a post-petition basis in the ordinary course of business.  The Stop-Loss Insurance Plan has an individual attachment point of $450,000 and no aggregate coverage.  The Stop-Loss Insurance Plan has approximately 149 employee participants.  As of the Petition Date, the Debtors' total accrued but unpaid obligations under the Stop-Loss Insurance Plan are approximately $19,742.80.

      **ii.     Insurance Benefits Program**

30.     The Debtors offer insurance benefit plans to their employees under various policies and programs, in some cases automatically and in others upon employee election.  These include the Life and AD&D Insurance Plans, the Supplemental Insurance Plans, and the Disability Plans (each defined herein, and together the "<u>Insurance Benefits Program</u>").

9

31.     In total under all plans and programs that make up the Insurance Benefits Program, as of the Petition Date, the Debtors estimate that they owe or hold on behalf of employees approximately $129,997.88.  The Debtors seek authority to pay or remit such pre-petition amounts and continue the Insurance Benefits Program, and all constituent plans and programs, in the ordinary course.  The Insurance Benefits Program is described in more detail below.

32.     <u>Life and AD&D Insurance Plans</u>.  The Debtors provide all employees with life and accidental death and dismemberment insurance coverage (the "<u>Life and AD&D Insurance Plans</u>"), which is fully insured by Standard Insurance Company ("<u>Standard</u>").  Premiums vary, based on the number of employees who receive coverage and their respective salaries.  As of the Petition Date, the Debtors' total accrued but unpaid obligations on account of the Life and AD&D Insurance Plan are approximately $40,175.76.

33.     <u>Supplemental Insurance Plans</u>.  The Debtors provide various supplemental insurances, including the Critical Illness Insurance Plan, Accident Insurance, Hospital Indemnity, and Legal Insurance (each defined herein, and together the "<u>Supplemental Insurance Plans</u>") that eligible employees may elect at their own expense.  Employee contributions are deducted directly from employee paychecks and remitted through a self-billing process administered by PlanSource.

34.     ***Critical Illness Plan***.  Employees can elect to purchase critical illness insurance (the "<u>Critical Illness Insurance Plan</u>"), administered by Aflac Continental American Insurance Company ("<u>Aflac</u>"), at their own expense.  As of the Petition Date, approximately 31 employees participate in the Critical Illness Insurance Plan, and the total accrued but unpaid obligations related to the Critical Illness Insurance Plan are approximately $9,075.15.

35.     ***Accident Insurance***.  Employees can elect to purchase accident insurance (the "<u>Accident Insurance Plan</u>"), administered by Aflac, at their own expense.  As of the Petition Date,

approximately 32 employees participate in the Accident Insurance Plan, and the total accrued but unpaid obligations related to the Accident Insurance Plan are approximately $18,772.36.

36.     *Hospital Indemnity*.  Employees can elect to purchase hospital indemnity coverage (the "Hospital Indemnity Plan"), administered by Aflac, at their own expense.  As of the Petition Date, approximately 25 employees participate in the Hospital Indemnity Plan, and the total accrued but unpaid obligations related to the Hospital Indemnity Plan are approximately $7,143.86.

37.     *Legal Insurance*.  Employees can elect to purchase legal insurance coverage (the "Legal Insurance Plan"), administered by ARAG Legal, at their own expense.  As of the Petition Date, approximately 23 employees participate in the Legal Insurance Plan, and the total accrued but unpaid obligations related to the Legal Insurance Plan are approximately $5,040.

38.     *Whole Life*.  Employees can elect to purchase whole life insurance coverage (the "Whole Life Plan"), administered by Aflac, at their own expense.  As of the Petition Date, approximately 13 employees participate in the Whole Life Plan, and the total accrued but unpaid obligations related to the Whole Life Plan are approximately $15,586.05.

