## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Partners Pharmacy Services, LLC, *et al.*,[1] | Case No. 25-34698 (CML) |
| Debtors. | (Jointly Administered) |

## DEBTORS' APPLICATION FOR ENTRY OF ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF PILLSBURY WINTHROP SHAW PITTMAN LLP AS COUNSEL TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on September 10, 2025 at 1:00 p.m. (prevailing Central Time) at the United States Court for the Southern District of Texas, 515 Rusk Street, Courtroom 401, Houston, Texas 77002. You may participate in the hearing either in person or by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge 's home page. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Arrow Envoy Holdings, LLC (5695); Arrow Pharmacy Holdings, LLC (0080); Partners of Connecticut, LLC (1828); Partners of Massachusetts, LLC (2604); Partners of New York, LLC (0039); Partners of Pennsylvania, LLC (0841); Partners Pharmacy of Florida, LLC (9364); Partners Pharmacy of Maryland, LLC (0961); Partners Pharmacy of Texas, LLC (2017); Partners Pharmacy of Virginia, LLC (6232); Partners Pharmacy Services, LLC (9038); Partners Pharmacy Shell Point, LLC (1616); Partners Pharmacy, L.L.C. (4578); and Solutions Homecare, L.L.C. (1583). The Debtors' service address in these chapter 11 cases is 173 Bridge Plaza North, Fort Lee, NJ 07024.

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), authorizing the Debtors to retain and employ Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury") as counsel to the Debtors, effective as of the Petition Date (defined below).  In support of this application (this "Application"), the Debtors rely upon and incorporate the Declaration of Patrick J. Potter, a partner of Pillsbury, attached hereto as **Exhibit B** (the "Potter Declaration") and the Declaration of James C. Matthews attached hereto as **Exhibit C** (the "Matthews Declaration") and respectfully state as follows:

**RELIEF REQUESTED**

1.      Pursuant to sections 327(a), 328(a), 329, and 504 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(b), and Bankruptcy Local Rules 2014-1 and 2016-1, the Debtors seek entry of an Order, substantially in the form attached hereto, authorizing the employment and retention of Pillsbury as the Debtors' bankruptcy counsel to perform the legal services that will be necessary during these chapter 11 cases, as more fully described herein, and in accordance with the terms and conditions set forth in that certain engagement letter between the Debtors and Pillsbury dated May 14, 2025 (the "Engagement Letter"), a copy of which is attached as **Exhibit 1** to the Potter Declaration and incorporated herein by reference.

**JURISDICTION AND VENUE**

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors consent to entry of a final order in connection with this Motion to the extent that it is

later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.  The bases for the relief requested are sections 327(a), 328(a), 329, and 504 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules").

<h2 style="text-align:center">BACKGROUND</h2>

5.  On August 13, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these cases.

6.  Additional information about the Debtors, including their business operations, corporate and capital structure, and the events leading to the filing of these cases is detailed in the *Declaration of Ronald M. Winters in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed on August 13, 2025 and incorporated herein by reference.  *See* Docket No. 13.

<h2 style="text-align:center">PILLSBURY'S QUALIFICATIONS</h2>

7.  Pillsbury is a full-service law firm well suited to advise the Debtors on the wide range of legal issues that have arisen and will likely continue to arise in these chapter 11 cases. Pillsbury has over 750 attorneys worldwide and offices in Houston, Texas, as well as Austin, Beijing, Hong Kong, London, Los Angeles, Miami, Nashville, New York, Northern Virginia, Palm

Beach, Sacramento, San Diego, San Francisco, Shanghai, Silicon Valley, Taipei, Tokyo, and Washington, D.C.

8.     Pillsbury has extensive experience in chapter 11 cases, representing debtors, independent or disinterested directors, creditors' committees, indenture trustees, administrative agents, secured and unsecured creditors, lessors, equity holders, and asset purchasers.  Pillsbury has comprehensive experience in finance, life science, health care, technology, litigation, bankruptcy, and other areas of law, much of which has already proven useful in these chapter 11 cases.  The Debtors are aware of their alternatives for counsel and have selected Pillsbury.

9.     Pillsbury is also familiar with the Debtors' business, financial affairs, and capital structure.  Through its pre-petition representation of the Debtors, Pillsbury's professionals gained substantial knowledge of the Debtors' business and the various legal issues likely to arise in these chapter 11 cases.  Pillsbury has advised the Debtors on their sale efforts and is extensively involved in developing the Debtors' chapter 11 strategy.  For these and other reasons, the Debtors believe that Pillsbury is well-qualified to represent the Debtors in these cases in a cost-effective and efficient manner.

### SERVICES TO BE PROVIDED

10.     The services to be performed by Pillsbury are appropriate and necessary to enable the Debtors to execute their duties as debtors in possession and to prosecute these chapter 11 cases.  Subject to further order of the Court, the Debtors request the employment and retention of Pillsbury to render various legal services including those set forth in the Engagement Letter and, among others, the following:

      a.     advising the Debtors of their rights, powers and duties as debtors and debtors in possession;

b.    preparing (or reviewing and commenting on, as applicable) applications, motions, pleadings, proposed orders, notices, monthly operating reports, and other documents to be filed by the Debtors in these chapter 11 cases;

c.    taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending actions commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors may become involved;

d.    advising the Debtors in connection with the sale of substantially all of their assets or the transfer of operations;

e.    preparing, filing, and pursuing approval of any chapter 11 plan and disclosure statement filed by the Debtors in these chapter 11 cases;

f.    representing the Debtors in matters with and before the United States Trustee, including the initial debtor interview and meeting of creditors, and in hearings before this Court; and

g.    performing all other legal services for and on behalf of the Debtors that may be necessary or appropriate in these chapter 11 cases.

11.    Contemporaneously with the filing of this Application, the Debtors are filing applications for authority to retain: (a) Gibbins Advisors, LLC, as financial advisor; and (b) SSG Advisors, LLC, as investment banker.[2] Pillsbury will work with each of the Debtors' professionals to ensure no unnecessary duplication of effort or cost.

### PROFESSIONAL COMPENSATION

12.    Pillsbury attorneys and professionals will provide services to the Debtors at the hourly rates set forth below and will be reimbursed for reasonable and necessary expenses, subject to the Court's approval in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and other applicable orders of this Court.

---

[2]    On August 14, 2025, the court entered an order appointing Kroll as the Debtors' claims and noticing agent. *See* Docket No. 20.

4904-0283-9886

13.     Pillsbury has carefully and intentionally considered the staffing for this representation.  For instance, the Pillsbury team's seniority is staggered, with two (2) bankruptcy partners, one (1) bankruptcy mid-level associate, and one (1) bankruptcy junior associate.  For corporate matters related to the asset purchase agreement, the Pillsbury team is also staggered and leniently staffed, with one (1) corporate partner, one (1) corporate counsel associate, and one (1) corporate junior associate.  The current hourly and discounted rates charged by Pillsbury's professionals and paraprofessionals staffed on this matter are as follows:

| Attorney Name | Title | Law School Graduation Year | 2025 Standard Rate | Discounted Rate |
|---|---|---|---|---|
| Patrick Potter | Partner | 1989 | $1,690 | $1,605 |
| Dania Slim | Partner | 2008 | $1,430 | $1,358 |
| Lillian Kim | Partner | 2010 | $1,390 | $1,320 |
| Nina Bakhtina | Counsel | 2017 | $1,275 | $1,210 |
| James Dickinson | Associate | 2017 | $1,180 | $1,120 |
| Amy West | Associate | 2024 | $795 | $755 |
| Paraprofessionals | N/A | N/A | $510 | $510 |

The hourly rates set forth above are subject to periodic adjustments for advancements in seniority and firm-wide adjustments (both effective January 1) each year.

14.     Pillsbury professionals will record their time in one-tenth (0.1) of an hour increment, and in a manner otherwise consistent with the practice of (and law governing) chapter 11 counsel submitting fee applications for court review.

15.     Pillsbury will also seek reimbursement from the Debtors for reasonable and necessary expenses incurred, which may include, among other things, express mail charges, hand delivery charges, photocopying charges, travel expenses, charges for mailing supplies provided by Pillsbury to outside copying services for use in mass mailings (including envelopes and labels), computerized research, and transcription costs.  Pillsbury will charge the Debtors for expenses in a manner and at rates consistent with charges made generally to its other clients.

## COMPENSATION RECEIVED BY PILLSBURY FROM THE DEBTORS

16.     Prior to the Petition Date, as set forth in greater detail in the Potter Declaration, the Debtors paid Pillsbury a total of $1.8 million to serve as a retainer (the "Retainer") and to cover fees and expenses anticipated to be incurred in connection with these chapter 11 cases.  Before the Petition Date and as set forth in the Potter Declaration, Pillsbury drew down on the Retainer to cover fees and expenses actually incurred, as well as anticipated to be incurred, through the Petition Date.  Pillsbury has reconciled its pre-petition fees and expenses, and the Debtors propose that the remainder of the Retainer paid to Pillsbury and not expended for pre-petition services and disbursements (which balance is approximately $500,000) be treated as an evergreen retainer to be held by Pillsbury as security during the pendency of these cases until Pillsbury's fees and expenses are awarded by final order and paid.

17.     Pursuant to Bankruptcy Rule 2016(b), Pillsbury has neither shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners and associates associated with Pillsbury, or (b) any compensation another person or party has received or may receive.

## DISINTERESTEDNESS

18.     To the best of the Debtors' knowledge, neither Pillsbury nor any of its attorneys or employees: (a) is a creditor or an insider of the Debtors; (b) is or was, within two years before the Petition Date, a director, officer, or employee of the Debtors; or (c) has an interest materially adverse to the interest of the Debtors' estates or of any class of creditors, by reason of any direct or indirect relationship in connection with, or interest in, the Debtors, or for any other reason.

