**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Partners Pharmacy Services, LLC, *et al.*,[1] | Case No. 25-34698 (CML) |
| Debtors. | (Jointly Administered) |

**DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING THE DEBTORS TO
RETAIN AND EMPLOY SSG ADVISORS, LLC AS INVESTMENT BANKER TO THE
DEBTORS EFFECTIVE AS OF THE PETITION DATE**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on September 10, 2025 at 1:00 p.m. (prevailing Central Time) at the United States Court for the Southern District of Texas, 515 Rusk Street, Courtroom 401, Houston, Texas 77002. You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge 's home page. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Arrow Envoy Holdings, LLC (5695); Arrow Pharmacy Holdings, LLC (0080); Partners of Connecticut, LLC (1828); Partners of Massachusetts, LLC (2604); Partners of New York, LLC (0039); Partners of Pennsylvania, LLC (0841); Partners Pharmacy of Florida, LLC (9364); Partners Pharmacy of Maryland, LLC (0961); Partners Pharmacy of Texas, LLC (2017); Partners Pharmacy of Virginia, LLC (6232); Partners Pharmacy Services, LLC (9038); Partners Pharmacy Shell Point, LLC (1616); Partners Pharmacy, L.L.C. (4578); and Solutions Homecare, L.L.C. (1583). The Debtors' service address in these chapter 11 cases is 173 Bridge Plaza North, Fort Lee, NJ 07024.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this application (the "Application"):

**RELIEF REQUESTED**

The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A**, (i) authorizing the Debtors to retain SSG Advisors, LLC ("SSG"), as investment banker as of the Petition Date (defined below) in accordance with the engagement agreement attached hereto as **Exhibit B** (the "Engagement Agreement"); (ii) waiving certain information requirements; and (iii) granting related relief.

In support of this Application, the Debtors submit the *Declaration of Mark E. Chesen in Support of the Debtors' Application for an Order Authorizing the Debtors to Retain and Employ SSG Advisors, LLC as Investment Banker to the Debtors Effective as of the Petition Date* attached hereto as **Exhibit C** (the "Chesen Declaration").  In further support of this Application, the Debtors state as follows:

**JURISDICTION AND VENUE**

1.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors consent to entry of a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested are sections 327 and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014 and 2016 of the Federal Rules of

2

Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Local Rules for the Southern District of Texas (the "Local Rules").

**BACKGROUND**

4.     On August 13, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these cases.

5.     The Debtors serve the medication management needs of residents at skilled nursing facilities, assisted living communities, long-term care residences, long-term acute care hospitals, and institutional care facilities across the United States. These services are delivered through a network of in-house pharmacies and supported by a range of advanced technologies and capabilities, including automation systems, infusion therapy technologies, compounding services, clinical decision-support tools, and a dedicated team offering clinical support services.

6.     Additional information about the Debtors, including their business operations, corporate and capital structure, and the events leading to the filing of these cases is detailed in the *Declaration of Ronald M. Winters in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

**SSG'S QUALIFICATIONS**

7.     SSG is an internationally recognized investment banking firm that helps middle market companies and their stakeholders in special situations transactions.  Since its founding in 2001, SSG has completed over 450 investment banking assignments.

8.     SSG's professionals have expertise in mergers and acquisitions, private placements, financial transactions, valuations, and financial advisory services.  Moreover, SSG

3

has substantial expertise advising troubled companies in numerous situations, including in connection with asset sales and related issues.  As a result, SSG is well suited to serve as the Debtors' investment banker in connection with these cases.

9.      SSG's professionals have extensive experience in matters involving complex financial restructuring.  Specifically, SSG has served as an investment banker for debtors and other parties in many bankruptcy cases, including:  *In re Eiger BioPharmaceuticals, Inc., et al*., Case No. 24-80040 (SGJ) NDTX; *In re Escambia Operating Co., LLC*, Case No. 23-50491 (JAW) SDMS Gulfport; *In re SanoTech360, LLC*., Case No. 23-40261 (ELM) NDTX Fort Worth; *In re Soft Surroundings Holdings, LLC, et al*., Case No. 23-90769 (CML) SDTX Houston; *In re Watson Valve Services, Inc*., Case No. 20-30968 (MI) SDTX Houston; *In re Papa Grande Gourmet Foods, LLC*, Case No. 19-50390 (RBK) WDTX San Antonio; *In re Francis Drilling Fluids, LTD., et al*., Case No. 18-35441 (MI) SDTX Houston; *In re American Fuel Cell and Coated Fabrics Company*, Case No. 17-44766 (MXM) NDTX Fort Worth; *In re A'GACI LLC*, Case No. 18-50049 (RBK) WDTX San Antonio; *In re TPP ACQUISITION, INC. d/b/a The Picture People*, Case No. 16-33437 (HDH) NDTX Dallas; *In re Stone Panels, Inc*., Case No. 16-32856 (HDH) NDTX Dallas; *In re Forest Park Medical at Fort Worth, LLC*, Case No. 16-40198 (RFN) NDTX Fort Worth; *In re Thinkstream Incorporated of Delaware*, Case No. 15-10553 (DDD) Middle District of Louisiana; *In re ITS Engineered Systems, Inc*., Case No. 15-32145 (KKB) SDTX Houston; *In re One Source Industrial Holdings, LLC*, Case No. 14-44996 (RFN) NDTX Fort Worth; *In re Color Star Growers of Colorado, Inc*., et al., Case No. 13-42959 (BTR) EDTX Sherman.  As a result, the Debtors believe that SSG is well qualified to provide investment banking services and represent the Debtors' interests in these cases.

4902-1100-8846

10.     As set forth in the Chesen Declaration, SSG was engaged to provide investment banking services pursuant to the Engagement Agreement.  Since execution of the Engagement Agreement, SSG has reviewed critical documents and worked with the Debtors and their senior management and other professionals to become familiar with the Debtors' corporate and capital structure, management, operations, and various other aspects of their business.  SSG's knowledge of the Debtors and their assets and operations place it in the best position to continue providing the Debtors with investment banking services, especially considering the accelerated timeline to effectuate a sale of the Debtors' assets.

### SERVICES TO BE PROVIDED

11.     The professional services that SSG will render to the Debtors in these cases will include:

   a.     advising the Debtors on, and assisting the Debtors in preparing an information memorandum describing the Debtors, their management, and financial status for use in discussions with prospective purchasers and to assist in the due diligence process for a potential sale transaction;

   b.     assisting the Debtors in developing a list of suitable potential buyers who will be contacted on a discreet and confidential basis after approval by the Debtors;

   c.     coordinating the execution of confidentiality agreements for potential buyers wishing to review the information memorandum;

   d.     assisting the Debtors in coordinating management calls and site visits for interested buyers and working with management to develop presentations for such calls and visits;

   e.     soliciting competitive offers from potential buyers;

   f.     advising and assisting the Debtors in structuring a sale transaction, negotiating a sale transaction agreement with potential buyers and evaluating the proposals from potential buyers, including advising and negotiating with respect to licenses, milestone and royalty payments, or assignments of intellectual property, as necessary;

   g.     providing testimony in support of a sale transaction, as necessary; and

4902-1100-8846

      h.     assisting the Debtors, their attorneys and accountants, as necessary, through closing of a sale transaction on a best efforts basis.

12.    The Debtors submit that these services are necessary to assist the Debtors in maximizing the value of their estates. SSG's resources, capabilities, and experience are necessary and important to the Debtors' chapter 11 efforts. As a highly-qualified investment banking firm, SSG fulfills a critical need that complements the services offered by the Debtors' other professionals. The services provided by SSG will not duplicate the services provided by the Debtors' other retained professionals, and SSG will use reasonable efforts to coordinate with the other professionals to avoid unnecessary duplication of services.

13.    Contemporaneously with the filing of this Application, the Debtors are filing applications for authority to retain: (a) Pillsbury Winthrop Shaw Pittman LLP, as lead restructuring counsel; and (b) Gibbins Advisors, LLC, as financial advisor.