39.     Disability Plans.  The Debtors provide eligible employees with long-term disability benefits (the "Long-Term Disability Benefits"), administered through Standard, and short-term disability benefits (the "Short-Term Disability Benefits" and together with the Long-Term Disability Benefits, the "Disability Benefits"), administered through Standard or Aflac.  The Aflac Short-Term Disability Benefit is limited to 40% of an employee's earnings for the length of disability up to $6,000 and has a three-month option that begins seven days after a disability, or a six-month option that begins fourteen days after a disability.  The Standard Short-Term Disability Benefit is limited to 60% of an employee's base weekly earnings up to $1,000 per week and begins seven days after a disability.  The Long-Term Disability Benefit is limited to 60% of the

4909-4418-4653

Employee's base monthly earnings up to $25,000 per month and begins 180 days after a disability, depending on age and lasting until the earlier of the date when the employee is no longer disabled or reaches social security retirement age.  On average, the Debtors pay approximately $16,100 per month on account of the Disability Benefits.  As of the Petition Date, the Debtors' total accrued but unpaid obligations related to Disability Benefits are approximately $33,620.57.

40.     The Debtors also maintain coverage for their two New York-based employees under the state-mandated statutory disability and paid family leave programs, in compliance with the New York Disability Benefits Law and the New York Paid Family Leave Law (collectively, the "New York Statutory Benefits Program"), which are administered by Standard.  As of the Petition Date, the Debtors' total accrued but unpaid obligations related to the New York Statutory Benefits Program are approximately $584.13.

ii.     *Employee Assistance Program*

41.     The Debtors provide an assistance program to all employees (the "Employee Assistance Program") through a third-party vendor, Carebridge Corporation ("Carebridge").  The Employee Assistance Program offers confidential support services to employees facing personal or professional challenges, including counseling, crisis intervention, and resource materials.  In particular, Carebridge provides on-site crisis response, such as licensed social workers and therapists in the event of a critical incident at a facility, as well as support for grief, financial stress, legal concerns, and other personal matters.  All expenses related to the Employee Assistance Program are paid by the Debtors.  As of the Petition Date, the Debtors' total accrued but unpaid obligations under the Employee Assistance Program are approximately $347.70.

4909-4418-4653

      *iii.*       *401(k) Savings Plan*

42. The Debtors maintain a defined contribution plan for the benefit of all eligible employees meeting the requirements of sections 401(a) and 401(k) of the Internal Revenue Code (the "401(k) Savings Plan").  The 401(k) Savings Plan is primarily funded by withholdings from participating employee wages and salaries (the "401(k) Savings Plan Withholdings").  The Debtors remit the 401(k) Savings Plan Withholdings to the plan trustee, Empower Retirement, LLC ("Empower"), as soon as practicable after a participating employee's payroll is processed.   In addition, as part of the 401(k) Savings Plan, the Debtors may match 25% on the first 3% of compensation contributed.  Notwithstanding the tiered structure, the total match is capped at 0.75% of a participating employee's compensation, and all contributions grow on a tax-deferred basis. The Debtors fund these matches annually.  As of the Petition Date, the Debtors owe approximately $161,000 in unpaid pre-petition 401(k) Savings Plan contributions.  The Debtors seek authority to continue honoring their obligations under 401(k) Savings Plan in the ordinary course and to remit and pay any pre-petition amounts on account of the 401(k) Savings Plan, including matching contributions consistent with historical practices.

      *iv.*      *Leave Policy*

43. The Debtors provide eligible employees with paid and unpaid time off benefits that include holidays, vacation days, sick days, personal days, family emergencies, military leave, and other permitted purposes (the "Leave Policy").

44. As part of the Leave Policy, full-time employees are eligible for paid time off ("PTO").  Eligible employees accrue between one and four weeks of PTO annually, depending on employment term and tenure.  Pursuant to the Debtors' PTO policies, employees who voluntarily resign and execute the requisite separation agreement may be eligible to receive payment for

accrued but unused PTO as a form of severance (the "PTO Obligations").  For the avoidance of doubt, the Debtors are seeking authority to permit employees to take PTO during the pendency of these chapter 11 cases in the ordinary course of business.  To the extent that any employees are entitled to a cash out of accrued PTO, the Debtors seek authority to pay any such PTO Obligations in the ordinary course of business.