19.     As detailed in Paragraph 19 of the Potter Declaration, Pillsbury has conducted a search of its client databases with respect to the Debtors and a list of parties in interest and potential parties in interest in these chapter 11 cases.  Based on the results of the search, Pillsbury has

4904-0283-9886

informed the Debtors that Pillsbury does not hold or represent any interest adverse to the Debtors'

estates, except as set forth in the Potter Declaration, and that Pillsbury is a "disinterested person"

within the meaning of section 101(14) of the Bankruptcy Code.

20.    Pillsbury has also informed the Debtors that it will conduct an ongoing review of

its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new

material facts or relationships are discovered or arise, Pillsbury will supplement its disclosure to

the Court.

21.    Accordingly, the Debtors believe that Pillsbury is "disinterested" as such term is

defined in section 101(14) of the Bankruptcy Code.

### SUPPORTING AUTHORITY

22.    The Debtors seek retention of Pillsbury as their counsel pursuant to section 327(a)

of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

23.    Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

FED. R. BANKR. P. 2014.

24.    The Debtors submit that for all the reasons stated above and in the Potter

4904-0283-9886

Declaration, the retention and employment of Pillsbury as counsel to the Debtors is warranted. Moreover, as stated in the Potter Declaration, Pillsbury is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Potter Declaration.

<u>NOTICE</u>

25.     Notice of this Motion will be served on the following parties or their respective counsel: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the Debtors' thirty largest unsecured creditors (on a consolidated basis); (c) the Internal Revenue Service; (d) the United States Attorney's Office for the Southern District of Texas; (e) the state attorneys general for all states in which the Debtors conduct business; (f) Glenn Agre Bergman & Fuentes LLP, as counsel to CS One, LLC; (g) Allen Stovall Neuman & Ashton LLP, as counsel to Cardinal Health 110, LLC and Cardinal Health 112, LLC; and (h) any party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(d).  Given the nature of the relief requested, no other or further notice need be given.

<u>NO PRIOR REQUEST</u>

26.     No previous request for the relief sought herein has been made to this Court or any other court.

<u>CONCLUSION</u>

WHEREFORE, the Debtors respectfully request that this Court (a) enter an order, substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to employ and retain Pillsbury, and (b) grant such other relief as the Court deems appropriate.

4904-0283-9886

Dated:  August 15, 2025            **GIBBINS ADVISORS, LLC**

|       |                          |
|-------|--------------------------|
| By:   | */s/ Ronald M. Winters* |
| Name: | Ronald M. Winters        |
| Title: | Managing Director for Gibbins Advisors and Chief Restructuring Officer for the Debtors |
| Address: | 1900 Church Street, Suite 300 Nashville, TN 37203 |
| Phone: | (914) 391-6269 |
| Email: | rwinters@gibbinsadvisors.com |

Patrick J. Potter (S.D. Tex. Fed. No. 3089812)
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1200 Seventeenth Street, NW
Washington, DC 20036
Telephone:(202) 663-8928
Facsimile: (202) 663-8007
Email: patrick.potter@pillsburylaw.com

-and-

Dania Slim (S.D. Tex. Fed. No. 3049178)
Amy West (admitted *pro hac vice*)
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 858-1000
Facsimile: (212) 858-1500
Email: dania.slim@pillsburylaw.com
        amy.west@pillsburylaw.com

-and-

L. James Dickinson (Tex. Bar. No. 24105805)
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
609 Main Street, Suite 2000
Houston, TX 77002
Telephone: (713) 276-7654
Facsimile: (713) 276-7373
Email: james.dickinson@pillsburylaw.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

4904-0283-9886

**C**ERTIFICATE OF **S**ERVICE

     I certify that on August 15, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.  Additionally, the foregoing document will be served as set forth in a forthcoming affidavit filed by the Debtors' proposed claims agent.

                           */s/ Patrick J. Potter*
                           Patrick J. Potter

## Exhibit A

*Proposed Order*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Partners Pharmacy Services, LLC, *et al.*, [1] | Case No. 25-34698 (CML) |
| Debtors. | (Jointly Administered) |

**ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF
PILLSBURY WINTHROP SHAW PITTMAN LLP AS COUNSEL TO
THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an order (this "Order") authorizing the Debtors to retain and employ Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury") as counsel effective as of the Petition Date, pursuant to sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "Local Bankruptcy Rules"); and the Court having reviewed the Application, the Declaration of Patrick J. Potter, a partner of Pillsbury (the "Potter Declaration"); and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and the Court having found that the Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Arrow Envoy Holdings, LLC (5695); Arrow Pharmacy Holdings, LLC (0080); Partners of Connecticut, LLC (1828); Partners of Massachusetts, LLC (2604); Partners of New York, LLC (0039); Partners of Pennsylvania, LLC (0841); Partners Pharmacy of Florida, LLC (9364); Partners Pharmacy of Maryland, LLC (0961); Partners Pharmacy of Texas, LLC (2017); Partners Pharmacy of Virginia, LLC (6232); Partners Pharmacy Services, LLC (9038); Partners Pharmacy Shell Point, LLC (1616); Partners Pharmacy, L.L.C. (4578); and Solutions Homecare, L.L.C. (1583).  The Debtors' service address in these chapter 11 cases is 173 Bridge Plaza North, Fort Lee, NJ 07024.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

4904-0283-9886

Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found based on the representations made in the Application and in the Potter Declaration that (a) Pillsbury does not hold or represent an interest adverse to the Debtors' estates and (b) Pillsbury is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code; and the Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided adequate and appropriate notice of the Application under the circumstances and that no other or further notice is required; and the Court having reviewed the Application; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1.      The Application is **GRANTED** as set forth herein.

2.      The Debtors are authorized to retain and employ Pillsbury as counsel effective as of the Petition Date, in accordance with the terms and conditions set forth in the Application and in the Engagement Letter as modified herein.

3.      Pillsbury is authorized to provide the Debtors with the professional services as described in the Application and the Engagement Letter, as modified by this Order.

4.      Pillsbury shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, and any other applicable procedures and orders of the Court.  For billing purposes, Pillsbury shall keep its time in one tenth (1/10) hour increments in accordance with the

U.S. Trustee Guidelines.  Pillsbury also intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the U.S. Trustee Guidelines, both in connection with the Application and any interim and final fee applications to be filed by Pillsbury in these chapter 11 cases.

5.      Subject to Court approval, Pillsbury shall be reimbursed for reasonable and necessary expenses as provided by the U.S. Trustee Guidelines.

6.      Pillsbury shall provide at least ten (10) days' notice via e-mail to the Debtors, the U.S. Trustee, and the Committee before any increases in the rates set forth in the Application are implemented.  The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

7.      Notwithstanding anything to the contrary in the Application or the Declarations attached to the Application, Pillsbury shall not be entitled to reimbursement for fees and expenses in connection with any unresolved objection to its fees, without further order of the Court.

8.      Pillsbury shall not charge a markup to the Debtors with respect to fees billed by contract attorneys who are hired by Pillsbury to provide services to the Debtors and shall ensure that any such contract attorneys are subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.

9.      Pillsbury shall use reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

10.     Pillsbury will review its files periodically during the pendency of these Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, Pillsbury will use reasonable efforts to

4904-0283-9886

identify such further developments and will promptly file a supplemental declaration, as required by Fed. R. Bankr. P. 2014(a).

11.     The Debtors and Pillsbury are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

12.     To the extent the Application is inconsistent with this Order, the terms of this Order shall govern.

13.     Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

14.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Signed:                                    _____
                                          Christopher M. Lopez
                                          United States Bankruptcy Judge

5

4904-0283-9886

## EXHIBIT B

*Potter Declaration*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Partners Pharmacy Services, LLC, *et al.*, [1] | Case No. 25-34698 (CML) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF PATRICK J. POTTER
IN SUPPORT OF THE DEBTORS' APPLICATION FOR ENTRY OF
ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF
PILLSBURY WINTHROP SHAW PITTMAN LLP AS COUNSEL TO
THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

I, Patrick J. Potter, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1.      Through a professional corporation, I am a partner of the law firm of Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury" or the "Firm").  My office is located at 1200 Seventeenth Street, NW, Washington, D.C. 20036.  I am a member of the Bars of the District of Columbia, the Commonwealth of Virginia, the State of Michigan, and various federal courts (at all levels including the Supreme Court), including the U.S. District Court for the Southern District of Texas. There are no disciplinary proceedings pending against me.

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Arrow Envoy Holdings, LLC (5695); Arrow Pharmacy Holdings, LLC (0080); Partners of Connecticut, LLC (1828); Partners of Massachusetts, LLC (2604); Partners of New York, LLC (0039); Partners of Pennsylvania, LLC (0841); Partners Pharmacy of Florida, LLC (9364); Partners Pharmacy of Maryland, LLC (0961); Partners Pharmacy of Texas, LLC (2017); Partners Pharmacy of Virginia, LLC (6232); Partners Pharmacy Services, LLC (9038); Partners Pharmacy Shell Point, LLC (1616); Partners Pharmacy, L.L.C. (4578); and Solutions Homecare, L.L.C. (1583).  The Debtors' service address in these chapter 11 cases is 173 Bridge Plaza North, Fort Lee, NJ 07024.

2.      I have approximately 35 years of experience representing debtors, creditors and creditors' committees in complex bankruptcy proceedings in commercial real estate, health care, hospitality and other industries in the United States and Puerto Rico.

3.      This Declaration is submitted in support of the application (the "Application")[2] of the Debtors in the above-captioned chapter 11 cases, for an order pursuant to sections 327(a), 328, and 1107 of the Bankruptcy Code, authorizing the employment and retention of Pillsbury as bankruptcy counsel to the Debtors effective as of the Petition Date.