### PROFESSIONAL COMPENSATION

14.    In consideration for SSG's services and as more fully described in the Engagement Agreement, the Debtors propose to pay SSG the following compensation set forth in the Engagement Agreement (the "Fee and Expense Structure"), contingent on the Court's approval:

    a.    Initial Fee. An initial fee (the "Initial Fee") of $50,000, which was due upon signing the Engagement Agreement. Fifty percent (50%) of the Initial Fee will be credited towards a Transaction Fee (defined below).

    b.    Monthly Fees. Monthly fees (the "Monthly Fees") of $50,000 per month payable beginning July 10, 2025 and on the tenth (10th) of each month thereafter throughout the Engagement Term (as defined in the Engagement Agreement). Fifty percent (50%) of the first three (3) Monthly Fees will be credited toward a Transaction Fee.

    c.    Sale Fee. Upon the consummation of a sale to any party, a fee (the "Sale Fee") equal to the greater of (a) $600,000 plus (b) four percent (4.0%) of Total Consideration (as such term is defined in the Engagement Agreement) in excess of $51.7 million, payable in cash, in federal funds via wire transfer, or certified check, at and as a condition of closing of such a sale. Notwithstanding the foregoing, if the sale transaction is to the stalking horse purchaser without a qualified overbid, then the Sale Fee shall be $500,000.

d.  Restructuring Fee. Upon the consummation of a restructuring, a fee ("Restructuring Fee") equal to $500,000 payable in cash, in federal funds via wire transfer, or certified check, at closing of any such restructuring.

e.  Duplication of Transaction Fees.  SSG will only be entitled to either a Sale Fee or a Restructuring Fee (each, a "Transaction Fee"), the greater of the two fees.  As noted above, fifty percent (50%) of the first three (3) Monthly Fees will be credited toward a Transaction Fee.

f.  In addition to the foregoing Initial Fee, Monthly Fees and Transaction Fee, SSG will be entitled to reimbursement for all of SSG's reasonable and documented out-of-pocket expenses incurred in connection with the Engagement Agreement whether or not a sale transaction or restructuring transaction is consummated.

15.   The Fee and Expense Structure is comparable to the fees and expenses charged by similar firms for comparable engagements, both in and out of bankruptcy.  The Fee and Expense Structure also is consistent with SSG's normal and customary billing practices for cases of this size and complexity that require the level and scope of services outlined above.  SSG and the Debtors believe that the Fee and Expense Structure is reasonable.

16.   SSG's strategic and financial expertise, capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which may be required during the term of SSG's engagement, were important factors in negotiating the Fee and Expense Structure.  The Debtors believe that the ultimate benefit of SSG's services hereunder cannot be measured by reference to the number of hours to be expended by SSG's professionals in the performance of such services.

17.   SSG has not shared or agreed to share any compensation to be paid by the Debtors with any other person, other than other principals and employees of SSG, in accordance with section 504 of the Bankruptcy Code.

18.   SSG's final application for compensation and expenses will be paid by the Debtors, pursuant to the terms of the Engagement Agreement, in accordance with the procedures established

by the Court.  For the avoidance of doubt, SSG shall be paid its Monthly Fees without the need for monthly or interim applications for compensation.

19.     To the extent that SSG uses the services of independent contractors or subcontractors (collectively, the "<u>Contractors</u>") in these cases, SSG shall (i) pass through the cost of such Contractors at the same rate that SSG pays the Contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors are subject to the same conflicts checks as required for SSG; and (iv) file with this Court the disclosures required by Bankruptcy Rule 2014.

20.     Due to SSG's commitment to the level of time and effort necessary to address any issues as they arise, and the market prices for SSG's services for engagements of this nature both in and out of chapter 11, the Debtors believe that the Fee and Expense Structure is market-based and fair and reasonable.

<strong><u>DISINTERESTEDNESS</u></strong>

21.     To the best of the Debtors' knowledge, neither SSG nor any of its employees: (a) is a creditor or an insider of the Debtors; (b) is or was, within two years before the Petition Date, a director, officer, or employee of the Debtors; or (c) has an interest materially adverse to the interest of the Debtors' estates or of any class of creditors, by reason of any direct or indirect relationship in connection with, or interest in, the Debtors, or for any other reason.

22.     As detailed in the Chesen Declaration, SSG has conducted a search of its client databases with respect to the Debtors and parties in interest in these cases.  Based on the list attached at **Exhibit 1** to the Chesen Declaration. The results of that search are set forth in **Exhibit 2** to the Chesen Declaration.  Based on the results of the search, SSG has informed the Debtors that SSG does not hold or represent any interest adverse to the Debtors' estates, except as may be set forth in the Chesen Declaration, and that SSG is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

23.     SSG has also informed the Debtors that it will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new material facts or relationships are discovered or arise, SSG will supplement its disclosure to the Court.

24.     Accordingly, the Debtors believe that SSG is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.

**INDEMNIFICATION**

25.     The Engagement Agreement contains standard indemnification language with respect to SSG's services including an agreement by the Debtors to indemnify SSG and its affiliates, partners, directors, officers, employees and agents (each, an "Indemnified Party" and collectively, the "Indemnified Parties") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of SSG that is the subject of the Engagement Agreement, except to the extent caused by gross negligence, bad faith or willful misconduct of any Indemnified Party.

26.     SSG believes that the indemnification provisions in the Engagement Agreement, as may be amended in the proposed order attached to this Application, are customary and reasonable for SSG and comparable firms providing investment banking services, and as would be modified pursuant to the foregoing limitations, reflect the qualifications and limitations on indemnification provisions that are customary in this district.

27.     Moreover, the terms and conditions of the indemnification provisions were negotiated by the Debtors and SSG at arm's length and in good faith.  The provisions in the Engagement Agreement, viewed in conjunction with the other terms of SSG's proposed retention, are reasonable and in the best interest of the Debtors, their estates, and all parties in interest given that the Debtors require SSG's services to run an accelerated sale process. Accordingly, as part of

this Application, the Debtors request the Court approve the indemnification provisions in the Engagement Agreement, as may be amended by the proposed order attached to this Application.

### REQUEST FOR WAIVER OF CERTAIN TIME KEEPING REQUIREMENTS OF LOCAL RULE 2016-2

28.     It is not the general practice of investment banking firms, including SSG, to keep detailed time records similar to those customarily kept by attorneys.  Because SSG does not ordinarily maintain contemporaneous time records in one-tenth hour increments, provide or conform to a schedule of hourly rates for its professionals, and SSG's proposed compensation is based on fixed fees, the Debtors request that SSG be excused from compliance with any such requirements notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, other applicable orders of this Court, or any other guidelines regarding the submission and approval of fee applications.  Instead, SSG proposes to maintain records of services rendered to the Debtors, including summary descriptions of those services, the time expended in providing those services in half-hour increments and the identity of the individuals who provided services.  SSG will include such records in its final fee application.  Bankruptcy courts in this district have approved similar waivers.  *See, e.g.*, *In re Steward Health Care Sys. LLC*, Case No. 24-90213 (Bankr. S.D. Tex. June 12, 2024) (CML); *In re Envision Healthcare Corp.*, Case No. 23-90342 (Bankr. S.D. Tex. Aug. 17, 2023) (CML); *In re Quotient Ltd.*, Case No. 23-90003 (DRJ) (Bankr. S.D. Tex. Feb. 15, 2023); *In re Cineworld Grp. plc*, Case No. 22-90168 (MI) (Bankr. S.D. Tex. Nov. 28, 2022); *In re Talen Energy Supply, LLC*, Case No. 22-90054 (MI) (Bankr. S.D. Tex. July 26, 2022); *In re GWG Holdings, Inc.*, Case No. 22-90032 (MI) (Bankr. S.D. Tex. June 17, 2022); *In re Seadrill Ltd.*, Case No. 21-30427 (DRJ) (Bankr. S.D. Tex. May 21, 2021).

4902-1100-8846

29.     SSG will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the services provided to the Debtors.

### BASIS FOR RELIEF REQUESTED

30.     Section 327(a) of the Bankruptcy Code allows a debtor, with the court's approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor-in-possession] in carrying out [its] duties under this title."  Section 101(14) of the Bankruptcy Code defines "disinterested person" as a person that:

    a.    is not a creditor, an equity security holder, or an insider;

    b.    is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

    c.    does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

31.     Pursuant to section 328 of the Bankruptcy Code, the Debtors seek the Court's approval of the terms of SSG's retention as specified in the Engagement Agreement, including the Fee and Expense Structure.  Section 328(a) of the Bankruptcy Code allows a debtor, with the court's approval, to "employ or authorize the employment of a professional person under section 327 or 1103 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  Moreover, under section 1107(b) of the Bankruptcy Code, a person is not disqualified for employment under section 327 solely because of such person's employment or representation of a debtor before the commencement of the case.

32.     The Fee and Expense Structure is consistent with the fee structure typically used by SSG and other leading investment bankers that do not bill their clients on an hourly basis. Similar fixed and contingency fee arrangements have been approved and implemented by the courts in similar cases in this and other districts.  *See, e.g.*, *In re Independent Pet Partners Holdings, LLC*, Case No. 23-10153 (Bankr. D. Del. Apr. 4, 2023); *In re Perkins & Marie Callender's LLC*, Case No. 19-11743 (KG) (Bankr. D. Del. Sept. 11, 2019); *In re FTD Companies, Inc.*, Case No. 19-11240 (LSS) (Bankr. D. Del. July 2, 2019); *In re ExGen Texas Power, LLC*, Case No. 17-12377 (BLS) (Bankr. D. Del. Dec. 13, 2017); *In re Samuels Jewelers, Inc.*, Case No. 18-11818 (KJC) (Bankr. D. Del. Sept. 13, 2018); *In re Peekay Acquisition, LLC*, Case No. 1711722 (BLS) (Bankr. D. Del. Sept. 5, 2017); *In re Paragon Offshore, PLC*, Case No. 16-10386 (CSS) (Bankr. D. Del. Mar. 11, 2016).