45.     Continuation of the Leave Policy in accordance with prior practice is essential to maintaining employee morale and confidence during these chapter 11 cases given that employees rely on the Leave Policy.  The Debtors anticipate that employees will use any accrued paid leave in the ordinary course of business, which will not create any material cash flow requirements beyond the Debtors' normal payroll obligations.  The Debtors request authority to continue the Leave Policy in the ordinary course consistent with past practice and to honor any amounts accrued thereunder before the Petition Date.

### E.     Workers' Compensation Program

46.     The Debtors maintain workers' compensation insurance for employees at the levels required by laws in the states in which they operate (collectively, the "Workers' Compensation Program").  The Debtors maintain coverage for the Workers' Compensation Program through a policy (the "Workers' Compensation Policy") issued by Safety National Casualty Corporation, who also administers the Workers' Compensation Program.  As of the Petition Date, the Debtors estimate that their total accrued but unpaid obligations related to the Workers' Compensation Program, including pre-petition premiums, fees and deductibles (the "Workers' Compensation Obligations") are approximately $103,283.16.

47.     The Debtors must continue the Workers' Compensation Program without regard to whether such liabilities were incurred before the Petition Date to ensure they comply with applicable workers' compensation laws and requirements.  For the claims administration process

to operate in an efficient manner and to ensure that the Debtors comply with their contractual obligations and applicable law, the Debtors must continue to assess, determine, and adjudicate claims brought under the Workers' Compensation Program during these chapter 11 cases.

48.     In addition, to the extent any employees assert claims under the Workers' Compensation Program, the Debtors request that the Court modify the automatic stay under section 362 of the Bankruptcy Code to permit employees to proceed with their claims.  This required modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.  Because the Debtors are statutorily or contractually obligated to maintain the Workers' Compensation Program, their inability to do so may result in adverse legal consequences disruptive to the reorganization process.

49.     As of the Petition Date, the Debtors are aware of two open claims under the Workers' Compensation Program and are not aware of any other potential claims against them that have not yet been formally reported.  The Debtors request (a) authority to pay the Workers' Compensation Obligations, (b) authority to continue the Workers' Compensation Program in the ordinary course of business, including by renewing or replacing the Workers' Compensation Policy, and (c) that the Court modify the automatic stay solely to allow employees to assert claims, if any, under the Workers' Compensation Program.

## BASIS FOR RELIEF

I.     **Cause Exists to Authorize the Debtors to Honor the Compensation and Benefits**

   A.     **Certain Compensation and Benefits are Entitled to Priority**

50.     Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle certain of the Compensation and Benefits owed to the employees to priority treatment.  Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code require the Debtors to pay wages, salaries, commissions, vacation, severance, sick leave, and contributions to employee benefits plans as administrative

4909-4418-4653

priority claims up to a limit of $17,150 per individual.  Because such claims are priority claims, the Debtors are required to pay them in full to confirm a chapter 11 plan.  *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment in full of certain allowed unsecured claims for (a) wages, salaries, or commissions, including severance, and sick leave pay earned by an individual, and (b) contributions to an employee benefit plan).  Thus, granting the relief requested with respect to payment of certain amounts up to the priority cap will likely only affect the timing of such payments, and should not negatively affect recoveries for general unsecured creditors.  Payment of the Compensation and Benefits at this time enhances value for the benefit of all interested parties as the Debtors depend on the employees for ongoing operations which are critical during the course of these chapter 11 cases.

**B.      Payment of Certain Compensation and Benefits is Required by Law**

51.      The Debtors seek authority to pay the Withholding Obligations to the appropriate third-party entities.  These amounts largely represent employee earnings that governments, employees, and judicial authorities have designated for deduction from employee paychecks. Certain Withholding Obligations are not property of the Debtors' estates because the Debtors have withheld such amounts from employee paychecks on another party's behalf.  *See* 11 U.S.C. §§ 541(b)(1), (d).  Furthermore, federal and state laws require the Debtors to withhold certain tax payments from employee paychecks and remit such amounts to the appropriate taxing authority. 26 U.S.C. §§ 6672, 7501(a); *see also In re Chabrand*, 301 B.R. 468, 475–81 (Bankr. S.D. Tex. 2003) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes).  Because the Withholding Obligations may not be property of the Debtors' estates, the Debtors request that the Court authorize them to remit the Withholding Obligations to the proper parties in the ordinary course of business.