4.      Except as otherwise stated herein, I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently thereto.  To the extent any information disclosed herein requires amendment or modification upon Pillsbury's completion of further review or as additional party in interest information becomes available to it, a supplemental declaration will be submitted to the Court reflecting such amended or modified information.

### PILLSBURY'S QUALIFICATIONS

5.      Pillsbury is a full-service law firm well suited to advise the Debtors on the wide range of legal issues that have arisen and will likely continue to arise in these chapter 11 cases. Pillsbury has over 750 attorneys worldwide and offices in Houston, Texas as well as Austin, Beijing, Hong Kong, London, Los Angeles, Miami, Nashville, New York, Northern Virginia, Palm Beach, Sacramento, San Diego, San Francisco, Shanghai, Silicon Valley, Taipei, Tokyo, and Washington, D.C.

6.      Pillsbury has extensive experience in chapter 11 cases, representing debtors, independent or disinterested directors, creditors' committees, indenture trustees, administrative agents, secured and unsecured creditors, lessors, equity holders, and asset purchasers.  Pillsbury

---

[2]  Capitalized terms used but not defined herein shall have the meanings given to such terms in the Application.

4904-0283-9886

has comprehensive experience in finance, life science, health care, technology, litigation, bankruptcy, and other areas of law, much of which has already proven useful in these chapter 11 cases. We have apprised the Debtors as to their alternatives for counsel and are aware that after having considered other firms and their options, the Debtors selected Pillsbury.

7. Pillsbury is familiar with the Debtors' business, financial affairs, and capital structure. Through its pre-petition representation of the Debtors to prepare for these proceedings, Pillsbury's professionals gained substantial knowledge of the Debtors' business and the various legal issues likely to arise in these chapter 11 cases. Pillsbury has advised the Debtors on their sale efforts and is extensively involved in developing the Debtors' chapter 11 strategy. For these and other reasons, I believe Pillsbury is well-qualified to represent the Debtors in these cases in a cost-effective and efficient manner.

<u>**SERVICES TO BE PROVIDED**</u>

8. Subject to the Court's approval, Pillsbury will provide the following services to the Debtors in connection with the chapter 11 cases:

> a. advising the Debtors of their rights, powers and duties as debtors and debtors in possession;
>
> b. preparing (or reviewing and commenting on, as applicable) applications, motions, pleadings, proposed orders, notices, monthly operating reports, and other documents to be filed by the Debtors in these chapter 11 cases;
>
> c. taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending actions commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors may become involved;
>
> d. advising the Debtors in connection with the sale of substantially all of their assets or the transfer of operations;
>
> e. preparing, filing, and pursuing approval of any chapter 11 plan and disclosure statement filed by the Debtors in these chapter 11 cases;

3

f.      representing the Debtors in matters with and before the United States Trustee, including the initial debtor interview and meeting of creditors, and in hearings before this Court; and

g.      performing all other legal services for and on behalf of the Debtors that may be necessary or appropriate in these chapter 11 cases.

9.      Pillsbury intends to work with each of the Debtors' professionals to ensure no unnecessary duplication of effort or cost.

### PILLSBURY'S COMPENSATION

10.      Subject to Court approval in accordance with section 330(a) of the Bankruptcy Code, Pillsbury will be paid on an hourly basis, plus reimbursement of actual, necessary expenses incurred in connection with its representation of the Debtors in these chapter 11 cases.

11.      Pillsbury attorneys and other personnel within the Firm will charge hourly rates (including those set forth below), and Pillsbury will be reimbursed for reasonable and necessary expenses, subject to the Court's approval in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and other applicable orders of this Court.

12.      Pillsbury has very carefully and intentionally considered the staffing for this representation.  For instance, the Pillsbury team's seniority is staggered, with two (2) bankruptcy partners, one (1) bankruptcy mid-level associate, and one (1) bankruptcy junior associate.  For corporate matters related to the asset purchase agreement, the Pillsbury team is also staggered and leniently staffed, with one (1) corporate partner, one (1) corporate counsel associate, and one (1) corporate junior associate.  The current hourly standard (and discounted) rates charged by Pillsbury's professionals and paraprofessionals staffed on this matter are as follows:

| Attorney Name | Title | Law School Graduation Year | 2025 Standard Rate | Discounted Rate |
|---|---|---|---|---|
| Patrick Potter | Partner | 1989 | $1,690 | $1,605 |
| Dania Slim | Partner | 2008 | $1,430 | $1,358 |
| Lillian Kim | Partner | 2010 | $1,390 | $1,320 |
| Nina Bakhtina | Counsel | 2017 | $1,275 | $1,210 |
| James Dickinson | Associate | 2017 | $1,180 | $1,120 |
| Amy West | Associate | 2024 | $795 | $755 |
| Paraprofessionals | N/A | N/A | $510 | $510 |

The hourly rates set forth above are subject to periodic adjustments for advancements in seniority and firm-wide adjustments (both effective January 1) each year.

13.    Pillsbury professionals will record their time in one-tenth (0.1) of an hour increment, and in a manner otherwise consistent with the practice of (and law governing) chapter 11 counsel submitting fee applications for court review.

14.    In addition to the hourly rates set forth above, it is Pillsbury's policy in all areas of practice to charge its clients for all other expenses incurred in connection with a client's case. Expenses charged to clients include, among other things, express mail charges, special or hand delivery charges, photocopying charges, travel expenses, charges for mailing supplies provided by Pillsbury to outside copying services for use in mass mailings (including envelopes and labels), computerized research, and transcription costs.  Pillsbury will charge the Debtors for expenses in a manner and at rates consistent with charges made generally to its other clients.

15.    Pillsbury has neither shared nor agreed to share: (a) any compensation it has received or may receive with another party or person, other than with the partners and associates associated with Pillsbury, or (b) any compensation another person or party has received or may receive.  At all times prior to the Petition Date, the balance of Pillsbury's unpaid invoices plus unbilled work-in-progress was less than the Retainer.

5

## COMPENSATION RECEIVED BY PILLSBURY FROM THE DEBTORS

16.     Pillsbury was retained by the Debtors on May 14, 2025, pursuant to the terms of an engagement letter (the "Engagement Agreement," a copy of which is attached hereto as **Exhibit 1**) to provide services that include support for restructuring-related matters.  Pillsbury received $1 million on June 3, 2025, $100,000 on August 1, 2025, and $700,000 on August 8, 2025 (for a total of $1.8 million) as an evergreen retainer (the "Retainer") advanced by the Debtors for work to be performed in connection with the preparation, filing, and prosecution of these chapter 11 cases.

17.     Before the Petition Date, Pillsbury drew down on the Retainer to cover fees and expenses actually incurred, as well as anticipated to be incurred, through the Petition Date. Pillsbury has reconciled its pre-petition fees and expenses and intends to treat (subject to court approval) the remainder of the Retainer and not expended for pre-petition services and disbursements (approximately $500,000) as an evergreen retainer to be held by Pillsbury as security during the pendency of these cases until Pillsbury's fees and expenses are awarded by final order and paid.

## PILLSBURY'S DISINTERESTED AND DISCLOSURES

18.     Pillsbury has a large and diversified legal practice as outlined above.  Pillsbury has previously represented, currently represents, and may in the future represent entities in matters unrelated to these chapter 11 cases, and some of those entities are or may consider themselves to be creditors of or holders of interests in the Debtors or otherwise to be parties in interest in connection with the pending cases.

19.     In preparing this Declaration, I used a set of standard procedures employed by Pillsbury to ensure compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules regarding the retention of professionals by a debtor under the

4904-0283-9886

Bankruptcy Code.  Pursuant to such procedures, I performed, or caused to be performed, the following actions to identify the parties relevant to this Declaration and to ascertain Pillsbury's connection to such parties:

(a)     A comprehensive list of persons that may be parties in interest in these chapter 11 cases was developed after review of documents and other information provided by the Debtors to Pillsbury and in consultation with the Debtors' senior management and other professional advisors (the "<u>Potentially Interested Parties</u>," a copy of which is attached hereto as **Exhibit 2**).

(b)     Pillsbury maintains a master client database as part of its conflict clearance and billing records.  The master client database includes the names of the entities for which any attorney time charges have been billed since the database was first created (the "<u>Client Database</u>").  The Client Database includes the name of each current and former client, the names of the parties who are or were related or adverse to such current or former client, and the names of the Pillsbury personnel who are or were responsible for current or former matters for such client.  It is the policy of Pillsbury that no new matter may be accepted or opened within the Firm without completing and submitting to those charged with maintaining the conflict clearance system the information necessary to check each such matter for conflicts, including the identity of the prospective client, the name of the matter, adverse parties and, in some cases, parties related to the client or to an adverse party.  Accordingly, the database is updated for every new matter undertaken by Pillsbury.  The accuracy of the system is a function of the completeness and accuracy of the information submitted by the attorney opening a new matter.

(c)     Pillsbury compared the names of each of the Potentially Interested Parties to the information in the Client Database.  Any matches to names in the Client Database generated by the comparison were compiled, together with the names of the respective Pillsbury personnel responsible for the identified client matters (the "<u>Client Match List</u>").

(d)     A Pillsbury attorney then reviewed the  List and deleted obvious name coincidences and individuals or entities that were adverse to Pillsbury's clients in both this matter and the matter referenced on the Client Match List.  This Updated Client Match List is attached as **Exhibit 3** to this Declaration.

(e)     Using information in the Client Database concerning entities on the Client Match List, and making general and, if applicable, specific inquiries of Pillsbury personnel, Pillsbury verified that it does not

4904-0283-9886

represent and has not represented any entity on the Client Match List in connection with the Debtors or these chapter 11 cases.

(f)     In addition, a general inquiry was sent by electronic mail to all Pillsbury attorneys and staff to determine whether any such individuals or any members of their households has a connection to (i) the Debtors; (ii) any current or former directors or officers of the Debtors; (iii) Bankruptcy Judges in the District of Delaware; or (iv) anyone working in the Office of the United States Trustee for Region 3 (the "U.S. Trustee").