33.     In addition, the Debtors understand that indemnification, contribution, and reimbursement provisions like those in the Engagement Agreement are customary and reasonable for investment banking engagements.  *See United Artists Theatre Co. v. Walton* (*In re United Artists Theatre Co.*), 315 F.3d 217, 234 (3d Cir. 2003) (finding indemnification agreement between debtor and financial advisor reasonable under section 328 of the Bankruptcy Code).

34.     The Debtors believe the Fee and Expense Structure and any indemnification provisions in the Engagement Agreement are reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code, in light of (a) industry practice, (b) market rates charged for comparable services both in and out of chapter 11, and (c) SSG's substantial experience in providing investment banking services.

35.     As explained below, the proposed terms and conditions of SSG's employment are reasonable, customary and in the best interest of the Debtors' estates and creditors.  Moreover,

under section 1107(b) of the Bankruptcy Code, SSG's prepetition relationship with the Debtors is not an impediment to SSG's post-petition retention.

**N<small>OTICE</small>**

36.     Notice of this Motion will be served on the following parties or their respective counsel: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the Debtors' thirty largest unsecured creditors (on a consolidated basis); (c) the Internal Revenue Service; (d) the United States Attorney's Office for the Southern District of Texas; (e) the state attorneys general for all states in which the Debtors conduct business; (f) Glenn Agre Bergman & Fuentes LLP, as counsel to CS One, LLC; (g) Allen Stovall Neuman & Ashton LLP, as counsel to Cardinal Health 110, LLC and Cardinal Health 112, LLC; (h) SSG; and (i) any party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(d).  Given the nature of the relief requested, no other or further notice need be given.

**C<small>ONCLUSION</small>**

WHEREFORE, the Debtors respectfully request that this Court (a) enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Application, and (b) grant such other relief as the Court deems appropriate.

Dated: August 15, 2025
      Washington, DC

Respectfully submitted,

*/s/ Patrick J. Potter*
Patrick J. Potter (S.D. Tex. Fed. No. 3089812)
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1200 Seventeenth Street, NW
Washington, DC 20036
Telephone:(202) 663-8928
Facsimile: (202) 663-8007
Email: patrick.potter@pillsburylaw.com

-and-

Dania Slim (S.D. Tex. Fed. No. 3049178)
Amy West (admitted *pro hac vice*)
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 858-1000
Facsimile: (212) 858-1500
Email: dania.slim@pillsburylaw.com
      amy.west@pillsburylaw.com

-and-

L. James Dickinson (Tex. Bar. No. 24105805)
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
609 Main Street, Suite 2000
Houston, TX 77002
Telephone: (713) 276-7654
Facsimile: (713) 276-7373
Email: james.dickinson@pillsburylaw.com

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

14

4902-1100-8846

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on August 15, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas. Additionally, the foregoing document will be served as set forth in a forthcoming affidavit filed by the Debtors' proposed claims agent.

*/s/ Patrick J. Potter*
Patrick J. Potter

## Exhibit A

*Proposed Order*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Partners Pharmacy Services, LLC, *et al.*,[1] | Case No. 25-34698 (CML) |
| Debtors. | (Jointly Administered) |

**ORDER AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY**
**SSG ADVISORS, LLC AS INVESTMENT BANKER TO THE**
**DEBTORS EFFECTIVE AS OF THE PETITION DATE**

Upon the application (the "Application")[2] of the Debtors for entry of an order pursuant to

sections 327(a), 328, and 1107(b) of title 11 of the United States Code (the "Bankruptcy Code"),

Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and

Rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the

"Local Rules") authorizing the Debtors to employ and retain SSG Advisors, LLC ("SSG"), as

investment banker to the Debtors as of the Petition Date in accordance with the engagement

agreement attached to the Application as **Exhibit B** (the "Engagement Agreement"), all as more

fully set forth in the Application; and upon consideration of the *Declaration of Mark Chesen in*

*Support of the Debtors' Application for an Order Authorizing the Debtors to Retain and Employ*

*SSG Advisors, LLC as Investment Banker to the Debtors Effective as of the Petition Date* (the

"Chesen Declaration"), submitted in support of the Application; and this Court having reviewed

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Arrow Envoy Holdings, LLC (5695); Arrow Pharmacy Holdings, LLC (0080); Partners of Connecticut, LLC (1828); Partners of Massachusetts, LLC (2604); Partners of New York, LLC (0039); Partners of Pennsylvania, LLC (0841); Partners Pharmacy of Florida, LLC (9364); Partners Pharmacy of Maryland, LLC (0961); Partners Pharmacy of Texas, LLC (2017); Partners Pharmacy of Virginia, LLC (6232); Partners Pharmacy Services, LLC (9038); Partners Pharmacy Shell Point, LLC (1616); Partners Pharmacy, L.L.C. (4578); and Solutions Homecare, L.L.C. (1583).  The Debtors' service address in these chapter 11 cases is 173 Bridge Plaza North, Fort Lee, NJ 07024.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Application.

the Application, the First Day Declaration, and the Chesen Declaration; and the Court having jurisdiction over this matter in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of these cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court being satisfied that SSG is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required under section 327(a) of the Bankruptcy Code; and that SSG does not hold or represent an interest adverse to the Debtors' estates; and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and no objections having been filed to the Application; and it appearing that the relief requested in the Application is in the best interests of the Debtors, their estates, creditors, and other parties-in-interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**,

1.      The Application is **GRANTED** as set forth herein.

2.      Pursuant to sections 327(a), 328, and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1, the Debtors are authorized to retain and employ SSG as investment banker to the Debtors in accordance with the terms and conditions of the Engagement Agreement, effective as of the Petition Date.

3.      The terms of the Engagement Agreement are approved in all respects except as limited or modified herein.

4.      All of SSG's compensation set forth in the Engagement Agreement, including the Fee and Expense Structure, is approved pursuant to section 328(a) of the Bankruptcy Code, and SSG shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of the Engagement Agreement, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable orders of the Court.

5.      None of the fees payable to SSG shall constitute a "bonus" or enhancement under applicable law.

6.      SSG shall file a fee application for final allowance of compensation for services and reimbursement of expenses pursuant to the procedures set forth in section 330 and 331 of the Bankruptcy Code; *provided, however*, the final fee application filed by SSG shall be subject to review only pursuant to the standard of review set forth in section 328 of the Bankruptcy Code and not subject to the standard of review set forth in section 330 of the Bankruptcy Code.

7.      Notwithstanding any provision to the contrary in this Order, the U.S. Trustee shall have the right to object to SSG's request(s) for interim and final compensation based on the reasonableness standard provided in section 330 of the Bankruptcy Code, not section 328(a) of the Bankruptcy Code.  This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of SSG's fees under the standard set forth in the preceding sentence.  Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of SSG's fees.

8.      In light of the services to be provided by SSG and the compensation structure in the Engagement Agreement, SSG and its professionals shall be excused from: (a) any requirement to maintain or provide detailed time records in accordance with Bankruptcy Rule 2016(a), the General Order in the Matter of Procedures for Complex Chapter 11 Cases, and the United States Trustee Fee Guidelines; and (b) conforming with a schedule of hourly rates for its professionals. Instead, notwithstanding that SSG does not charge for its services on an hourly basis, SSG will nonetheless maintain reasonably detailed time records in 0.5 hour increments containing descriptions of those services rendered for the Debtors, and the individuals who provided those services, and will present such records together with its final fee application filed with the Court. For the avoidance of doubt, SSG shall be paid its Monthly Fees without the need for monthly or interim applications for compensation.

9.      To the extent that SSG uses the services of independent contractors or subcontractors (collectively, the "Contractors") in these cases, SSG shall (i) pass through the cost of such Contractors at the same rate that SSG pays the Contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors are subject to the same conflicts checks as required for SSG; and (iv) file with this Court the disclosures required by Bankruptcy Rule 2014.