4909-4418-4653

52.     Similarly, state laws require the Debtors to maintain the Workers' Compensation Program.  If the Debtors fail to maintain the Workers' Compensation Program, state laws may prohibit the Debtors from operating in those states.  Payment of all Workers' Compensation Program amounts is therefore crucial to the Debtors' continued business operations.

## II.     Payment of the Employee Compensation and Benefits Is Warranted Under Sections 105(a), 363(b), and 1107 of the Bankruptcy Code

53.     Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business reasons.  *See, e.g., Inst'l Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale.").

54.     Further, section 105(a) of the Bankruptcy Code provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, pursuant to the "doctrine of necessity."  11 U.S.C. § 105(a).  The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical claims not explicitly authorized by the

17

Bankruptcy Code and further supports the relief requested in this Motion.  *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (recognizing the "doctrine of necessity").  Additionally, section 1107 of the Bankruptcy Code provides that a debtor in possession has an "implied duty . . . to 'protect and preserve the estate, including an operating business' going-concern value.'"  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. at 497).

55.     Payment of the Compensation and Benefits obligations is warranted under the doctrine of necessity and the facts of these chapter 11 cases.  The vast majority of the Debtors' employees rely exclusively on their compensation and benefits to pay their daily living expenses and support their families.  Thus, the employees may be exposed to significant financial difficulties if the Debtors are not permitted to honor obligations for unpaid Compensation and Benefits.  Consequently, the relief requested is necessary and appropriate.

56.     Moreover, the employees provide the Debtors with services necessary to conduct the Debtors' business, and the Debtors believe that, absent the payment of the Compensation and Benefits owed to the employees, the Debtors may experience turnover and instability at this critical time.  Without these payments, employees may become demoralized and unproductive because of the potential significant financial strain and other hardships employees may face, causing them to seek alternative employment.  Additionally, a significant portion of the value of the Debtors' business is tied to their employees, which cannot be replaced without significant efforts—efforts that may be unsuccessful given the stigma associated with being in chapter 11.  Enterprise value may be materially impaired to the detriment of all stakeholders in such a scenario.  Payment of the pre-petition obligations with respect to the Compensation and Benefits is thus a necessary and

4909-4418-4653

critical element of the Debtors' efforts to preserve value and will increase the Debtors' ability to retain employees while in chapter 11.

57.     Accordingly, the Debtors request that the Court authorize the Debtors to continue honoring their Compensation and Benefits obligations in the ordinary course of business consistent with past practice, including paying any pre-petition obligations related thereto.

## III.    A Limited Waiver of the Automatic Stay for Workers' Compensation Claims Is Appropriate Here

58.     Section 362(a) of the Bankruptcy Code operates to stay "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . ." 11 U.S.C. § 362(a)(1).

59.     Section 362 of the Bankruptcy Code, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." *Id.* at § 362(d)(1). *Here*, cause exists to modify the automatic stay to permit employees to proceed with workers' compensation claims in the appropriate judicial or administrative forum. Staying the workers' compensation claims could have a detrimental effect on the financial well-being and morale of the Debtors' employees.

### DEBTORS SATISFY REQUIREMENTS OF BANKRUPTCY RULE 6003

60.     Pursuant to Local Rule 9013-1, the Debtors request emergency consideration of this Motion under Bankruptcy Rule 6003, which provides that the Court may grant relief within the first twenty-one days after the Petition Date to the extent necessary to avoid immediate and irreparable harm. The relief requested is essential to avoid the immediate and irreparable harm

4909-4418-4653

that would be caused by the Debtors' inability to transition smoothly into chapter 11.  Accordingly, the requirements of Bankruptcy Rule 6003 are satisfied.

### REQUEST FOR WAIVER OF STAY IMPOSED BY BANKRUPTCY RULE 6004

61.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  FED. R. BANKR. P. 6004(h).  As described above, the relief requested in this Motion is necessary for the Debtors to operate without interruption and to preserve value for their estates.  Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable, as the exigent nature of the relief requested justifies immediate relief.