20.     Except as set forth herein, and based on the information available to me after a reasonable inquiry, neither I, Pillsbury, nor any partner, counsel or associate thereof, insofar as I have been able to ascertain, (i) is a creditor, an equity security holder, or an insider of the Debtors; (ii) is or was, within two years before the Petition Date, a director, officer, or employee of the Debtors; or (iii) has an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.  Based upon the information available to me, I believe that Pillsbury is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

21.     Pillsbury has in the past represented, currently represents, and may in the future represent, in matters wholly unrelated to the Debtors or these cases, certain Potential Parties in Interest (including, without limitation, those entities on **Exhibit 3**, attached hereto, who are current or former clients or affiliates of current or former clients).  I understand that no single matter is a major engagement that, alone or in the aggregate with other engagements for the same entity, involves the billing of fees in excess of one-half of 1% of Pillsbury's annual fees billed in 2025.

22.     As part of its practice, Pillsbury appears in cases, proceedings, and transactions involving many different attorneys, accountants, financial consultants, and investment bankers, some of which now or may in the future represent claimants and other parties in interest in this case, including the Debtors or not disinterested.  Pillsbury does not have any relationship with any

8

such attorneys, accountants, financial consultants, and investment bankers that would make Pillsbury adverse to the Debtors.  Prior to the current (May 2025) engagement, the Debtors were never clients of the Firm.  The Debtors' ultimate principal, Mr. Daniel E. Straus, has never been a client of the Firm.  I understand that some years ago Pillsbury may have provided diligence-related advice to an entity once affiliated with Mr. Straus regarding a potential acquisition transaction that never occurred, all wholly and completely unrelated to the Debtors and this matter.  In 2016 the late Leo Milonas of Pillsbury was engaged to represent Elizabeth S. Straus (the daughter Daniel E. Straus) in certain New York State Court non-commercial litigation involving Daniel A. Strauss (unrelated to Daniel E. Straus).  The litigation's "Disposition Date" was August 18, 2017.  The matter is closed, and the client is a former client.  Based on diligence, I have determined that the matter was wholly unrelated to the Debtors and these cases.  More than a decade ago, Pillsbury worked on chapter 11 cases (wholly unrelated to the instant cases) with Ronald M. Winters and Edwin Clark.  Mr. Winters is the Debtors' Chief Restructuring Office and Mr. Clark has an internal advisory role with the Debtors.  Pillsbury also knows Gibbins Advisors, LLC (where Mr. Winters is a principal) from other unrelated cases and from professional/association events, such as those sponsored by the American Bankruptcy Institute ("ABI").  Pillsbury has also worked on chapter 11 cases where SSG Advisors, LLC and Kroll Restructuring Administration LLC were retained as service providers, but all such matters are wholly unrelated to these chapter 11 cases.  Additionally, Pillsbury attorneys (including those staffed on this matter) have appeared in cases in the United States Bankruptcy Court for the Southern District Texas for many years.  Pillsbury attorneys have had ordinary-course professional contacts with Judge Isgur, Judge Lopez and Judge Perez, as well as their courtroom deputies, and may have coincidentally (in passing) encountered one or more of the Court's judges and/or staff in public settings.  Pillsbury is active in ABI initiatives and

4904-0283-9886

represents clients in Puerto Rico, and some years ago met Andrew Jiménez, the Justice Department Trial Attorney presently assigned to the case, at an ABI event.  Otherwise, to my knowledge, contacts with Mr. Jiménez and the Office of the U.S. Trustee are limited to ordinary-course professional or coincidental public occasions..

23.     Financial institutions at which the Debtors maintain or maintained checking or savings accounts (but where such financial institutions are not creditors of the Debtors or their estates) are current clients of the Firm.  The Firm may use one or more of such financial institutions for its own banking needs.

24.     Despite the efforts described herein to identify and disclose Pillsbury's connections with potential parties in interest in these chapter 11 cases, Pillsbury is unable to state with certainty that every client relationship or other connection has been located and disclosed; though all that were located based on our diligence are hereby disclosed.  As these cases progress, Pillsbury will continue to conduct periodic searches of its databases to determine whether it has any relationships with significant parties in interest.  To the extent any information disclosed herein requires amendment or modification upon Pillsbury's completion of further review or as additional party in interest information becomes available to it, a supplemental declaration will be submitted to the Court reflecting such amended or modified information.

<u>CONCLUSION</u>

25.     For the reasons set forth above, I believe Pillsbury is eligible to be retained and employed by the Debtors as counsel pursuant to section 327(a) of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

4904-0283-9886

Date: August 15, 2025                    _/s/ Patrick J. Potter_____
                                         Patrick J. Potter
                                         Pillsbury Winthrop Shaw Pittman LLP

## Exhibit 1

*Engagement Letter*



**Pillsbury Winthrop Shaw Pittman LLP**
1200 Seventeenth Street, NW  |  Washington, DC 20036  |  tel 202.663.8000  |  fax 202.663.8007

Patrick Potter
Tel: +1.202.663.8928
patrick.potter@pillsburylaw.com

May 14, 2025

Mr. Edwin Clark
Partners Pharmacy Services, LLC
50 Lawrence Road
Springfield, NJ 07081

> **Re**:    **Engagement Agreement**

Dear Ed:

This letter confirms that the entities listed on **Addendum 1** (hereinafter referred to as "you" and "the Client") have engaged Pillsbury Winthrop Shaw Pittman LLP to advise and represent the Client in the matter described below and provides the terms and conditions of our agreement and engagement.

## ENGAGEMENT TERMS

1.    Scope of Engagement. Pillsbury will provide a broad range of services relating to (a) the sale of the Client's assets, (b) preparing the Client for filing chapter 11 under the U.S. Bankruptcy Code (the "Bankruptcy Code"), and (c) prosecuting all aspects of the chapter 11, including but not limited to providing services in connection with the sale of the Client's assets (including consummation thereof) under section 363 of the Bankruptcy Code and confirmation and implementation of a chapter 11 plan. The parties agree that Pillsbury will be compensated on the terms set forth herein for all services the Client and its agents request.

2.    Billing.  Our billing policies and procedures, rates, charges for disbursements, and other standard terms of engagement are provided on **Addendum 2** to this letter. During pre-engagement calls, you have asked about a range of possible legal fees for this matter. An issue we discussed was managing the current path forward (i.e., through chapter 11 and inevitable litigation) versus the non-bankruptcy path forward (which would not require the expenditure of funds on legal services related to chapter 11 and litigation). We agree that this is unfortunate. That said, we have advised you that the chapter 11 path forward will be costly. Even if everything went relatively smoothly, the

Mr. Ed Clark
Partners Pharmacy Services, LLC
May 14, 2025
Page 2

legal fees will likely exceed $2 million for the reasons we discussed during our calls.
The fact that creditors who would have been paid or otherwise taken care of under the
non-bankruptcy option but will likely be less so under chapter 11 will exacerbate the
likelihood of contention, litigation and legal costs. These are not unsurmountable
obstacles, but inevitable features of chapter 11 that add to the legal and other costs
associated with pursuing this path. To be clear, the legal fees and other costs could be
martially higher than $2 million if there is substantial contention and litigation. Finally,
as you know, legal fees are inherently difficult to estimate because neither you nor
Pillsbury can anticipate all the events that may require our time and services. While we
have not provided any estimates, if we do, these will not serve as caps or limits on our
fees and expenses. To understand status and manage expectations, we encourage regular
dialogue regarding our fees and estimates.

3.      Identity of the Client.  Except as set forth in the first paragraph of this letter and
unless agreed otherwise in writing, the Client will be our sole client in this engagement
and we will not be representing any of the Client's affiliated or constituent individuals
or entities, such as any parent or subsidiary companies, directors, officers, founders,
managers, general or limited partners, employees, members, or shareholders.

You and we acknowledge that Pillsbury may render advice that incidentally benefits
someone other than the Client. You agree that despite any such potential advice given,
no one other than the Client may rely on Pillsbury's advice and no one other than the
Client is thereby a Pillsbury client.

4.      Authorized Representative. You have advised us that Arrow Envoy Holdings,
LLC, Arrow Pharmacy Holdings LLC, Partners of Connecticut, LLC, Partners of
Massachusetts, LLC, Partners of Pennsylvania, LLC, Partners Pharmacy of Florida,
LLC, Partners Pharmacy of Maryland, LLC, Partners Pharmacy of Texas, LLC, Partners
Pharmacy of Virginia, LLC, Partners Pharmacy Services, LLC, Partners Pharmacy Shell
Point, LLC, and Partners Pharmacy, L.L.C. have each authorized Ed Clark to instruct us
on behalf of each of you in this joint representation.  Accordingly, Ed Clark's consent
below will serve as consent to the terms of this engagement on behalf of all of you.

5.      Conflicts of Interest and Advance Conflicts Waiver.

a.      Conflicts Check and Conflicts of Interest.  We have conducted certain conflicts
searches.

First, none of you (the Client) appear in our conflict system, whether as a Pillsbury
client, adverse to a Pillsbury client, or otherwise.

Second, we processed the creditors listed on **Addendum 3** through our conflict system.
While we continue to analyze the results, currently we understand that only one of the
creditors on Addendum 3 is a current client of Pillsbury.  Specifically, Pillsbury

Mr. Ed Clark
Partners Pharmacy Services, LLC
May 14, 2025
Page 3

represents McKesson Corporation on matters unrelated to you. Based on the information you have provided to us, we do not believe that this representation involves an actual conflict of interest. If any of you are aware of an actual conflict of interest, please let us know immediately. By signing this letter, you acknowledge that you have been advised of and waive any actual or potential conflict of interest associated with our concurrent representation of McKesson Corporation. You also acknowledge, by signing this letter, that you have had the opportunity to consult with other counsel about the consequences of agreeing to the foregoing and that we recommended that you do so.