10.     The Debtors shall be bound by the indemnification, contribution, reimbursement, exculpation, and other provisions of the Engagement Agreement and will indemnify and hold harmless SSG and the other Indemnified Parties (as defined in the Engagement Agreement), pursuant to the Engagement Agreement, subject to the following:

    a.   The Indemnified Parties (as defined in the Engagement Agreement) shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Agreement for services, unless such services and the indemnification, contribution, or reimbursement are approved by this Court;

b. The Debtors shall have no obligation to indemnify any Indemnified Party, or provide contribution or reimbursement to any Indemnified Party, for any claim or expense that is either:  (i) judicially determined (the determination having become final) to have arisen from any Indemnified Party's gross negligence, fraud, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; or (ii) settled prior to a judicial determination as to the exclusions set forth in the clause (i) above, but determined by this Court, after notice and a hearing, to be a claim or expense for which the Indemnified Party should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement; and

c. If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (such order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these cases, any of the Indemnified Parties believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including, without limitation, the advancement of defense costs, such Indemnified Party must file an application in this Court, and the Debtors must not pay any such amounts to such Indemnified Party before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by the Indemnified Parties for indemnification, contribution, or reimbursement, and is not a provision limiting the duration of the Debtors' obligation to indemnify the Indemnified Parties.  All parties in interest shall retain the right to object to any demand by the Indemnified Parties for indemnification, contribution, or reimbursement.

11. Any limitation of liability pursuant to the terms and conditions set forth in the Engagement Agreement, or otherwise, are hereby eliminated for the duration of these cases.

12. The relief granted herein shall be binding upon any chapter 11 trustee appointed in these chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of these chapter 11 cases to cases under chapter 7.

13. SSG shall use its best efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these cases.

14. To the extent there is any inconsistency between this Order, the Chesen Declaration, the Engagement Agreement, and the Application, this Order shall govern.

15.     Notice of the Application is deemed to be good and sufficient notice of such Application, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

16.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon its entry.

17.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

18.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Signed: _____

                                                 _____
                                                 Christopher M. Lopez
                                                 United States Bankruptcy Judge

## E<span style="font-variant:small-caps">XHIBIT</span> B

*Engagement Agreement*



June 20, 2025


Mr. James Matthews
Chief Operating Officer
PartnersPharmacy, LLC
50 Lawrence Road
Springfield Township, NJ 07081

Dear Mr. Matthews:

This agreement ("Engagement Agreement") will serve as the contract between Partners Pharmacy, LLC ("PartnersPharmacy" or the "Company") and SSG Advisors, LLC ("SSG") regarding the retention of SSG as exclusive investment banker to PartnersPharmacy for the purposes outlined in this Engagement Agreement. SSG's responsibilities hereunder involve providing investment banking services to the Company, on an exclusive basis, focusing on (i) a Sale Transaction, or (ii) a Restructuring Transaction (as defined below).

A.   **SSG's Role:**

    1.   Sale Services

- Advise the Company on, and assist the Company in the preparation of, an information memorandum describing the Company and its management and financial status for use in discussions with prospective purchasers and assist in the due diligence process for a potential Sale Transaction;

- Advise the Company on, and assist the Company in the preparation of, an information memorandum describing the Company and its management and financial status for use in discussions with prospective purchasers and assist in the due diligence process for a potential Sale Transaction;

- Assist the Company in developing a list of suitable potential buyers who will be contacted on a discreet and confidential basis after approval by the Company;

- Coordinate the execution of confidentiality agreements for potential buyers wishing to review the information memorandum;

- Assist the Company in coordinating management calls and site visits for interested buyers and work with the management team to develop appropriate presentations for such calls and visits;

- Solicit competitive offers from potential buyers;

Mr. James Matthews
June 20, 2025
Page 2

- Advise and assist the Company in structuring the Sale Transaction, negotiating the Sale Transaction agreements with potential buyers and evaluating the proposals from potential buyers, including, without limitation, advising and negotiating with respect to Sale Transaction structures;

- Provide testimony in support of the Sale Transaction, as necessary;

- Otherwise assist the Company, its attorneys and advisors, as necessary, through closing on a best efforts basis.

2.     Restructuring Services

- Advise and assist PartnersPharmacy in the negotiation with various stakeholders, in regard to a possible Restructuring of existing claims and equity.

In performing the services described above, the Company will furnish or cause to be furnished to SSG such information as SSG reasonably believes appropriate to the execution of its engagement hereunder (all such information so furnished being the "Information"). The Company represents to SSG that all Information furnished by it or its agents will be complete and correct in all material respects, to the best of its knowledge, and that until the expiration of SSG's engagement hereunder, it will advise SSG promptly of the occurrence of any event or any other change known by it or its agents that results in the Information ceasing to be complete and correct in all material respects. The Company recognizes and confirms that SSG: (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated hereby without having independently verified any of the same; (b) does not assume responsibility for accurateness or completeness of the Information and such other information; and (c) will not make an appraisal of any of the assets or liabilities of the Company. For the purposes of this Engagement Agreement, "known to," "to the knowledge of" or similar phrases means the actual knowledge, after due inquiry, of the executive officers of PartnersPharmacy.

The Company agrees that SSG shall be its exclusive investment banker in connection with any Sale Transaction or Restructuring Transaction undertaken with respect to the Company during the Engagement Term, as defined below, of this Engagement Agreement. The Company agrees that, during the Engagement Term, SSG shall assist and advise the Company in its negotiations with all prospective purchasers in connection with any Sale Transaction or Restructuring Transaction. In that regard, the Company agrees to identify to SSG: (a) all prospective purchasers who have been in contact with the Company prior to the date hereof and (b) all prospective purchasers who come in contact with the Company during the Engagement Term.

SSG will consult with and advise the Company with respect to the financial aspects of any proposed Sale Transaction or Restructuring Transaction, including price, terms, and conditions of a Sale Transaction or Restructuring Transaction. SSG will not, however, have any authority to bind the Company with respect to any proposed Sale Transaction or Restructuring Transaction. Likewise, nothing contained herein

Mr. James Matthews
June 20, 2025
Page 3

shall require the Company to accept the terms of any proposal and the Company shall at all times have the right in its sole and absolute discretion to reject any proposed Sale Transaction or Restructuring Transaction regardless of the terms proposed.

B.   **SSG's Compensation**

As compensation for providing the foregoing services, SSG shall receive the following:

1.   <u>Initial Fee</u>.  An initial fee (the "Initial Fee") equal to $50,000 due upon signing this Engagement Agreement. Fifty percent (50%) of the Initial Fee will be credited to a Transaction Fee, as noted below.

2.   <u>Monthly Fees</u>.  Monthly fees (the "Monthly Fees") of $50,000 per month payable beginning July 10, 2025 and on the tenth (10th) of each month thereafter throughout the Engagement Term (as such term is hereafter defined). Fifty percent (50%) of the first three (3) Monthly Fees will be credited to a Transaction Fee, as noted below.

3.   <u>Sale Fee</u>.  Upon the consummation of a Sale Transaction to or with any party, SSG shall be entitled to a fee (the "Sale Fee"), payable in cash, in federal funds via wire transfer or certified check, at and as a condition of closing of such Sale Transaction and as a direct carveout from proceeds and cash, prior in right to any pre- and post-petition secured debt, equal to the greater of (a) $600,000; plus (b) four percent (4.0%) of Total Consideration (as such term is hereafter defined)in excess of $51.7 million.

     However, in the event of a Sale Transaction to a stalking horse purchaser without a qualified overbid, then the Sale Fee shall be $500,000.

4.   <u>Restructuring Fee</u>.  Upon the consummation of a Restructuring Transaction, SSG shall be entitled to a fee (the "Restructuring Fee"), payable in cash, in federal funds via wire transfer or certified check, at and as a condition of closing of such Restructuring Transaction equal to $500,000.

5.   <u>Duplication of Transaction Fees.</u>   If, according to the terms of this Engagement Agreement, the Company is obligated to pay SSG multiple Transaction Fees (i.e. more than one of a Sale Fee or a Restructuring Fee, as defined below), then the Company shall be obligated to pay SSG only one Transaction Fee, calculated as the greater of all of the Transaction Fees, as calculated above.

6.   In addition to the foregoing Initial Fee, Monthly Fee and Transaction Fee noted above whether or not a Sale Transaction or Restructuring Transaction is consummated, SSG will be entitled to reimbursement for all of SSG's reasonable and documented out-of-pocket expenses incurred in connection with the subject matter of this Engagement Agreement.

Mr. James Matthews
June 20, 2025
Page 4

C.    **Definitions**

For the purpose of this Engagement Agreement:

**Sale Transaction** means and includes any transaction involving the sale or transfer, directly or indirectly, of all or substantially all, or a part of the assets, secured debt or equity of PartnersPharmacy to any party.

**Restructuring Transaction** means and includes the restructuring of existing and prospective Company stakeholder claims, including, but not limited to, PartnersPharmacy's secured lenders, unsecured claims, landlords, and equity.