### RESERVATION OF RIGHTS

62.     Nothing contained in this Motion or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; (h) an admission as to the validity, priority,

4909-4418-4653

enforceability, or perfection of any lien on, security interest in, or other encumbrance of property of the Debtors' estates; and (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought in this Motion, any payment made pursuant to an order of the Court is not intended and should not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

<strong><u>NOTICE</u></strong>

63.     Notice of this Motion will be served on the following parties or their respective counsel: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the Debtors' thirty largest unsecured creditors (on a consolidated basis); (c) the Internal Revenue Service; (d) the United States Attorney's Office for the Southern District of Texas; (e) the state attorneys general for all states in which the Debtors conduct business; (f) Glenn Agre Bergman & Fuentes LLP, as counsel to CS One, LLC; (g) Allen Stovall Neuman & Ashton LLP, as counsel to Cardinal Health 110, LLC and Cardinal Health 112, LLC; and (h) any party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(d).  Given the nature of the relief requested, no other or further notice need be given.

<strong><u>CONCLUSION</u></strong>

WHEREFORE, the Debtors respectfully request that the Court grant (i) the relief requested in this Motion by entering the proposed order, substantially in the form attached as **<u>Exhibit A</u>**, and (ii) such other and further relief as the Court deems just and proper.

21

Dated: August 13, 2025
      Washington, DC

Respectfully submitted,

*/s/ Patrick J. Potter*
Patrick J. Potter (S.D. Tex. Fed. No. 3089812)
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1200 Seventeenth Street, NW
Washington, DC 20036
Telephone:(202) 663-8928
Facsimile: (202) 663-8007
Email: patrick.potter@pillsburylaw.com

-and-

Dania Slim (S.D. Tex. Fed. No. 3049178)
Amy West (*pro hac vice* pending)
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
31 West 52nd Street
New York, NY 10019-6131
Telephone: (212) 858-1000
Facsimile: (212) 858-1500
Email: dania.slim@pillsburylaw.com
       amy.west@pillsburylaw.com

-and-

L. James Dickinson (Tex. Bar. No. 24105805)
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
609 Main Street, Suite 2000
Houston, TX 77002
Telephone: (713) 276-7654
Facsimile: (713) 276-7373
Email: james.dickinson@pillsburylaw.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

4909-4418-4653

## CERTIFICATE OF ACCURACY

In accordance with Local Rule 9013-1(i), I hereby certify that the foregoing statements regarding the nature of the emergency are true and accurate to the best of my knowledge.

*/s/ Patrick J. Potter*
Patrick J. Potter


## CERTIFICATE OF SERVICE

I certify that on August 13, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.  Additionally, the foregoing document will be served as set forth in a forthcoming affidavit filed by the Debtors' proposed claims agent.

*/s/ Patrick J. Potter*
Patrick J. Potter

# **Exhibit A**

*Proposed Order*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Partners Pharmacy Services, LLC, *et al.*,[1] | Case No. 25-34698 |
| Debtors. | (Joint Administration Requested) |

**ORDER (I) AUTHORIZING THE DEBTORS TO (A) PAY PRE-PETITION WAGES, SALARIES, AND OTHER COMPENSATION, AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS; AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "'Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), authorizing (a) authorizing the Debtors (i) to pay pre-petition wages, salaries, and other compensation to employees as well as remit amounts withheld from the Compensation to applicable taxing authorities and applicable third party benefits administrators, and (ii) to continue Employee Benefits Programs in the ordinary course of business, including payment of certain pre-petition obligations related thereto, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction over this matter in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Arrow Envoy Holdings, LLC (5695); Arrow Pharmacy Holdings, LLC (0080); Partners of Connecticut, LLC (1828); Partners of Massachusetts, LLC (2604); Partners of New York, LLC (0039); Partners of Pennsylvania, LLC (0841); Partners Pharmacy of Florida, LLC (9364); Partners Pharmacy of Maryland, LLC (0961); Partners Pharmacy of Texas, LLC (2017); Partners Pharmacy of Virginia, LLC (6232); Partners Pharmacy Services, LLC (9038); Partners Pharmacy Shell Point, LLC (1616); Partners Pharmacy, L.L.C. (4578); and Solutions Homecare, L.L.C. (1583).  The Debtors' service address in these chapter 11 cases is 173 Bridge Plaza North, Fort Lee, NJ 07024.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of these cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, their creditors and all parties in interest; and upon all of the proceedings had before the Court after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**,