Third, as we move forward, we will process all of the Client's material creditors, material contract counterparties, and other material stakeholders through our conflict system. Given that you do not appear in our conflict system, we are comfortable preliminarily concluding that we do not represent anyone on matters relating to you.

As we continue to work through the conflicts-check process, we will keep you apprised and provide reporting and updates as appropriate.

b.      Conflict of Interest in Joint Representation. Because we will be representing multiple clients in this engagement, the applicable rules of professional conduct require that we inform you of actual and potential conflicts of interest in joint representation and obtain your informed written consent to that joint representation. We have discussed with you the areas of potential conflicts which are briefly referred to herein. In light of these potential conflicts, we need the written consent of all of you.

Based on the information you have provided to us, we do not believe that this representation of joint clients involves an actual conflict of interest. If any of you are aware of an actual conflict of interest, please let us know immediately.

Even though there may be no actual conflict, there are potential conflicts. As we have discussed with you, differences in your respective financial resources, prior experience, interests and objectives could make one approach to our responsibilities more favorable to one of you than to the others, or could lead to disputes among you. For example, if we were to represent only one client, rather than all of you, we might be able to obtain more favorable treatment for that one. Because we will be representing all of you, it will be necessary to balance the interests of all parties rather than asserting the interests of only one party.

A joint representation also has implications for confidentiality and the attorney-client privilege. As for the attorney-client privilege, the prevailing rule is that as between commonly represented clients, the privilege does not attach. Hence, should any future dispute among you concerning the matter on which you have engaged us to represent you lead to litigation, the privilege may not protect communications that were commonly shared. As to confidentiality, none of you should have any expectation that information provided to us in connection with this engagement will be kept confidential from the

Mr. Ed Clark
Partners Pharmacy Services, LLC
May 14, 2025
Page 4

others. Because we will have the same duty of loyalty to each of you, such information will be shared and we might have to withdraw if any of you decides that some matter material to the representation should be kept from the others.

If a material dispute arises among you regarding the Engagement, you agree that we may continue to represent one or more clients (to be determined at the time by you and Pillsbury) and may withdraw from representing the remaining clients. You agree that in such event we may use (in any continuing representation) the information that we learned during the course of joint representation, and all of you waive the conflict of interest we would have in representing clients against former clients in a matter that is the same as or is substantially related to the one as to which we represented the former clients.

By signing the consent set forth below, each of you agrees to this joint representation in the engagement and agrees not to assert any conflict of interest based upon this joint representation, notwithstanding any adversity that may develop. You also acknowledge, by signing this letter, that you have had the opportunity to consult with other counsel about the consequences of this joint representation and that we recommended that you do so.

c.      Advance Conflicts Waiver.  Pillsbury is an international law firm that represents many different clients with diverse interests. Many of our clients conduct business or compete with one another. Our website, www.pillsburylaw.com, describes the types of clients we represent, the locations where we practice, and the matters we typically handle.

In the future, we may be asked to represent a party in a transaction or a dispute that is adverse or potentially adverse to you, where that transaction or dispute is unrelated to the matter involved in this engagement. Under the rules of professional conduct for lawyers in many of the jurisdictions where we practice, we may be precluded from representing a current or new client in a matter adverse or potentially adverse to you, even though that matter is unrelated to this engagement for you, unless we have specific agreement from you in advance that we may do so. Similarly, under the rules of professional conduct for lawyers in many of the jurisdictions where we practice, we may be precluded from representing you in a matter adverse or potentially adverse to another client of our firm, even though that matter is unrelated to our work for that other client, unless we have a conflict waiver from you and the other client in advance that we may do so.

We ask that you consent to or waive the conflicts of interest associated with our representing parties that are adverse to you in transactions and disputes so long as the matters are unrelated to our work for you. In addition, we ask that you consent to or waive the conflicts of interest associated with our representing you on transactional and dispute engagements where adverse parties are also clients of ours on matters unrelated to the engagement for you. You further agree that with respect to transactional matters

Mr. Ed Clark
Partners Pharmacy Services, LLC
May 14, 2025
Page 5

for you, we need not give you notice that adverse parties are Pillsbury clients unless you specifically ask us whether an adverse party is a client of ours. With respect to disputes, we will advise you if the adverse party is a Pillsbury client. We will not undertake any such representations unless we have a reciprocal waiver from the client that is adverse to you.

By signing this letter you confirm that you understand, consent and agree that we may take on such unrelated matters and that you waive any conflicts that such a future representation might present to the extent such consent and waiver may be required under applicable laws. We will preserve at all times your confidences under applicable rules of professional conduct and this advance waiver does not affect that obligation.

You also acknowledge, by signing this letter, that you have had the opportunity to consult with other counsel about the consequences of granting this advance waiver and that we recommended that you do so.

d.    Additional Conflict Information.  We also request your acknowledgement that you agree with us that it is not a conflict of interest under the applicable rules of professional conduct for us, in connection with funding opportunities, contracts or merger and acquisition transactions and related financing matters, to represent, using separate teams (commonly referred to as "trees") that maintain information barriers between such teams about these representations (except as may be agreed in respect of any particular subject such as, for example, shared expert diligence and a shared common or "neutral" diligence team), to represent competing applicants, bidders and/or advisors and financing sources for competing bidders. We, of course, will not accept an engagement from more than one client in such situations unless we believe that such additional representations will not have an adverse effect on the exercise of our independent professional judgment.  In connection with our representation of you or other clients in such competitive situations, we will not advise you about the merits of any of our other clients' competing applications or bids or challenge on your behalf the applications or bids of or any awards to other of our clients.  Your signature on this letter also confirms that you agree with this as to any current and future such transactions and, to the extent that there is in fact a conflict of interest under applicable rules of professional conduct arising from such multiple representations, you waive that conflict.

6.    Pillsbury Marketing.  The Client agrees that we may list the Client as a client in our marketing materials and note the general nature of the matters where we have represented the Client. We will preserve any confidential information obtained during the engagement.

7.    Termination or Withdrawal.  Unless otherwise agreed in writing, this engagement will terminate if no services are provided by us for a six-month period, except where we are awaiting an action or decision by a court, tribunal or agency, or specific actions are necessary to complete the engagement that extend beyond the 6-

Mr. Ed Clark
Partners Pharmacy Services, LLC
May 14, 2025
Page 6

month period.

The Client may terminate this representation at any time, with or without cause, by providing written notice to us.

We have the right to withdraw from the representation of the Client subject to applicable rules of professional conduct. Before withdrawing we will discuss with the Client any steps necessary to protect your interests in any ongoing matter including transfer to other legal counsel.

The termination or withdrawal of this engagement will not affect your responsibility to pay for services rendered and charges incurred on your behalf.

8.      Disputes.  If you disagree with the amount of our fees or other charges, or if you have any concerns about our work for you, please bring that to our attention as soon as possible.

Any and all disputes arising under or related to this agreement shall be resolved by the Court. A jury trial right, if any, is waived by the parties.

In the event that there is no bankruptcy proceeding for the Client (and thus no Court to resolve a dispute), and if any dispute between us arising from or relating to our work cannot be resolved informally, we both agree to forego the right to trial by jury and to resolve any disputes between us, or any disputes you have with any of our lawyers or staff, including but not limited to disputes over fees and charges, exclusively through private and confidential binding arbitration before JAMS, or another arbitral body if mutually agreed. The arbitration will be governed by JAMS Comprehensive Arbitration Rules and Procedures, conducted before one neutral arbitrator for any dispute where the claim is less than $300,000 or before three neutral arbitrators for any larger dispute, and the arbitrator or arbitrators will be authorized to award any damages or relief that a court of law having jurisdiction over the dispute could award.  Any award may be enforced in any court with jurisdiction.  You acknowledge by signing this letter that you have had the opportunity to consult with other counsel about the consequences of agreeing to binding arbitration and that we recommended that you do so.

To the extent that New York rules would apply to a dispute between us that cannot be readily resolved, you may have the right to request non-binding arbitration in New York City under Part 137 of the Rules of the Chief Administrator of the Office of Court Administration of the New York State Unified Court System or under applicable bar association procedures. By signing this engagement letter, you expressly waive that right and agree to binding private arbitration as provided above.

The parties hereby agree to a fee-shifting arrangement.  In the event of a litigated or arbitrated dispute, the prevailing party shall be entitled to recover its fees, expenses, and

4938-9268-4355.v1

Mr. Ed Clark
Partners Pharmacy Services, LLC
May 14, 2025
Page 7

costs (including legal and other professional fees). In the case of Pillsbury (which is a law firm), an award would include compensating Pillsbury lawyers and time-keepers pursuant to their prevailing hourly rates, in addition to expenses and costs incurred.

The parties agree that the substantive law of New York shall govern the terms of this agreement.

9.      Internal Communications.  There may be instances where our lawyers and staff find it useful to communicate about their professional obligations with inside or outside counsel for our firm.  For example, we may need to determine if a new representation of another client would present a conflict of interest because of our work for the Client, and if so, the form of waiver required.  Another example is where a dispute occurs between the Client and our firm.  The Client agrees that if our lawyers or staff have communications with our inside or outside legal counsel about our work for the Client, we have your consent to do so, and such communications will be deemed confidential and protected by our firm's attorney-client privilege.  Our representation of the Client shall not waive such privilege and the Client agree that we will not be obligated to disclose such privileged communications.

10.     Additional Engagements.  If the Client requests and we agree that our firm undertake additional engagements for the Client, or represent any of your affiliates, we will do so on the terms and conditions set forth in this letter unless otherwise mutually agreed in writing.