**Total Consideration** shall mean the gross purchase price paid at the closing of the Sale for the equity, assets, or any portion of either, plus the assumption or payoff of indebtedness (secured and unsecured).

For purposes of computing any fees payable to SSG hereunder, non-cash consideration shall be valued as follows:  (a) publicly traded securities shall be valued in the manner specified in the definitive agreement for the Sale Transaction, or, if not so specified, at the average of their closing prices (as reported in The Wall Street Journal) for the five (5) trading days prior to the closing of the Sale Transaction; and (b) any other non-cash consideration shall be valued at the fair market value thereof as determined in good faith by the Company and SSG. If such aggregate consideration may be increased by contingent payments such as an "earnout" or other monetary agreement in the transaction, the portion of SSG's fee relating thereto shall be calculated and paid when and as such contingent payments or other monetary amounts are received.

**Transaction** shall mean a Sale or Restructuring, as determined above.

**Transaction Fee** shall mean and include a Sale Fee or a Restructuring Fee, as determined above.

D.    **Term of Engagement**

This Engagement Agreement shall remain in force (the "Engagement Term") for a period of six (6) months from the date of signing this Engagement Agreement and may extended thereafter upon prior written consent of the parties.  Either party may terminate this Engagement Agreement upon thirty (30) days prior written notice to the other; provided, however, that this Engagement Agreement shall automatically terminate immediately upon the closing of a Sale Transaction or Restructuring Transaction.  Upon the termination of this Engagement Agreement, neither party shall have any further obligations to the other except that:  (a) termination of the Engagement Agreement shall not affect SSG's right to indemnification under the Indemnification paragraph below; (b) the Company shall remain obligated to pay SSG any unpaid Monthly Fees and to reimburse SSG for any expenses incurred through the date of the termination of the Engagement Agreement; and (c) if a Sale Transaction or Restructuring Transaction is consummated within twelve (12) months ("Trailer Term") of the termination of this Engagement Agreement, the Company shall remain obligated to pay a Transaction Fee, as calculated above. Sections B, D, E, F and G (entitled Compensation, Term of Engagement, Indemnification, Miscellaneous, and Scope of SSG's Duties, respectively) of this Engagement

Mr. James Matthews
June 20, 2025
Page 5

Agreement shall survive the expiration or termination of this Engagement Agreement indefinitely.

E.   **Indemnification**

The Company hereby acknowledges and agrees to the indemnification arrangements between the parties hereto as described on Attachment A hereto, which Attachment is incorporated herein and forms an integral part hereof.

F.   **Miscellaneous**

No fee payable to any other financial advisor or finder by the Company in connection with the subject matter of this Engagement Agreement shall reduce or otherwise affect any fee payable to SSG hereunder. This Engagement Agreement sets forth the entire understanding of the parties relating to the subject matter hereof and supersedes and cancels any prior communications, understandings and agreements between the parties hereto. This Engagement Agreement cannot be modified or changed, nor can any of its provisions be waived, except by written agreement signed by both parties. The benefits of this Engagement Agreement shall inure to the respective successors and assigns of the parties hereto and of the Indemnified Parties and their respective successors, assigns and representatives, and the obligations and liabilities assumed in this Engagement Agreement by the parties hereto shall be binding upon their respective successors and assigns.

This Engagement Agreement may be executed in any number of counterparts, which counterparts, taken together, shall constitute one and the same Engagement Agreement.

G.   **Scope of Duties**

The Company hereby acknowledges and agrees that:  (a) it has retained SSG for the purposes set forth in the Engagement Agreement and that the rights and obligations of the parties hereto are contractual in nature, and (b) SSG has not made any warranties or guarantees of any nature with respect to the success or satisfactory conclusion of any Sale Transaction or Restructuring Transaction or as to the economic, financial or other results which may be obtained or experienced by the Company as a result thereof.

H.   **Bankruptcy Court Proceedings**

In the event the Company files one or more Bankruptcy Cases during the Engagement Term, the Company shall use its commercially reasonable efforts to have SSG employed upon the same or substantially similar terms and shall have this Engagement Agreement and SSG's retention as the Company's exclusive investment banker approved by a Court of competent jurisdiction.

I.   **Other Matters**

SSG has the right, following a Sale Transaction or Restructuring Transaction closing, to place advertisements in financial and other newspapers and journals and to send email advertising at its own expense describing its services to the Company hereunder.

Mr. James Matthews
June 20, 2025
Page 6

In accordance with the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001), SSG is required to obtain, verify and record information that identifies its clients, which information may include the name and address of the Company, and its senior management team as well as other information that will allow SSG to properly identify its clients.  Additionally, SSG maintains important disclosures on its web site www.ssgca.com. These disclosures may be updated periodically on an as-needed basis.  The Company agrees to accept and receive all of these disclosures by electronically accessing the website referenced above and acknowledges that printed hard copies of these disclosures are available upon request by contacting SSG directly at (610) 940-1094.

J.    **Securities Platform**

All transactions involving the sale or purchase of any security (as defined by the Securities Exchange Act of 1934 or the rules and regulations promulgated there under) are offered through SSG Capital Advisors, LLC. ("SCA") which is an affiliated registered Broker-Dealer in good standing with the Financial Industry Regulatory Authority ("FINRA") and the Securities Investor Protection Corporation ("SIPC").  Principals of SSG are registered representatives of SCA.  Therefore, SCA is included collectively as "SSG" with all the rights and obligations thereto under the terms of this Engagement Agreement.

To the extent a Transaction Fee is payable to SSG in connection with a Sale Transaction constituting the purchase or sale of any security (as defined by the Securities Exchange Act of 1934 or the rules and regulations promulgated there under), such Transaction Fee (excluding the Initial Fee and Monthly Fees) shall be specifically paid to SCA.  In addition to the Initial Fee and Monthly Fees, under no circumstances will the Company be obligated to pay any fees in an aggregate amount in excess of the Transaction Fee.  Payment of the fee to SCA shall constitute and be deemed payment of the Transaction Fee under the Engagement Agreement.

Mr. James Matthews
June 20, 2025
Page 7

Any amendment, modification or other changes to this Engagement Agreement must be in writing and signed by both parties to be enforceable.

Please indicate your acceptance of the foregoing by executing and returning the enclosed copy of this letter.

**SSG ADVISORS, LLC**

By: _____        _____

Mark E. Chesen                                      Matthew P. Karlson
Managing Director                                   Managing Director


ACCEPTED:

**PARTNERS PHARMACY, LLC**

By: _____        7/2/2025 _____

James Matthews                                      Date
Chief Operating Officer

Mr. James Matthews
June 20, 2025
Page 8


## ATTACHMENT A
## INDEMNIFICATION PROVISIONS

The Company agrees to indemnify, defend and hold harmless SSG or SCA, and their affiliates, the respective partners, members, directors, officers, agents and employees of SSG, SCA, and their affiliates and each other person, if any, controlling SSG, SCA, and their affiliates (the foregoing being referred to herein individually as an "Indemnified Party" and collectively as the "Indemnified Parties") from and against any and all losses, claims, damages, liabilities or costs, as and when incurred, to which such Indemnified Party may become subject to or which are asserted against any Indemnified Party, directly or indirectly, in any way related to SSG acting for the Company under the Engagement Agreement of which this Attachment A forms a part, including, without limitation, in connection with:  (a) any act or omission by SSG related to its engagement as financial advisor under the Engagement Agreement; or (b) SSG's acceptance, or its performance or non-performance, of its obligations under said Engagement Agreement.  The Company will reimburse the Indemnified Parties for any reasonable and documented legal or other expenses incurred by them, as and when incurred, in connection with investigating, preparing or defending any such losses, claims, damages or liabilities or any action in respect thereof, whether or not in connection with pending or threatened litigation, and whether or not any Indemnified Party is a party thereto; provided, however, that the Company shall not be liable under the foregoing indemnity agreement in respect of any liability to the extent that such liability is found in a final judgment by a court of competent jurisdiction, not subject to further appeal, to have resulted from SSG's gross negligence, bad faith, actual fraud, or willful misconduct in the performance of its duties under said Engagement Agreement (and in such event, expenses of SSG paid by the Company in advance that are reasonably attributable thereto shall be promptly reimbursed in full to the Company). The Company agrees that reliance by SSG on any publicly-available information, the information supplied by the Company to SSG in connection with said Engagement Agreement or any directions furnished by the Company shall not constitute gross negligence, bad faith or willful misconduct by SSG.