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized to pay and honor all pre-petition and post-petition obligations on account of the Compensation and Benefits as set forth in the Motion, including, without limitation, Compensation Obligations, Reimbursement Obligations, Withholdings Obligations, Deferred Payroll Taxes, Employee Benefits Obligations, 401(k) Savings Plan Withholdings, and Workers' Compensation Obligations; provided, that the Debtors shall not make any payments to any employee that exceed the priority cap amounts set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code nor pay any amounts to "insiders" of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code under any bonus, incentive, or retention plan without seeking authority from the Court; provided further, that the Debtors shall not pay any Deferred Payroll Taxes before they are due.

3.      The Debtors are authorized to continue, administer, modify, change, or discontinue the Compensation and Benefits and to implement new programs, policies, and benefits, in the ordinary course of business during these chapter 11 cases and without need for further court

4909-4418-4653

approval, subject to applicable law; provided that the Debtors shall provide five days' advance notice to the U.S. Trustee, any statutory committee appointed in these chapter 11 cases, and the DIP Lender before making any material modifications or changes to the Compensation and Benefits.

4.      The Debtors are authorized, in their sole discretion, to remit any deductions previously withheld or deducted from employee payroll on account of the Benefits to the appropriate third party.

5.      The Debtors are authorized to pay any and all Withholding Obligations and Deferred Payroll Taxes, including, but not limited to, all local, state, and federal withholding and payroll-related taxes, social security taxes, Medicare taxes, or similar taxes related to the Benefits and Workers' Compensation Program, whether withheld from employee wages or paid directly by the Debtors to governmental entities and whether such taxes relate to the period before or after the Petition Date.

6.      The Debtors are authorized to reimburse employees for all Reimbursable Expenses and to make direct payments to third parties on account of amounts owed in connection with the Reimbursable Expenses.

7.      Pursuant to section 362(d) of the Bankruptcy Code, employees are authorized to proceed with their claims under the Workers' Compensation Program in the appropriate judicial or administrative forum and the Debtors are authorized to continue the Workers' Compensation Program and pay all pre-petition amounts relating thereto in the ordinary course of business.  This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

4909-4418-4653

8.      Neither this Order, nor any payments made by the Debtors pursuant to the Motion or this Order, shall be deemed to change the classification of any claim or to in any way change the rights or create new rights of any employees or any other person, including, without limitation, any right to payment entitled to administrative expense priority pursuant to sections 503 and 507 of the Bankruptcy Code.

9.      The Debtors' banks and financial institutions shall be, and hereby are, authorized, when requested by the Debtors in their sole discretion, to process, honor, pay, and, if necessary, reissue any and all checks, including pre-petition checks that the Debtors reissue post-petition, and electronic fund transfers drawn on the Debtors' bank accounts relating to the Compensation and Benefits, whether such checks were presented or funds transfer requests were submitted prior to or subsequent to the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments.

10.     The Debtors are authorized to execute and deliver such documents and to take and perform all actions necessary to implement and effectuate the relief granted in this Order.

11.     Nothing in the Motion or this Order, nor any payment made pursuant to the authority granted by this Order, is intended to be or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (f) a request to assume, adopt, or reject any

4

agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; (h) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance of property of the Debtors' estates; and (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

12.     The Court finds and determines that the requirements of Bankruptcy Rule 6003(b) are satisfied and that the relief is necessary to avoid immediate and irreparable harm.

13.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

14.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

15.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the enforcement of this Order.

Signed: _____        _____
                                    United States Bankruptcy Judge

4909-4418-4653