11.     Review and execution.  Please review this letter carefully and let us know if the Client has any questions.  Please note that if, after receiving this letter explaining the terms of our representation of the Client, the Client accepts any of our services for this engagement and does not first object to the terms contained in this letter, we will deem the Client to have accepted all the terms set forth in this letter.  We nonetheless ask the Client, if these terms are acceptable, to please sign and return the enclosed copy, keeping a copy for your files.

*[Remainder of Page Intentionally Left Blank]*

Mr. Ed Clark
Partners Pharmacy Services, LLC
May 14, 2025
Page 8

We are pleased to have this opportunity to be of service and we look forward to working
with the Client on the engagement.

Very truly yours,

Patrick J. Potter
Partner

Accepted and agreed to:

Arrow Envoy Holdings, LLC
Arrow Pharmacy Holdings LLC
Partners of Connecticut, LLC
Partners of Massachusetts, LLC
Partners of Pennsylvania, LLC
Partners Pharmacy of Florida, LLC
Partners Pharmacy of Maryland, LLC
Partners Pharmacy of Texas, LLC
Partners Pharmacy of Virginia, LLC
Partners Pharmacy Services, LLC
Partners Pharmacy Shell Point, LLC
Partners Pharmacy, L.L.C.

By_____
    Name: Edwin Clark
    Title: Chief Financial Officer
           Authorized Signer
    May 14, 2025

Mr. Ed Clark
Partners Pharmacy Services, LLC
May 14, 2025
Page 9

## ADDENDUM 1
## LIST OF DEBTORS

- Arrow Envoy Holdings, LLC

- Arrow Pharmacy Holdings LLC

- Partners of Connecticut, LLC

- Partners of Massachusetts, LLC

- Partners of Pennsylvania, LLC

- Partners Pharmacy of Florida, LLC

- Partners Pharmacy of Maryland, LLC

- Partners Pharmacy of Texas, LLC

- Partners Pharmacy of Virginia, LLC

- Partners Pharmacy Services, LLC

- Partners Pharmacy Shell Point, LLC

- Partners Pharmacy, L.L.C.

Mr. Ed Clark
Partners Pharmacy Services, LLC
May 14, 2025
Page 10

**ADDENDUM 2**
**BILLING AND DISBURSEMENTS**

1.   <u>Our Billing Policies and Procedures</u>.  Our fees are based on the number of hours devoted to this engagement.  We are pleased to have you (Client) as a client and in light of the nature of the engagement and our general billing practices, we are extending a **five percent (5%)** discount off our standard rates.  Our current rates, along with the discounted rates for the lawyers we currently know will work on the matter are as follows:

| Attorney Name/Category | 2025 Standard Rate | Discounted Rate |
|---|---|---|
| Associates | $795–1,250 | $755–$1,188 |
| Counsel | $1,275–$1,435 | $1,211–$1,363 |
| Patrick Potter | $1,690 | $1,605 |
| Dania Slim | $1,430 | $1,358 |

From time to time, it may become necessary or desirable to assign different or additional attorneys, paralegals or document production professionals to work on your matter. We will take appropriate and reasonably timely measures to advise you of additions to the team.

The rates for document production professionals may range from $60.00 to $125.00 USD per hour depending on the complexity of the assignment.

Our standard hourly rates are adjusted periodically to reflect the advancing experience, capabilities and seniority of our professionals as well as general economic factors. We will make good faith efforts to provide you with notice of any adjustment in rates for professionals working on your matter. New rates are typically first reflected in the invoice covering time spent in January of each year.

Fees generally will be billed within 30 days of the month in which the services are rendered, and disbursements and other charges will generally be billed within 30 to 60 days after they are incurred by us. Payment is due upon your receipt of our statement.

All signatories to the engagement letter agree that Pillsbury is under no obligation to "work for free" or provide services at any time without being reasonably assured of payment (including a specified source for such payment) of our fees and expenses.

Incidents of criminals hacking into email systems and then using spoofed emails to impersonate a legitimate sender are on the rise.  These schemes are most often used to fraudulently misdirect wired funds in connection with a transaction or other payment. In an effort to avoid being victimized, Pillsbury strongly encourages you to implement the following standard practice: whenever you receive new payment instructions from any source, you should independently

Mr. Ed Clark
Partners Pharmacy Services, LLC
May 14, 2025
Page 11

verify that the new instructions are correct using previously verified contact information. In the case of emails that purport to be from Pillsbury, we ask that you telephone your relationship partner or his or her assistant to confirm that the instructions have actually come from Pillsbury, and that they are correct. It would be extremely rare for you to receive a legitimate last-minute email from Pillsbury altering previously agreed upon wire transfer instructions. We appreciate your partnership in this important effort.

2.   Estimates of Fees and Expenses.   As indicated in the engagement letter, any estimates of anticipated fees that we provide at your request, whether for budgeting purposes or otherwise, are only an approximation of what the actual fees will be. Estimates are not a maximum or minimum fee quotation, and our fees will be determined based on actual hours incurred as provided above.

3.   Retainer.   As a condition to commencing services on this matter, the Client will wire a $1,000,000.00 "evergreen" retainer (the "Retainer") to Pillsbury. If an undisputed invoice (or any undisputed portion of an invoice) is not paid timely, Pillsbury is hereby authorized (but not required) to apply the Retainer funds to satisfy such invoice (or undisputed portion thereof). A condition to continued engagement is replenishing the Retainer to its $1,000,000.00 balance within ten (10) calendar days of the Client receiving notice that Pillsbury has drawn on the Retainer. The balance of the Retainer (net of amounts billed and work in progress shall be $1,000,000 as of the date of (and prior to) the filing of any bankruptcy petition. All unused retainer funds, net of fees and expenses due to Pillsbury, will be returned to the Client within thirty (30) days of the termination of this engagement.

4.   Disbursements.   In the course of our engagement, we will use our normal support systems. In addition to our fees for legal services, we will charge separately for certain costs, expense disbursements and taxes, as applicable. A list of our standard charges that may be incurred during the course of the engagement is set forth below.

Mr. Ed Clark
Partners Pharmacy Services, LLC
May 14, 2025
Page 12

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
**DISBURSEMENT CHARGE RATES [1] – USD**
*as of 01/01/2025*

| DISBURSEMENT/EXPENSE* | CLIENT CHARGE BASIS |
|---|---|
| ***Computer*** | |
| Litigation Support Data Hosting charges | $20 per GB per month |
| Computer Research (LexisNexis and Westlaw), etc. | Charged based on standard vendor rates per search, less a discount of 30% on Westlaw and LexisNexis searches, plus the hourly rate of the person conducting the search. |
| ***Document Preparation*** | |
| Convenience Copies, Printing, Scanning | $0.19 per page – Black and white<br>$0.44 per page – Color |
| Copy Center Reproduction and Printing (Photocopies, scans, images, etc.) | $0.15 per page (for jobs under 3,500 counts)<br>$0.10 per page (for jobs of 3,500 counts or more) |
| Oversized Copies | $0.75 per page |
| Color Copies | $0.40 per page (for jobs under 3,500 counts)<br>$0.35 per page (for jobs of 3,500 counts or more) |
| Document Binding (Briefs, formal presentation documents, etc.) | $1.25 per binding |
| CD Burn | $5.00 per burn |
| DVD Burn | $7.50 per burn |
| Tabs | $0.20 per tab |
| Litigation Preparation (Copying, scanning, etc). | $0.10 per page (light)<br>$0.12 per page (medium)<br>$0.15 per page (heavy)<br>$0.19 per page (glass work) |

---

\*    There is no charge for postage, faxes or domestic and international phone calls

[1]    All other expenses incurred and paid for by the firm on behalf of clients, including express courier service, court services, catering, equipment rental, third party conference calls, cell phone expenses, etc. are charged at cost. Disbursements for large vendor invoices (over $5000) will be forwarded directly to the client for payment. Alternatively, if the client prefers to have the firm pay the vendor for large invoices and include the disbursement on the next client bill, the firm will do so if the vendor agrees to defer payment of their invoice until the client pays the firm.

Mr. Ed Clark
Partners Pharmacy Services, LLC
May 14, 2025
Page 13

Mr. Ed Clark
Partners Pharmacy Services, LLC
May 14, 2025
Page 14

For matters involving patent work, we do not handle the payment of maintenance fees or annuities on granted United States or foreign patents. If you do not already have an arrangement for handling these payments, we suggest you consider engaging Computer Patent Annuities

("CPA") or another similar vendor to handle monitoring and payment of your annuities. CPA, which has no affiliation with us, presently handles approximately 1,000,000 renewal payments each year and has relationships with patent and trademark offices in every country in the world. Of course, you can attend to these payments yourself rather than make use of a vendor, but we recommend against doing so. Please inform us as soon as possible which vendor you currently use or plan to engage for payment of maintenance fees and annuities on granted patents.

5.   Electronic Discovery Activities and Charges. In the event that your matter involves processing, reviewing and/or producing documents, we may, with your approval, provide certain eDiscovery services to support these activities, including processing of electronic data for culling, analysis and review, hosting of electronic files and databases in one of our eDiscovery platforms ("eDiscovery databases"), assembling and distributing document and data productions, or performing related analytics, technical services and project management tasks. We may also perform research activities on your eDiscovery databases to improve productivity or provide analytic results or insights, consistent with our confidentiality obligations to you.

Our Litigation Support Department maintains resources within the firm's network to facilitate eDiscovery projects, as an alternative to using a third-party vendor or consultants for these services. If you elect to use our Litigation Support Department, you will be charged fees for eDiscovery services at hourly or unit-based (*e.g., per-gigabyte or per-document)* rates, depending on the nature of your project and the type of eDiscovery services we perform. This includes monthly hosting charges based on the volume of eDiscovery databases maintained in our platform on your behalf.