In order to provide for just and equitable contribution, if a claim for indemnification is made pursuant to said Engagement Agreement but it is found in a final judgment by a court of competent jurisdiction, not subject to further appeal, that such indemnification may not be enforced in such case, the Indemnified Parties, on the one hand, and the Company, on the other hand, shall each contribute to the amount paid or payable as a result of such losses, claims, damages or liabilities in such proportion as is appropriate to reflect the relative fault of the Indemnified Parties, on the one hand, and the Company, on the other hand, and the relative benefits to the Indemnified Parties, on the one hand, and the Company, on the other hand, arising out of the particular matter or transaction which gave rise to such loss, claim, damage, liability or costs, and all other relevant equitable considerations shall also be taken into account.  No person found liable for a fraudulent misrepresentation shall be entitled to contribution from any person who is not also found liable for such fraudulent misrepresentation.

The provisions of this Attachment A shall survive any termination of said Engagement Agreement.

## EXHIBIT C

*Chesen Declaration*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Partners Pharmacy Services, LLC, *et al.*,[1] | Case No. 25-34698 (CML) |
| Debtors. | (Jointly Administered) |

## DECLARATION OF MARK E. CHESEN IN SUPPORT OF THE DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY SSG ADVISORS, LLC AS INVESTMENT BANKER TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE

I, Mark E. Chesen, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1.    I am a Founding Partner and Managing Director of SSG Advisors, LLC ("SSG"), an investment banking firm that maintains offices at 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428, and I duly authorized to make this declaration (the "Declaration") on behalf of SSG.

2.    I have 35 years of experience advising businesses facing operational and financial challenges, including companies in bankruptcy proceedings.  I personally have completed over 150 investment banking transactions involving the sale, private placement, or financial restructuring of middle market companies in North America and Europe.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Arrow Envoy Holdings, LLC (5695); Arrow Pharmacy Holdings, LLC (0080); Partners of Connecticut, LLC (1828); Partners of Massachusetts, LLC (2604); Partners of New York, LLC (0039); Partners of Pennsylvania, LLC (0841); Partners Pharmacy of Florida, LLC (9364); Partners Pharmacy of Maryland, LLC (0961); Partners Pharmacy of Texas, LLC (2017); Partners Pharmacy of Virginia, LLC (6232); Partners Pharmacy Services, LLC (9038); Partners Pharmacy Shell Point, LLC (1616); Partners Pharmacy, L.L.C. (4578); and Solutions Homecare, L.L.C. (1583).  The Debtors' service address in these chapter 11 cases is 173 Bridge Plaza North, Fort Lee, NJ 07024.

3.     This Declaration is submitted in support of the *Debtors' Application for an Order Authorizing the Debtors to Retain and Employ SSG Advisors, LLC as Investment Banker to the Debtors Effective as of the Petition Date* (the "Application").[2]

4.     Except as otherwise stated herein, I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently thereto.  To the extent any information disclosed herein requires amendment or modification upon SSG's completion of further review or as additional party in interest information becomes available to it, a supplemental declaration will be submitted to the Court reflecting such amended or modified information.

### SSG'S QUALIFICATIONS

5.     Prior to forming SSG in 2001, I held senior leadership positions at Berwind Financial, including co-head of the investment-banking group; head of the Special Situations Group; and as a member of the management committee.

6.     In 1982, I received a Bachelor of Arts in accounting from the University of Texas at Austin.  I was previously licensed as a certified public accountant in the states of Texas and Iowa.

7.     SSG is an internationally recognized investment banking firm.  Since its founding in 2001, SSG has completed over 450 investment banking assignments.  SSG's professionals have expertise in mergers and acquisitions, private placements, financial restructurings, valuations, and financial advisory services.  Moreover, SSG has substantial expertise advising troubled companies, including in connection with distressed sales.

8.     SSG's professionals have extensive experience in complex financial restructurings. SSG has served as an investment banker for debtors and other parties in numerous bankruptcy

---

[2]     Capitalized terms not otherwise defined herein shall have the meanings given to them in the Application.

4902-1100-8846

cases, including: *In re Eiger BioPharmaceuticals, Inc., et al.*, Case No. 24-80040 (SGJ) NDTX; *In re Escambia Operating Co., LLC*, Case No. 23-50491 (JAW) SDMS Gulfport; *In re SanoTech360, LLC.*, Case No. 23-40261 (ELM) NDTX Fort Worth; *In re Soft Surroundings Holdings, LLC, et al.*, Case No. 23-90769 (CML) SDTX Houston; *In re Watson Valve Services, Inc.*, Case No. 20-30968 (MI) SDTX Houston; *In re Papa Grande Gourmet Foods, LLC*, Case No. 19-50390 (RBK) WDTX San Antonio; *In re Francis Drilling Fluids, LTD., et al.*, Case No. 18-35441 (MI) SDTX Houston; *In re American Fuel Cell and Coated Fabrics Company*, Case No. 17-44766 (MXM) NDTX Fort Worth; *In re A'GACI LLC*, Case No. 18-50049 (RBK) WDTX San Antonio; *In re TPP ACQUISITION, INC. d/b/a The Picture People*, Case No. 16-33437 (HDH) NDTX Dallas; *In re Stone Panels, Inc.*, Case No. 16-32856 (HDH) NDTX Dallas; *In re Forest Park Medical at Fort Worth, LLC*, Case No. 16-40198 (RFN) NDTX Fort Worth; *In re Thinkstream Incorporated of Delaware*, Case No. 15-10553 (DDD) Middle District of Louisiana; *In re ITS Engineered Systems, Inc.*, Case No. 15-32145 (KKB) SDTX Houston; *In re One Source Industrial Holdings, LLC*, Case No. 14-44996 (RFN) NDTX Fort Worth; *In re Color Star Growers of Colorado, Inc.*, et al., Case No. 13-42959 (BTR) EDTX Sherman.

9.       Through its pre-petition representation of the Debtors, SSG has gained substantial knowledge regarding the Debtors' business and the various legal issues likely to arise in these cases.  Accordingly, SSG is well-suited to provide the investment banking services to the Debtors that are contemplated by the Engagement Agreement and described herein.

### SERVICES TO BE PROVIDED

10.       Subject to the Court's approval, SSG will provide the following services to the Debtors in connection with these cases:

  a.  advising the Debtors on, and assisting the Debtors in preparing an information memorandum describing the Debtors, their management, and financial status for

use in discussions with prospective purchasers and to assist in the due diligence process for a potential sale transaction;

b.  assisting the Debtors in developing a list of suitable potential buyers who will be contacted on a discreet and confidential basis after approval by the Debtors;

c.  coordinating the execution of confidentiality agreements for potential buyers wishing to review the information memorandum;

d.  assisting the Debtors in coordinating management calls and site visits for interested buyers and working with management to develop presentations for such calls and visits;

e.  soliciting competitive offers from potential buyers;

f.  advising and assisting the Debtors in structuring a sale transaction, negotiating a sale transaction agreement with potential buyers and evaluating the proposals from potential buyers;

g.  providing testimony in support of a sale transaction, as necessary; and

h.  assisting the Debtors, their attorneys and accountants, as necessary, through closing of a sale transaction on a best efforts basis.

11.  SSG will work with each of the Debtors' professionals to ensure no unnecessary duplication of effort or cost.

## PROFESSIONAL COMPENSATION

12.  In consideration of the Services, and as more fully described in the Engagement Agreement, subject to the Court's approval, the Debtors have agreed to pay SSG the proposed compensation (the "Fee and Expense Structure") set forth in the Engagement Agreement, which is summarized below:

a.  Initial Fee.  An initial fee (the "Initial Fee") of $50,000, which was due upon signing the Engagement Agreement.  Fifty percent (50%) of the Initial Fee will be credited towards a Transaction Fee (defined below).

b.  Monthly Fees.  Monthly fees (the "Monthly Fees") of $50,000 per month payable beginning July 10, 2025 and on the tenth (10th) of each month thereafter throughout the Engagement Term (as defined in the Engagement Agreement).  Fifty percent (50%) of the first three (3) Monthly Fees will be credited toward a Transaction Fee.

c. <u>Sale Fee</u>. Upon the consummation of a sale to any party, a fee (the "<u>Sale Fee</u>") equal to the greater of (a) $600,000 plus (b) four percent (4.0%) of Total Consideration (as such term is defined in the Engagement Agreement) in excess of $51.7 million, payable in cash, in federal funds via wire transfer, or certified check, at and as a condition of closing of such a sale.  Notwithstanding the foregoing, if the sale transaction is to the stalking horse purchaser without a qualified overbid, then the Sale Fee shall be $500,000.

d. <u>Restructuring Fee</u>. Upon the consummation of a restructuring, a fee ("<u>Restructuring Fee</u>") equal to $500,000 payable in cash, in federal funds via wire transfer, or certified check, at closing of any such restructuring.

e. <u>Duplication of Transaction Fees</u>.  SSG will only be entitled to either a Sale Fee or a Restructuring Fee (each, a "<u>Transaction Fee</u>"), the greater of the two fees.  As noted above, fifty percent (50%) of the first three (3) Monthly Fees will be credited toward a Transaction Fee.

f. In addition to the foregoing Initial Fee, Monthly Fees and Transaction Fee, SSG will be entitled to reimbursement for all of SSG's reasonable and documented out-of-pocket expenses incurred in connection with the Engagement Agreement whether or not a sale transaction or restructuring transaction is consummated.