You agree to pay for eDiscovery services performed by us in connection with this engagement, regardless of the outcome of your matter. You authorize us to delete your eDiscovery databases, upon 10 days written notice of our intent to do so, at the conclusion of any eDiscovery project, or upon the termination of this engagement. You further authorize us to take your eDiscovery databases offline if you fall behind on payments to us and agree that we are under no obligation to continue hosting your eDiscovery databases or providing access to them if your account is not current. You also agree that you are entitled to receive a copy of your eDiscovery databases, but only upon written request received by us prior to their deletion, subject to our ordinary hourly rates and media charges and provided your payments to us are up to date.

6.   Communications, Files and Subpoenas. In working on the engagement, we will preserve communications and documents in either hard-copy or electronic form, depending on the circumstances, as reasonably necessary to represent you. As described below, some of these files belong to you ("Client Files") and some belong to us. The Client Files consist of those electronic and hard-copy documents that are kept in the central file that we maintain for each client matter. Before we transmit the Client Files to you at your request, we will remove administrative

Mr. Ed Clark
Partners Pharmacy Services, LLC
May 14, 2025
Page 15

documents, purely internal correspondence and drafts of documents or memoranda that we may prepare but do not transmit to you.

In the event we are required to respond to a subpoena or other formal request for records or other information relating to our services for you, including testimony at a deposition, we will consult you before responding to determine if you want to supply the information demanded and/or assert the attorney-client or other privilege that may apply. You agree to reimburse us for the time and expense for responding to such demands, including, without limitation, the time and expense for searching, locating, reviewing and copying responsive information, appearing at depositions or hearings, and litigating any issues raised at your request.

At the completion or termination of this engagement, you may request in writing the return or disposal of the Client Files. In order to collect and prepare the Client Files for delivery or disposal, we likely will need to spend time and incur expense. You agree to pay us at our regular rates for this time and pay any necessary disbursements. We will give you an estimate of our expected charges promptly after receipt of your written request for transfer or disposal of the files. In our discretion we may make and keep a copy of any Client Files being returned or disposed of at our expense.

If you do not request return of the Client Files, we will maintain them for a period of five years, after which time you agree that we may dispose of them in a confidential manner. Prior to disposal of the Client Files, we will advise you in writing, at the last known address in our files, of our intent to do so in order to give you an opportunity to request the materials. We may dispose of our own files at any time without notice to you.

Please also note that if electronic communications are sent or received by you on a computer or other device that may be accessed by third parties, the privilege protection that such communications with us might otherwise be afforded may be lost. We therefore strongly encourage you not to use such a device when communicating with us. Please also note that our records may be accessed electronically by all our offices and that we may store records using "cloud computing."

7. <u>Non-legal Services</u>. Because we are a law firm, we provide only legal services. In the engagement we will not provide any investment, insurance, accounting or technical advice, make business decisions, or investigate the character or credit of those with whom you may be dealing.

## Exhibit 2

*Potential Parties in Interest*

## POTENTIAL PARTIES IN INTEREST

**Debtors**
Arrow Envoy Holdings, LLC
Arrow Pharmacy Holdings LLC
Partners of Connecticut, LLC d/b/a Partners Pharmacy
Partners of Florida, LLC d/b/a Advanced Pharmacy
Partners of Massachusetts, LLC
Partners of New York, LLC
Partners of Pennsylvania, LLC
Partners Pharmacy of Maryland, LLC d/b/a Advanced Pharmacy
Partners Pharmacy of Texas, LLC d/b/a Advanced Pharmacy
Partners Pharmacy of Virginia, LLC
Partners Pharmacy Services, LLC f/k/a Aveta Pharmacy Services, LLC
Partners Pharmacy Shell Point, LLC
Partners Pharmacy, L.L.C. d/b/a Discover RX
Solutions Homecare, L.L.C.

**Non-Debtors Affiliates**
Care One Ancillary Holdings, LLC
Care One, LLC
Health Resources Partners, LLC
HRP Capital Inc.
North American Medical Management-New Jersey, Inc.

**Prospective Buyer**
CS One, LLC

**Secured Creditors/Lenders**
CS One, LLC
Cardinal Health 110, LLC d/b/a ParMed Pharmaceuticals*
Cardinal Health 112, LLC
Cardinal Health, Inc.

**Banks**
First Citizens Bank

**Current Directors & Officers**
Daniel E. Straus
David Baruch
Derek Corriveau
James Matthews
Joseph S. Straus
Harvey Tepner

**Former Directors & Officers**
Anthony Spero

Patrick Downey
Thomas McKinney

**Current Shareholders**
Care Solutions, LLC (f/k/a Aveta Ancillary Services, LLC)

**Top 30 Unsecured Creditors**
24/7 Xpress Enterprises, LLC
50 Lawrence EFP LLC
Access
Allied Medical Waste
ANDA
Baxter Healthcare Corp
CAPSA Solutions, LLC
Cardinal Health 110, LLC d/b/a ParMed Pharmaceuticals*
Central Admixture Pharmacy Service, Inc.
CohnReznick LLP
First Financial Corporate Leasing, LLC
Integrated Medical Systems Inc.
Interchange RX, LLC
Kasowitz Benson Torres LLP
Kinray Inc
Konica Minolta
McKesson Corporation.
Medbank
Medline Industries, Inc
Meriplex Solutions, LLC
Moderna US Inc
Omnicell Inc
Partners Acquisition SRX LLC
PointClickCare, Inc
RemedyRepack, Inc
SoftWriters, INC.
Specialty RX, Inc.
StatimRx, LLC
Strategic Delivery Solutions, LLC
Trinity Healthcare Solutions, LLC
Wells Fargo Vendor Financial Services LLC

**Significant Customers**
Care One Management, LLC
Division of Developmental Disabilities of the New Jersey Department of Human Services
Division of Behavioral Health Services of the New Jersey Department of Health
New Jersey Department of Military and Veterans Affairs

**Insurance**
Arch Insurance Company
Continental Insurance Company of New Jersey
Corvus
Liberty Mutual
Safety National Casualty Group
The Standard Insurance

**Landlords**
Aster Group
CBRE (CP Oakley)
Eckstein Properties LLC
Industrial Builders & Realty
Somerset Properties, Inc.

**Litigation Parties**
Anda, Inc.
Dawn-Michele Blalock
Estate of Richard Francis Rogan
Integrated Medical Systems, Inc.
McKesson Corporation
McKesson Medical-Surgical Minnesota Supply Inc.
Nevada Generation Strategic, LLC d/b/a Nevada Infusion

**Ordinary Course Professionals**
Ranalli & Zaniel, PC
The Denver Law Firm

**Debtors' Professionals**
Kroll Restructuring Administration LLC
Pillsbury Winthrop Shaw Pittman LLP
Gibbins Advisors, LLC
SSG Advisors, LLC

**Taxing & Regulatory Authorities**
Albert Uresti, Bexar County Tax Assessor/Collector (Texas)
Aldine Independent School District (Texas)
Ann Harris Bennett, Tax Assessor-Collector (Texas)
Bexar County Tax Assessor/Collector (Texas)
Bloomfield Tax Collector (Connecticut)
Brazoria Co. M.U.D. No. 17 (Texas)
Cameron County Tax Assessor/Collector (Texas)
Carmen P. Turner, Fort Bend County Tax Assessor/Collector (Texas)
City Of Garland (Texas)
City of Marlborough (Massachusetts)
City of Newton Treasury Department (Massachusetts)

Clear Creek I.S.D. Tax Office (Texas)
Collin County Tax Assessor/Collector (Texas)
Dallas County Tax Office (Texas)
Dennis W. Hollingsworth, St. Johns County Tax Collector (Florida)
El Paso County Tax Assessor/Collector (Texas)
Ellis County Tax Assessor/Collector (Texas)
Fairfax County Department of Tax Administration (Texas)
Fort Bend CO. M.U.D. #50 (Texas)
Fort Bend County Tax Assessor/Collector (Texas)
Galveston County Tax Assessor/Collector (Texas)
Harris County Tax Assessor/Collector (Texas)
Hays County Tax Assessor/Collector (Texas)
Hill Cad Tax Collections, Mike McKibben, TX Assessor/Collector
Hill County Tax Assessor/Collector (Texas)
Hill County Tax Office (Texas)
Hillsborough County Tax Collector (Florida)
Jim Overton, Duval County Tax Collector (Florida)
John Power, Alachua County Tax Collector (Texas)
John R. Ames, Tax Assessor/Collector (Texas)
Johnson County Tax Assessor/Collector (Texas)
Kenneth L. Maun, McKinney (Texas)
Kristin R. Bulanek, Brazoria County Tax Assessor/Collector (Texas)
Lee County Tax Collector (Florida)
Limestone County Tax Assessor/Collector (Texas)
Llano County Tax Assessor/Collector (Texas)
Lubbock County Tax Assessor/Collector (Texas)
Manatee County Tax Collector (Florida)
McLennan County Tax Assessor/Collector (Texas)
Mesquite Tax Office (Texas)
Michelle French, Denton County Tax Assessor/Collector (Texas)
Monica Madrigal, Webb County Assessor/Collector(Texas)
Montgomery County Tax Assessor/Collector (Texas)
New Jersey Department of Revenue
Orange County Tax Collector (Florida)
Pinellas County Tax Collector (Texas)
Polk County Tax Collector (Florida)
Randy H. Riggs, McLennan County Tax Assessor/Collector (Texas)
Richardson Independent School District Tax Office (Texas)
Rockwall County Tax Assessor/Collector (Texas)
Scott Porter, Johnson County, Tax Assessor/Collector (Texas)
Seminole County, Tax Collector (Florida)
Sharon W. Jordan, Suwannee County Tax Collector (Florida)
Somervell County, Tax Assessor/Collector (Texas)
South Fire District (Connecticut)
Tammy J. McRae (Texas)
Tarrant County Tax Assessor/Collector (Texas)