12.     The Fee and Expense Structure is comparable to the fees and expenses charged by similar firms for comparable engagements, both in and out of bankruptcy.  The Fee and Expense Structure also is consistent with SSG's normal and customary billing practices for cases of this size and complexity that require the level and scope of services outlined above.  SSG and the Debtors believe that the Fee and Expense Structure is reasonable.

15.     SSG's strategic and financial expertise, capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which may be required during the term of SSG's engagement, were important factors in negotiating the Fee and Expense Structure.

16.     SSG has obtained valuable institutional knowledge of the Debtors' businesses, financial affairs, and creditors since execution of the Engagement Agreement, and SSG is both

4902-1100-8846

well qualified and uniquely able to perform these services and assist the Debtors in these Chapter 11 Cases.

17.     SSG has not shared or agreed to share any compensation to be paid by the Debtors with any other person, other than other principals and employees of SSG, in accordance with section 504 of the Bankruptcy Code.

18.     Due to SSG's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for SSG's services for engagements of this nature both and in and out of chapter 11, the Fee and Expense Structure is market-based and fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

### INDEMNIFICATION

19.     The Engagement Agreement contains standard indemnification language with respect to SSG's services including, without limitation, an agreement by the Debtors to indemnify SSG and its affiliates, partners, directors, officers, employees and agents (each, an "Indemnified Party" and collectively, the "Indemnified Parties") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of SSG that is the subject of the Engagement Agreement, except to the extent caused by gross negligence, bad faith or willful misconduct of any Indemnified Party.

20.     SSG believes that the indemnification provisions contained in the Engagement Agreement, as may be amended in the proposed order attached to the Application, are customary and reasonable for SSG and comparable firms providing investment banking services, and as would be modified pursuant to the foregoing limitations, reflect the qualifications and limitations on indemnification provisions that are customary in this district.

21.     Moreover, the terms and conditions of the indemnification provisions were negotiated by the Debtors and SSG at arm's length and in good faith.  The provisions contained in

6

4902-1100-8846

the Engagement Agreement, viewed in conjunction with the other terms of SSG's proposed retention, are reasonable and in the best interest of the Debtors, their estates, and all parties in interest given that the Debtors require SSG's services to run an accelerated sale process. Accordingly, as part of the Application, the Debtors request the Court approve the indemnification provisions as set forth in the Engagement Agreement, as may be amended by the proposed order attached to the Application.

### DISINTERESTEDNESS

22.     In connection with its proposed retention by the Debtors in these cases, SSG undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors.  Specifically, SSG obtained from the Debtors' representatives the names of individuals and entities that may be parties in interest in these cases (the "Potential Parties in Interest"), which are listed on **Exhibit 1** attached hereto.

23.     SSG has researched its electronic client databases to determine connections with the Potential Parties in Interest.  The results of the search of the Potential Parties in Interest are set forth in **Exhibit 2** hereto.  To the best of SSG's knowledge, neither SSG nor any of its employees: (a) is a creditor or an insider of the Debtors; (b) is or was, within two years before the Petition Date, a director, officer, or employee of the Debtors; or (c) has an interest materially adverse to the interest of the Debtors' estates or of any class of creditors, by reason of any direct or indirect relationship in connection with, or interest in, the Debtors, or for any other reason.  To the best of SSG's knowledge and belief, SSG has not represented any Potential Parties in Interest in connection with matters relating to the Debtors or their estates, assets, or businesses and will not represent other entities which are creditors of, or have other relationships to, the Debtors in matters relating to these cases.

24.     In addition, an email was broadly circulated within SSG to inquire whether any employees or partners at SSG, or any member of such recipient's immediate family (spouse, minor children, or family members living in your household) (i) have any connection to the Potential Parties in Interest; (ii) own any equity security of any of the Debtors; (iii) own any debt security of any of the Debtors; (iv) hold a general unsecured claim against any of the Debtors; (v) hold any other claim against any of the Debtors; or (vi) own more than one percent, manage or otherwise control, or have any influence over any of the Potential Parties in Interest.  No affirmative response was received in response to any of these email inquiries.

25.     Further, the email inquired whether any recipient of the email, or any member of such recipient's immediate family, (i) has, within the last two years, been an officer, director, or employee of any of the Debtors or (ii) holds an interest materially adverse to interests of the Debtors, or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.  I understand that no affirmative response was received in response to these email inquiries.

26.     Moreover, the email inquired whether any recipient, or any member of such recipient's immediate family, is related to (i) any bankruptcy judge for the Southern District of Texas or (ii) any employee of the United States Trustee for Region 7.  I understand that no affirmative response was received in response to these email inquiries.

27.     SSG was retained prepetition and at that time received the Initial Fee upon signing the Engagement Agreement.  As of the Petition Date, the Debtors did not owe SSG any fees or expenses incurred before to the Petition Date.

28.     To the best of my knowledge, as set forth above, no individual assignment in which SSG is involved appeared on the Potential Parties in Interest, and accordingly, none of the entities

8

listed on the Potential Parties in Interest accounts for more than 10% of SSG's gross revenue during the twelve-month period before to the date hereof.

29.     SSG provides investment banking and financial advisory services to a wide variety of clients.  As a result, SSG has represented, and may in the future represent, certain Potential Parties in Interest in matters unrelated to these cases, either individually or as part of the representation of an ad hoc or official committee of creditors or interest holders.  To the best of SSG's knowledge, information and belief, insofar as SSG has been able to ascertain after reasonable inquiry, none of these representations are adverse to the Debtors' interests.

30.     Based on the foregoing, to the best of SSG's knowledge and belief, neither SSG nor I, nor any other employee of SSG that will provide services to the Debtors in connection with this engagement, has any connection with or holds any interest adverse to the Debtors, their estates, or the Potential Parties in Interest.

31.     In addition, SSG has received no revenue in the last two years from any of the Potential Parties in Interest.  Further, to the best of SSG's knowledge, there has been no outside business activities or private investments disclosed in SSG's compliance system for any of the Potential Parties in Interest.

32.     To the best of SSG's knowledge, information, and belief, insofar as SSG has been able to ascertain after reasonable inquiry, except with respect to the Engagement Agreement, SSG has not been retained to assist any entity or person other than the Debtors on matters relating to, or in direct connection with, these cases.  SSG will, however, continue to provide professional services to other entities or persons that may be creditors or equity security holders of the Debtors or interested parties in these cases; provided that such services do not relate to, or have any direct connection with, these cases or the Debtors.  Additionally, in connection with its debt capital

markets and special situations practices, in the ordinary course of business, SSG has and, may in the future, present investment opportunities to certain of the Potential Parties in Interest.

33.     Accordingly, except as otherwise set forth herein, insofar as SSG has been able to determine, neither SSG, nor any employee of SSG holds or represents any interest adverse to the Debtors or their estates, and SSG is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b), in that SSG, and its professionals and employees:

    a.  is not a creditor, an equity security holder, or an insider;

    b.  is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

    c.  does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

25.     To the extent that SSG discovers any additional facts bearing in a material respect on its disinterestedness during the period of SSG's retention in connection with these cases, SSG will supplement this Declaration, as required by Bankruptcy Rule 2014(a).

28.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


Date:   August 15, 2025

                                */s/ Mark E. Chesen*
                                Mark E. Chesen
                                Managing Director
                                SSG Advisors, LLC

4902-1100-8846

## Exhibit 1

*Potential Parties in Interest*

## POTENTIAL PARTIES IN INTEREST

**Debtors**
Arrow Envoy Holdings, LLC
Arrow Pharmacy Holdings LLC
Partners of Connecticut, LLC d/b/a Partners Pharmacy
Partners of Florida, LLC d/b/a Advanced Pharmacy
Partners of Massachusetts, LLC
Partners of New York, LLC
Partners of Pennsylvania, LLC
Partners Pharmacy of Maryland, LLC d/b/a Advanced Pharmacy
Partners Pharmacy of Texas, LLC d/b/a Advanced Pharmacy
Partners Pharmacy of Virginia, LLC
Partners Pharmacy Services, LLC f/k/a Aveta Pharmacy Services, LLC
Partners Pharmacy Shell Point, LLC
Partners Pharmacy, L.L.C. d/b/a Discover RX
Solutions Homecare, L.L.C.