Texas City I.S.D. Tax Office (Texas)
Texas Comptroller of Public Accounts
Town of Chatham Treasurer/Tax Collector (Massachusetts)
Town of Farmington (Connecticut)
Town of Marlborough Tax Collector's Office (Massachusetts)
Town of Wytheville Treasurer's Office (Virginia)
United States Treasury
Washington County Treasurer's Office (Virginia)
Whitney I.S.D. Tax Office (Texas)
Wichita County Tax Assessor/Collector (Texas)
Will Roberts, Volusia County Tax Collector (Florida)
Williamson County Tax Assessor/Collector (Texas)
Woodlands Metro Center M.U.D. (Texas)

**Utility Providers**
ADT Commercial LLC d/b/a Everon
Confires Fire Protection
Connecticut Natural Gas Corp.
Eversource
Fluent Stream
JCP&L
Meriplex
National Grid
New Jersey American Water
NRJ
PPL Electric Co
PSE&G
Ready Fresh
Reliant
The Connecticut Water Company
UGI Utilities
Waste Management
Windstream

**Bankruptcy Judges & Clerks**
Hon. Alfredo R. Pérez
Hon. Christopher M. Lopez
Hon. Eduardo V. Rodriguez
Hon. Jeffrey P. Norman
Hon. Marvin Isgur
Nathan Ochsner

**United States Trustee's Office**
   Houston, TX
Alethea Caluza
Alicia Barcomb

4904-0283-9886

Alina Samko-Yu
Andrew Jimenez
Christopher R. Travis
Christy Simmons
Glenn Otto
Gwen Smith
Ha Nguyen
Ivette Gerhard
Jana Whitworth
Jayson B. Ruff
Linda Motton
Millie Aponte Sall
Samantha Chilton
Vianey Garza
Yasmine Rivera
  San Antonio, TX
Adrian Duran
Aubrey Thomas
Carey A. Tompkins
Erin Coughlin
Genny Henicke
Jeremy Flannery
Jessica L. Hanzlik
Jim Rose
Omar E. Jones
  Austin, TX
Carolyn Feinstein
Catherine L. Sughrue
Gary Wright
Rebekah Csabi
Shane P. Tobin
Tisha Savannah

## Exhibit 3

*Client Match List*

## CLIENT MATCH LIST

**Current Client**
Cameron County
Connecticut Natural Gas Corp.
Connecticut Water Company
First Citizens Bank
McKesson Corporation
PSE&G
Waste Management
Wells Fargo
Windstream

**Affiliate of Current Client**
ANDA
Aster Group
Kroll Restructuring Administration LLC
StatimRx, LLC

**Former Client**
ANDA
Baxter Healthcare Corp.
Cardinal Health 110, LLC d/b/a ParMed Pharmaceuticals
CareOne Management
CBRE
Continental Insurance Company
Elizabeth S. Straus
Eversource
Fort Bend County Municipal Utility Districts 58, 106, 116 & 119
Gary Wright
Harris County Municipal Utility District 119 along with several other Municipal Districts
Hillsborough County
Integrated Medical Systems
JCP&L
Kasowitz Benson Torres LLP
Konica Minolta
Liberty Mutual
PPL Electric Co.
Standard Insurance
UGI Utilities

**Director/Officer Hit**
Larry Sannicandro – Member of the Internal Revenue Service Advisory Council

# EXHIBIT C

*Matthews Declaration*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Partners Pharmacy Services, LLC, *et al.*, [1] | Case No. 25-34698 |
| Debtors. | (Jointly Administered) |

## DECLARATION OF JAMES C. MATTHEWS
## IN SUPPORT OF THE DEBTORS' APPLICATION FOR ENTRY OF
## ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF
## PILLSBURY WINTHROP SHAW PITTMAN LLP AS COUNSEL TO
## THE DEBTORS EFFECTIVE AS OF THE PETITION DATE

I, James C. Matthews, hereby declare under penalty of perjury, to the best of my knowledge

and belief, and after reasonable inquiry, as follows:

1.      I am the Chief Operating Officer of the above-captioned debtors and debtors in

possession (collectively, the "Debtors"), and I hereby declare under penalty of perjury:

2.      Based on my experience with the Debtors, my review of relevant documents, and

my discussions with the Debtors' advisors and management team, I am familiar with the Debtors'

day-to-day operations, business affairs, and books and records.  Accordingly, I am in all respects

competent to make this declaration (this "Declaration") in support of the *Debtors' Application for*

*Entry of Order Authorizing the Retention and Employment of Pillsbury Winthrop Shaw Pittman*

*LLP as Counsel to the Debtors Effective as of the Petition Date* (the "Application"). [2]

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Arrow Envoy Holdings, LLC (5695); Arrow Pharmacy Holdings, LLC (0080); Partners of Connecticut, LLC (1828); Partners of Massachusetts, LLC (2604); Partners of New York, LLC (0039); Partners of Pennsylvania, LLC (0841); Partners Pharmacy of Florida, LLC (9364); Partners Pharmacy of Maryland, LLC (0961); Partners Pharmacy of Texas, LLC (2017); Partners Pharmacy of Virginia, LLC (6232); Partners Pharmacy Services, LLC (9038); Partners Pharmacy Shell Point, LLC (1616); Partners Pharmacy, L.L.C. (4578); and Solutions Homecare, L.L.C. (1583).  The Debtors' service address in these chapter 11 cases is 173 Bridge Plaza North, Fort Lee, NJ 07024.

[2]   Capitalized terms used but not defined herein shall have the meanings given to such terms in the Application.

3.      Except as otherwise noted, all facts in this Declaration are based on my personal knowledge of the matters set forth herein, information gathered from my review of relevant documents and information supplied to me by other members of the Debtors' management and the Debtors' advisors.

4.      I was directly involved in the Debtors' decision to retain Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury" or the "Firm") as counsel in these cases.  The Debtors so selected Pillsbury because of the Firm's (i) extensive knowledge, expertise, and experience in the field of debtors' and creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code and (ii) familiarity, through its pre-petition representation of the Debtors, of the Debtors' business, financial affairs, and capital structure.  Based on Pillsbury's past experience in other bankruptcy cases, Pillsbury's broad and directly applicable skill set, and the Debtors' experience with Pillsbury since engaging the firm in May 2025, the Debtors decided to retain Pillsbury as counsel in these chapter 11 cases.  I believe that Pillsbury is both well qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and effective manner.

5.      In selecting Pillsbury, the Debtors reviewed Pillsbury's rates, including rates for bankruptcy services, and compared them to outside law firms that the Debtors have used in the past to determine that Pillsbury's rates are reasonable.  Prior to engaging Pillsbury, the Debtors considered their options, and interviewed at least one other national law firm.  Based on their own internal process, the Debtors selected and engaged Pillsbury.

6.      As the Chief Operating Officer of the Debtors, I am familiar with the terms of Pillsbury's engagement.  Pillsbury has confirmed to me that the Firm does not vary its billing rates or the material terms of an engagement depending on whether such engagement is a bankruptcy or a non-bankruptcy engagement.  Pillsbury has advised me that its current customary U.S. hourly

4904-0283-9886

rates for professionals anticipated to work on the chapter 11 cases (and corresponding discounted rates that the Debtors negotiated with Pillsbury) are:

| Attorney Name | Title | Law School Graduation Year | 2025 Standard Rate | Discounted Rate |
|---|---|---|---|---|
| Patrick Potter | Partner | 1989 | $1,690 | $1,605 |
| Dania Slim | Partner | 2008 | $1,430 | $1,358 |
| Lillian Kim | Partner | 2010 | $1,390 | $1,320 |
| Nina Bakhtina | Counsel | 2017 | $1,275 | $1,210 |
| James Dickinson | Associate | 2017 | $1,180 | $1,120 |
| Amy West | Associate | 2024 | $795 | $755 |
| Paraprofessionals | N/A | N/A | $510 | $510 |

7.      It is my understanding that Pillsbury reviews and adjusts its billing rates annually. Pillsbury has advised me that it will inform the Debtors of any adjustment to its existing rate structure.  I approve Pillsbury's compensation arrangement.  I understand the rates that Pillsbury is charging the Debtors for bankruptcy-related services in these cases are lower than their standard rates for non-bankruptcy related services.  Any future rate increase will apply to both bankruptcy and non-bankruptcy services it provides to clients.

8.      I understand that Pillsbury's fees and expenses will be subject to periodic review during the pendency of these Chapter 11 Cases by, among other parties, the U.S. Trustee and the Debtors, in accordance with the terms of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any orders of the Court governing the procedures for approval of interim compensation of professionals retained in chapter 11 cases.

9.      The Debtors recognize that in chapter 11 cases such as these, there may be a number of unforeseen fees and expenses that will need to be addressed by the Debtors and Pillsbury.  The Debtors also recognize that it is the Debtors' responsibility to closely monitor the billing practices of Pillsbury and its other counsel to ensure that fees and expenses paid by the Debtors' estates remain consistent with the Debtors' expectations, taking into account the exigencies of these

4904-0283-9886

chapter 11 cases.  To that end, the Debtors will continue to review and monitor the invoices submitted by Pillsbury.

10.     As it did pre-petition, the Debtors will continue to supervise Pillsbury's fees and expenses and manage costs.

11.     By virtue of the foregoing, and for the reasons set forth in the Application and the Potter Declaration in support thereof (both of which I have reviewed an approve the content of), the Debtors believe that Pillsbury is well-qualified to represent the Debtors in these chapter 11 cases as their bankruptcy counsel and seek entry of an order, substantially in the form attached to the Application, authorizing the Debtors to retain Pillsbury as counsel effective as of the Petition Date in accordance with the terms set forth in the Application.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:   August 15, 2025                    Respectfully submitted,

                                            _/s/ James C. Matthews_____
                                            James C. Matthews
                                            Chief Operating Officer