**Non-Debtors Affiliates**
Care One Ancillary Holdings, LLC
Care One, LLC
Health Resources Partners, LLC
HRP Capital Inc.
North American Medical Management-New Jersey, Inc.

**Prospective Buyer**
CS One, LLC

**Secured Creditors/Lenders**
CS One, LLC
Cardinal Health 110, LLC d/b/a ParMed Pharmaceuticals*
Cardinal Health 112, LLC
Cardinal Health, Inc.

**Banks**
First Citizens Bank

**Current Directors & Officers**
Daniel E. Straus
David Baruch
Derek Corriveau
James Matthews
Joseph S. Straus
Harvey Tepner

**Former Directors & Officers**
Anthony Spero

Patrick Downey
Thomas McKinney

**Current Shareholders**
Care Solutions, LLC (f/k/a Aveta Ancillary Services, LLC)

**Top 30 Unsecured Creditors**
24/7 Xpress Enterprises, LLC
50 Lawrence EFP LLC
Access
Allied Medical Waste
ANDA
Baxter Healthcare Corp
CAPSA Solutions, LLC
Cardinal Health 110, LLC d/b/a ParMed Pharmaceuticals*
Central Admixture Pharmacy Service, Inc.
CohnReznick LLP
First Financial Corporate Leasing, LLC
Integrated Medical Systems Inc.
Interchange RX, LLC
Kasowitz Benson Torres LLP
Kinray Inc
Konica Minolta
McKesson Corporation.
Medbank
Medline Industries, Inc
Meriplex Solutions, LLC
Moderna US Inc
Omnicell Inc
Partners Acquisition SRX LLC
PointClickCare, Inc
RemedyRepack, Inc
SoftWriters, INC.
Specialty RX, Inc.
StatimRx, LLC
Strategic Delivery Solutions, LLC
Trinity Healthcare Solutions, LLC
Wells Fargo Vendor Financial Services LLC

**Significant Customers**
Care One Management, LLC
Division of Developmental Disabilities of the New Jersey Department of Human Services
Division of Behavioral Health Services of the New Jersey Department of Health
New Jersey Department of Military and Veterans Affairs

3

**Insurance**
Arch Insurance Company
Continental Insurance Company of New Jersey
Corvus
Liberty Mutual
Safety National Casualty Group
The Standard Insurance

**Landlords**
Aster Group
CBRE (CP Oakley)
Eckstein Properties LLC
Industrial Builders & Realty
Somerset Properties, Inc.

**Litigation Parties**
Anda, Inc.
Dawn-Michele Blalock
Estate of Richard Francis Rogan
Integrated Medical Systems, Inc.
McKesson Corporation
McKesson Medical-Surgical Minnesota Supply Inc.
Nevada Generation Strategic, LLC d/b/a Nevada Infusion

**Ordinary Course Professionals**
Ranalli & Zaniel, PC
The Denver Law Firm

**Debtors' Professionals**
Kroll Restructuring Administration LLC
Pillsbury Winthrop Shaw Pittman LLP
Gibbins Advisors, LLC
SSG Advisors, LLC

**Taxing & Regulatory Authorities**
Albert Uresti, Bexar County Tax Assessor/Collector (Texas)
Aldine Independent School District (Texas)
Ann Harris Bennett, Tax Assessor-Collector (Texas)
Bexar County Tax Assessor/Collector (Texas)
Bloomfield Tax Collector (Connecticut)
Brazoria Co. M.U.D. No. 17 (Texas)
Cameron County Tax Assessor/Collector (Texas)
Carmen P. Turner, Fort Bend County Tax Assessor/Collector (Texas)
City Of Garland (Texas)
City of Marlborough (Massachusetts)
City of Newton Treasury Department (Massachusetts)

4902-1100-8846

Clear Creek I.S.D. Tax Office (Texas)
Collin County Tax Assessor/Collector (Texas)
Dallas County Tax Office (Texas)
Dennis W. Hollingsworth, St. Johns County Tax Collector (Florida)
El Paso County Tax Assessor/Collector (Texas)
Ellis County Tax Assessor/Collector (Texas)
Fairfax County Department of Tax Administration (Texas)
Fort Bend CO. M.U.D. #50 (Texas)
Fort Bend County Tax Assessor/Collector (Texas)
Galveston County Tax Assessor/Collector (Texas)
Harris County Tax Assessor/Collector (Texas)
Hays County Tax Assessor/Collector (Texas)
Hill Cad Tax Collections, Mike McKibben, TX Assessor/Collector
Hill County Tax Assessor/Collector (Texas)
Hill County Tax Office (Texas)
Hillsborough County Tax Collector (Florida)
Jim Overton, Duval County Tax Collector (Florida)
John Power, Alachua County Tax Collector (Texas)
John R. Ames, Tax Assessor/Collector (Texas)
Johnson County Tax Assessor/Collector (Texas)
Kenneth L. Maun, McKinney (Texas)
Kristin R. Bulanek, Brazoria County Tax Assessor/Collector (Texas)
Lee County Tax Collector (Florida)
Limestone County Tax Assessor/Collector (Texas)
Llano County Tax Assessor/Collector (Texas)
Lubbock County Tax Assessor/Collector (Texas)
Manatee County Tax Collector (Florida)
McLennan County Tax Assessor/Collector (Texas)
Mesquite Tax Office (Texas)
Michelle French, Denton County Tax Assessor/Collector (Texas)
Monica Madrigal, Webb County Assessor/Collector(Texas)
Montgomery County Tax Assessor/Collector (Texas)
New Jersey Department of Revenue
Orange County Tax Collector (Florida)
Pinellas County Tax Collector (Texas)
Polk County Tax Collector (Florida)
Randy H. Riggs, McLennan County Tax Assessor/Collector (Texas)
Richardson Independent School District Tax Office (Texas)
Rockwall County Tax Assessor/Collector (Texas)
Scott Porter, Johnson County, Tax Assessor/Collector (Texas)
Seminole County, Tax Collector (Florida)
Sharon W. Jordan, Suwannee County Tax Collector (Florida)
Somervell County, Tax Assessor/Collector (Texas)
South Fire District (Connecticut)
Tammy J. McRae (Texas)
Tarrant County Tax Assessor/Collector (Texas)

4902-1100-8846

Texas City I.S.D. Tax Office (Texas)
Texas Comptroller of Public Accounts
Town of Chatham Treasurer/Tax Collector (Massachusetts)
Town of Farmington (Connecticut)
Town of Marlborough Tax Collector's Office (Massachusetts)
Town of Wytheville Treasurer's Office (Virginia)
United States Treasury
Washington County Treasurer's Office (Virginia)
Whitney I.S.D. Tax Office (Texas)
Wichita County Tax Assessor/Collector (Texas)
Will Roberts, Volusia County Tax Collector (Florida)
Williamson County Tax Assessor/Collector (Texas)
Woodlands Metro Center M.U.D. (Texas)

**Utility Providers**
ADT Commercial LLC d/b/a Everon
Confires Fire Protection
Connecticut Natural Gas Corp.
Eversource
Fluent Stream
JCP&L
Meriplex
National Grid
New Jersey American Water
NRJ
PPL Electric Co
PSE&G
Ready Fresh
Reliant
The Connecticut Water Company
UGI Utilities
Waste Management
Windstream

**Bankruptcy Judges & Clerks**
Hon. Alfredo R. Pérez
Hon. Christopher M. Lopez
Hon. Eduardo V. Rodriguez
Hon. Jeffrey P. Norman
Hon. Marvin Isgur
Nathan Ochsner

**United States Trustee's Office**
  Houston, TX
Alethea Caluza
Alicia Barcomb

6

Alina Samko-Yu
Andrew Jimenez
Christopher R. Travis
Christy Simmons
Glenn Otto
Gwen Smith
Ha Nguyen
Ivette Gerhard
Jana Whitworth
Jayson B. Ruff
Linda Motton
Millie Aponte Sall
Samantha Chilton
Vianey Garza
Yasmine Rivera
  San Antonio, TX
Adrian Duran
Aubrey Thomas
Carey A. Tompkins
Erin Coughlin
Genny Henicke
Jeremy Flannery
Jessica L. Hanzlik
Jim Rose
Omar E. Jones
  Austin, TX
Carolyn Feinstein
Catherine L. Sughrue
Gary Wright
Rebekah Csabi
Shane P. Tobin
Tisha Savannah

### Exhibit 2

*Disclosures*

### Exhibit 2

1.  SSG has worked with Pillsbury Winthrop Shaw Pittman LLP, counsel for the Debtors, in

    other unrelated matters.

2.  SSG has worked with Gibbins Advisors LLC, chief restructuring officer and financial

    advisor to the Debtors, in other unrelated matters.

4902-1100-8846