## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Partners Pharmacy Services, LLC, *et al.*,[1] | Case No. 25-34698 (CML) |
| Debtors. | (Jointly Administered) |

## DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE (I) RETENTION AND EMPLOYMENT OF GIBBINS ADVISORS, LLC, AND (II) DESIGNATION OF RONALD M. WINTERS AS CHIEF RESTRUCTURING OFFICER

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on September 10, 2025 at 1:00 p.m. (prevailing Central Time) at the United States Court for the Southern District of Texas, 515 Rusk Street, Courtroom 401, Houston, Texas 77002. You may participate in the hearing either in person or by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Arrow Envoy Holdings, LLC (5695); Arrow Pharmacy Holdings, LLC (0080); Partners of Connecticut, LLC (1828); Partners of Massachusetts, LLC (2604); Partners of New York, LLC (0039); Partners of Pennsylvania, LLC (0841); Partners Pharmacy of Florida, LLC (9364); Partners Pharmacy of Maryland, LLC (0961); Partners Pharmacy of Texas, LLC (2017); Partners Pharmacy of Virginia, LLC (6232); Partners Pharmacy Services, LLC (9038); Partners Pharmacy Shell Point, LLC (1616); Partners Pharmacy, L.L.C. (4578); and Solutions Homecare, L.L.C. (1583). The Debtors' service address in these chapter 11 cases is 173 Bridge Plaza North, Fort Lee, NJ 07024.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this application (this "Application"):

## RELIEF REQUESTED

1.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), authorizing the Debtors to: (a) retain and employ Gibbins Advisors, LLC, ("Gibbins") as their financial advisor and (b) designate Ronald M. Winters, a managing director of Gibbins, as chief restructuring officer ("CRO"), in each case, effective as of the Petition Date and pursuant to the terms of the engagement letter between the Debtors and Gibbins, dated as December 19, 2023 (the "Engagement Letter").[2]  In support of this application, the Debtors rely on the declaration of Ronald M. Winters (the "Winters Declaration"), attached hereto as **Exhibit B**.

## JURISDICTION AND VENUE

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors consent to entry of an order in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]      The Engagement Letter is attached as **Exhibit 1** to the Winters Declaration (as defined herein).

4.      The bases for the relief requested are sections 327 and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Local Rules for the Southern District of Texas (the "Local Rules").

## BACKGROUND

1.      On August 13, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these cases.

2.      The Debtors serve the medication management needs of residents at skilled nursing facilities, assisted living communities, long-term care residences, long-term acute care hospitals, and institutional care facilities across the United States.  These services are delivered through a network of in-house pharmacies and supported by a range of advanced technologies and capabilities, including automation systems, infusion therapy technologies, compounding services, clinical decision-support tools, and a dedicated team offering clinical support services.

3.      Additional information about the Debtors, including their business operations, corporate and capital structure, and the events leading to the filing of these cases is detailed in the *Declaration of Ronald M. Winters in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

## GIBBINS'S QUALIFICATIONS

4.      Gibbins is a leading healthcare restructuring advisory firm and its professionals have more than three decades of experience as financial advisors.  The Debtors selected Gibbins

because of its extensive background in financial consulting, financial reporting, financial statements, and business valuations. Additionally, the Debtors value the firm's expertise and experience with similarly sized clients in chapter 11 cases.

5.      Ronald M. Winters is a co-founder, Principal, and authorized representative of Gibbins. Mr. Winters has over twenty-five years of experience specializing in restructuring, with more than twenty years focused on the healthcare industry, and has advised clients on business strategy and planning, financial analysis, cash management, crisis management, market analysis, and operational improvement, both in and out of court. Prior to founding Gibbins, Mr. Winters was a managing director at Healthcare Management Partners and before that a managing director in the healthcare industry group at Alvarez & Marsal. Prior engagements include serving as (a) chief restructuring officer of Comprehensive Pain Specialists, Forest Park Medical Center at Fort Worth, Jack Hughston Memorial Hospital (out of court restructuring), and Little River Healthcare; (b) financial advisor and subsequently chief wind-down officer and financial advisor to the Liquidation Trustee of Central Iowa Healthcare; (c) executive vice president for restructuring and treasury for Saint Vincent Catholic Medical Centers; (d) court-appointed receiver of Medical Development International; (e) the liquidation trustee of QHC Facilities; and (f) financial and restructuring advisor to various debtors and committees of unsecured creditors nationally. Mr. Winter is also currently the plan administrator of Absolut Facilities Management and leads Gibbins' receivership of Community Memorial Hospital (Hicksville, Ohio).

6.      Gibbins began providing financial advisory services to the Debtors on or about December 19, 2023, and was appointed as the Debtors' Chief Restructuring Officer on August 7, 2025. Since then, Gibbins has worked closely with the Debtors' management and other professionals (at various times and as needed by the Debtors) and has become familiar with the

Debtors' operations, debt structure, creditors, business, and related matters. As a result, Gibbins has developed knowledge and familiarity with the Debtors and their business that will allow them to provide effective and efficient services during these chapter 11 cases. The Debtors believe that Gibbins has the skills, qualifications, and expertise necessary to continue to assist the Debtors in its role as financial advisor in an efficient and cost-effective manner.

7. The Debtors submit that the designation of Ronald M. Winters as CRO and the retention of Gibbins on the terms and conditions set forth herein are necessary and appropriate, in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

<u>**SERVICES TO BE PROVIDED**</u>

8. On December 19, 2023, the Debtors entered into the Engagement Letter with Gibbins to assist in enhancing their financial and operational performance and to support its restructuring and reorganization efforts. The services to be performed by Gibbins are appropriate and necessary to enable the Debtors to execute their duties and strategies in these chapter 11 cases. Subject to further order of the Court, the Debtors request the employment and retention of Gibbins to render various services, including:

   a.   assisting the Debtors in performing a general financial review of historical and projected financial information;

   b.   assisting the Debtors in reviewing monthly financial statements and providing guidance on relevant matters;

   c.   assisting the Debtors with the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursements analysis of various asset and liability accounts, and providing an analysis of proposed transactions;

   d.   assisting the Debtors with communications and negotiations with lenders and other stakeholders regarding financial performance, strategy, and/or other topics relevant to the scope of this assignment;

e.     assisting the Debtors in evaluating, developing and summarizing restructuring or strategic alternatives for the Debtors' management;

f.     assisting the Debtors with transaction counterparty diligence support and negotiations with transaction counterparties in collaboration with the Debtors' management and the Debtors' other professionals; and

g.     assisting the Debtors during these chapter 11 cases, including to prepare and testify (if needed) during hearings in connection with DIP financing, asset sales, court filings, operational support, stakeholder negotiations, and a chapter 11 plan, all under the Debtors' management direction.

### No Duplication of Services

9.     The services provided by Mr. Winters and Gibbins will complement, and not duplicate, the services to be rendered by any other professionals retained in these chapter 11 cases. In particular, the Debtors have chosen SSG Advisors, LLC ("SSG") as their investment banker, and Gibbins has assured the Debtors that it will work closely with SSG to prevent any duplication of efforts in the course of Gibbins's engagement as financial advisor to the Debtors.

### Professional Compensation

10.     Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, the Debtors may retain Gibbins on reasonable terms and conditions.  The Debtors submit that the terms and conditions set forth in the Engagement Letter, which the Debtors understand are similar to the terms and conditions Gibbins offers to similar clients for similar services, are reasonable and should be approved.

11.     Gibbins charges for professional time based on each individual's position and the hours worked, applying the standard hourly rates below:

| Position | Hourly Rate |
| --- | --- |
| Managing Director / Principal[3] | $695 - $850 |
| Director / Senior Director | $525 - $650 |
| Associate / Senior Associate | $375 - $495 |
| Data Analyst | $225 - $325 |

---

[3]     The hourly rate for Ronald M. Winters is $810.00.

6

These rates are subject to adjustment at such times when Gibbins generally adjusts its standard hourly rates.  Changes in applicable hourly rates will be noted on Gibbins's invoices for the first time period in which the revised rates become effective.

12.     In addition to compensation for professional services rendered, Gibbins will seek reimbursement for reasonable out-of-pocket expenses incurred in connection with these chapter 11 cases, including the costs of travel, lodging, duplicating, computer research, messenger, and telephone charges.

13.     For billing purposes, Gibbins will keep time in one tenth hour increments.

COMPENSATION RECEIVED BY GIBBINS FROM THE DEBTORS

14.     Pursuant to the Engagement Letter, Gibbins received a retainer in the amount of $50,000 from the Debtors, which the Debtors supplemented on June 2, 2025 and August 8, 2025 by paying $180,000 and $225,000, respectively (collectively, the "Retainer").  Due to the ordinary course and unavoidable reconciliation of fees and WIP and submission of expenses immediately prior, and subsequent to the Petition Date, Gibbins may have incurred fees and reimbursable expenses related to the pre-petition period which remain unpaid.  Approval is sought from the Court for Gibbins to apply the retainer and advanced payments to these unpaid amounts.  Upon entry of an order approving the relief requested herein, Gibbins will apply the retainer and advanced payments to the unpaid amounts, and the Debtors will not owe Gibbins any sums for pre-petition services.

DISINTERESTEDNESS

15.     To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Winters Declaration, Gibbins (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) has no connection with the Debtors, their creditors,

7

other parties in interest, the attorneys or accountants of the foregoing, or the United States Trustee for the Southern District of Texas (the "U.S. Trustee") or any person employed by the U.S. Trustee; and (c) does not hold any interest adverse to the Debtors' estates.

16.     As set forth in further detail in the Winters Declaration, Gibbins has certain connections with creditors, equity security holders, and other parties in interest in these chapter 11 cases.  All of these matters, however, are unrelated to these chapter 11 cases.  Gibbins does not believe that any of these matters represent an interest materially adverse to the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or these chapter 11 cases.  To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Gibbins's retention are discovered or arise, the Debtors are advised that Gibbins will use reasonable efforts to promptly file a supplemental declaration with the Court.

## INDEMNIFICATION

17.     The Engagement Letter contains standard indemnification language (the "Indemnification Provisions") with respect to Gibbins's services including an agreement by the Debtors to indemnify the Gibbins' professionals acting as officers (the "Indemnified Professionals") to the same extent as the most favorable indemnification it extends to the Debtors' officers or directors, whether under the Debtors' bylaws, its certificate of incorporation, by contract or otherwise, and no reduction or termination in any of the benefits provided under any such indemnities shall affect the benefits provided to the Indemnified Professionals.

18.     The Indemnification Provisions are reasonable and customary for Gibbins and comparable firms providing financial advisory services.  The terms and conditions of the Indemnification Provisions were negotiated by the Debtors and Gibbins at arm's length and in good faith.  The Debtors submit that the Indemnification Provisions in the Engagement Letter,

8

viewed in conjunction with the other terms of Gibbins's proposed retention, are reasonable and in the best interest of the Debtors, their estates, and creditors, in light of the fact that the Debtors require Gibbins's services to maximize the success of their restructuring efforts.

**BASIS FOR RELIEF**

19.     In consideration of the size and complexity of their businesses, the Debtors seek to retain Gibbins and designate Mr. Winters as the Debtors' CRO for purposes of these chapter 11 cases, effective as of the Petition Date, under section 327(a) of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the Debtor in carrying out the Debtor's duties under this title."  11 U.S.C. § 327(a).  Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code, and provides that "a person is not disqualified for employment under section 327 of the Bankruptcy Code by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."

20.     The Debtors seek approval of the Engagement Letter, including the compensation described therein, pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).  Section 328 of the Bankruptcy Code permits the compensation of professionals, including consultants, on flexible terms that reflect the nature of their services and

9

market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in *In re Nat'l Gypsum Co.*, 123 F.3d 861, 862 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc.  Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d at 862 (footnote omitted).

21.     Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

FED. R. BANKR. P. 2014.

22.     The fee and expense structure under the Engagement Letter sets forth reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code.  The fee and expense structure under the Engagement Letter adequately reflects (a) the nature of the services to be provided by Gibbins and (b) fee and expense structures and indemnification provisions typically used by Gibbins and other leading financial advisory and consulting firms.  In addition, Gibbins is "disinterested" and all of its fees and expenses are subject to court approval in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and further orders of the Court.

23.     This application is filed within 30 days of the Petition Date and, pursuant to Local Rule 2014-1 and paragraph 47 of the Complex Case Procedures, is deemed contemporaneous with the Petition Date and entitled to relief effective as of the Petition Date.  *See* Local Bankr. R. 2014-1(b)(1) ("If an application for approval of the employment of a professional is made within 30 days of the commencement of that professional's provision of services, it is deemed contemporaneous."); Complex Case Procedures ¶ 47.

<u>NOTICE</u>

24.     Notice of this Application will be served on the following parties or their respective counsel: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the Debtors' thirty largest unsecured creditors (on a consolidated basis); (c) the Internal Revenue Service; (d) the United States Attorney's Office for the Southern District of Texas; (e) the state attorneys general for all states in which the Debtors conduct business; (f) Glenn Agre Bergman & Fuentes LLP, as counsel to CS One, LLC; (g) Allen Stovall Neuman & Ashton LLP, as counsel to Cardinal Health 110, LLC and Cardinal Health 112, LLC; (h) SSG; and (i) any party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(d).  Given the nature of the relief requested, no other or further notice need be given.

<u>CONCLUSION</u>

WHEREFORE, the Debtors respectfully request that this Court (a) enter an order, substantially in the form attached hereto as **<u>Exhibit A</u>**, authorizing the Debtors to employ and retain Gibbins, and (b) grant such other relief as the Court deems appropriate.

11

Dated: August 15, 2025         Respectfully submitted,
      Washington, DC

/s/ Patrick J. Potter
Patrick J. Potter (S.D. Tex. Fed. No. 3089812)
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1200 Seventeenth Street, NW
Washington, DC 20036
Telephone:(202) 663-8928
Facsimile: (202) 663-8007
Email:  patrick.potter@pillsburylaw.com

-and-

Dania Slim (S.D. Tex. Fed. No. 3049178)
Amy West (admitted *pro hac vice*)
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
31 West 52nd Street
New York, NY 10019
Telephone: (212) 858-1000
Facsimile: (212) 858-1500
Email:  dania.slim@pillsburylaw.com
       amy.west@pillsburylaw.com

-and-

L. James Dickinson (Tex. Bar. No. 24105805)
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
609 Main Street, Suite 2000
Houston, TX 77002
Telephone: (713) 276-7654
Facsimile: (713) 276-7373
Email: james.dickinson@pillsburylaw.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on August 15, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.  Additionally, the foregoing document will be served as set forth in a forthcoming affidavit filed by the Debtors' proposed claims agent.

*/s/ Patrick J. Potter*
Patrick J. Potter

## EXHIBIT A

*Proposed Order*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Partners Pharmacy Services, LLC, *et al.*,[1] | Case No. 25-34698 (CML) |
| Debtors. | (Joint Administration Requested) |

**ORDER AUTHORIZING THE (I) RETENTION AND EMPLOYMENT
OF GIBBINS ADVISORS, LLC, AND (II) DESIGNATION OF
RONALD M. WINTERS AS CHIEF RESTRUCTURING OFFICER**

Upon the application (the "Application")[2] of the Debtors for entry of an order pursuant to

sections 327(a), 328, and 1107(b) of title 11 of the United States Code (the "Bankruptcy Code"),

Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and

Rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the

"Local Rules") authorizing the Debtors to (a) retain and employ Gibbins Advisors, LLC,

("Gibbins") and (b) designate Ronald M. Winters, a managing director of Gibbins, as chief

restructuring officer ("CRO"), in each case, effective as of the Petition Date and pursuant to the

terms of the engagement letter between the Debtors and Gibbins, dated as December 19, 2023 (the

"Engagement Letter"), all as more fully set forth in the Application; and upon consideration of the

*Declaration of Ronald M. Winters in Support of the Debtors' Application for Entry of an Order*

*Authorizing the (I) Retention and Employment of Gibbins Advisors, LLC, and (II) Designation of*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Arrow Envoy Holdings, LLC (5695); Arrow Pharmacy Holdings, LLC (0080); Partners of Connecticut, LLC (1828); Partners of Massachusetts, LLC (2604); Partners of New York, LLC (0039); Partners of Pennsylvania, LLC (0841); Partners Pharmacy of Florida, LLC (9364); Partners Pharmacy of Maryland, LLC (0961); Partners Pharmacy of Texas, LLC (2017); Partners Pharmacy of Virginia, LLC (6232); Partners Pharmacy Services, LLC (9038); Partners Pharmacy Shell Point, LLC (1616); Partners Pharmacy, L.L.C. (4578); and Solutions Homecare, L.L.C. (1583). The Debtors' service address in these chapter 11 cases is 173 Bridge Plaza North, Fort Lee, NJ 07024.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Application.

*Ronald M. Winters as Chief Restructuring Officer* (the "Winters Declaration"), submitted in support of the Application; and this Court having reviewed the Application, the First Day Declaration, and the Winters Declaration; and the Court having jurisdiction over this matter in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of these cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court being satisfied that Gibbins is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required under section 327(a) of the Bankruptcy Code; and that Gibbins does not hold or represent an interest adverse to the Debtors' estates; and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and no objections having been filed to the Application; and it appearing that the relief requested in the Application is in the best interests of the Debtors, their estates, creditors, and other parties-in-interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT,**

1.     The Application is **GRANTED** as set forth herein.

2.     Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, Local Rules 2014-1 and 2016-1, and the Complex Case Procedures, the Debtors are authorized to (a) retain and employ Gibbins and (b) designate Ronald M. Winters as CRO of

2

the Debtors for purposes of these chapter 11 cases, effective as of the Petition Date, in accordance with the terms of the Engagement Letter.

3.      The terms of the Engagement Letter, including the compensation provisions and Indemnification Provisions, except as modified herein, are reasonable terms and conditions of employment and are hereby approved.

4.      Upon entry of this Order, Gibbins shall be empowered and authorized to provide financial-advisory services to the Debtors as set for in the Application and Engagement Letter, and Mr. Winters shall be empowered and authorized to carry out all duties and responsibilities as the Debtors' Chief Restructuring Officer.

5.      Gibbins shall file interim and final fee applications for allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable orders and procedures of this Court.  For billing purposes, the CRO and the other Gibbins professionals shall keep their time in one-tenth (1/10) hour increments.

6.      In the event that, during the pendency of these chapter 11 cases, Gibbins seeks reimbursement for any attorneys' fees and/or expenses, the invoices and supporting time records from such attorneys shall be included in Gibbins's fee applications and such invoices and time records shall be in compliance with the Local Rules and subject to approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such professional(s) have been retained under section 327 of the Bankruptcy Code; *provided, however*, that Gibbins shall not seek reimbursement from the Debtors' estates for any fees incurred in defending any of Gibbins's fee applications in these chapter 11 cases.

7.     Gibbins shall provide ten business days' notice to the Debtors, the U.S. Trustee, and any statutory committee appointed in these chapter 11 cases before any increases in the hourly rates set forth in the Application or the Engagement Letter are charged to the Debtors.  The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

8.     To the extent there is any inconsistency between the terms of the Engagement Letter, the Application, and this Order, the terms of this Order shall govern.

9.     The indemnification provisions contained in the Engagement Letter are approved subject to the following:

    a)  Gibbins shall not be entitled to indemnification, contribution, or reimbursement for services other than those described in the Engagement Letter and the Application, unless such services and indemnification therefor are approved by the Court; *provided* that to the extent additional engagement letter(s) are filed with the Court and no parties object to such engagement letter(s) within ten days, such engagement letter(s) shall be deemed approved by the Court;

    b)  The Debtors shall have no obligation to indemnify Gibbins, or provide contribution or reimbursement to Gibbins, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from Gibbins's gross negligence, willful misconduct, fraud, breach of fiduciary duty (if any), bad faith, or self-dealing; (ii) for a contractual dispute in which the Debtors allege the breach of Gibbins's contractual obligations, unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) immediately above, but determined by the Court, after notice and a hearing pursuant to subparagraph (c) to be a claim or expense for which Gibbins should not receive indemnity, contribution, or reimbursement under the terms of the Application and this Order; and

    c)  If, before the earlier of: (i) the entry of an order confirming a plan of reorganization in these chapter 11 cases (that order having become a final order no longer subject to appeal); and (ii) the entry of an order closing these chapter 11 cases, Gibbins believes that it is entitled to the payment of any amounts by

4

the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letter and this Order, including, without limitation, the advancement of defense costs, Gibbins must file an application therefor in this Court, and the Debtors may not pay any such amounts to Gibbins before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Gibbins for indemnification, contribution, and/or reimbursement, and not to limit the duration of the Debtors' obligation to indemnify Gibbins. All parties in interest shall retain the right to object to any demand by Gibbins for indemnification, contribution, and/or reimbursement.

d) Irrespective of subparagraphs (a)-(c) above, the Debtors are permitted to indemnify those persons serving as corporate officers on the same terms as provided to the Debtors' other directors and officers under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' director and officer insurance policies.

10.    Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of the Local Rules are satisfied by such notice.

11.    The terms and conditions of this Order are immediately effective and enforceable upon its entry.

12.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

13.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.


Signed:                                        _____
                                               Christopher M. Lopez
                                               United States Bankruptcy Judge

4935-8533-6656

## Exhibit B

*Winters Declaration*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Partners Pharmacy Services, LLC, *et al.*,[1] | Case No. 25-34698 (CML) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF RONALD M. WINTERS IN SUPPORT OF DEBTORS'**
**APPLICATION FOR AN ORDER AUTHORIZING THE (I) RETENTION AND**
**EMPLOYMENT OF GIBBINS ADVISORS, LLC AND (II) DESIGNATION OF**
**RONALD M. WINTERS AS CHIEF RESTRUCTURING OFFICER**

I, Ronald M. Winters, make this declaration (this "Declaration") pursuant to 28 U.S.C.

§ 1746, and state:

1.        I submit this Declaration on behalf of Gibbins Advisors, LLC ("Gibbins") in

support of the *Debtors' Application for Entry of an Order Authorizing the (I) Retention and*

*Employment of Gibbins Advisors, LLC, and (II) Designation of Ronald M. Winters as Chief*

*Restructuring Officer* (the "Application")[2] on the terms and conditions set forth in the Engagement

Letter, which is attached hereto as **Exhibit 1**.  This Declaration is being submitted in connection

with the Application.  Unless otherwise stated in this Declaration, I have personal knowledge of

the facts set forth herein.[3]

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Arrow Envoy Holdings, LLC (5695); Arrow Pharmacy Holdings, LLC (0080); Partners of Connecticut, LLC (1828); Partners of Massachusetts, LLC (2604); Partners of New York, LLC (0039); Partners of Pennsylvania, LLC (0841); Partners Pharmacy of Florida, LLC (9364); Partners Pharmacy of Maryland, LLC (0961); Partners Pharmacy of Texas, LLC (2017); Partners Pharmacy of Virginia, LLC (6232); Partners Pharmacy Services, LLC (9038); Partners Pharmacy Shell Point, LLC (1616); Partners Pharmacy, L.L.C. (4578); and Solutions Homecare, L.L.C. (1583).  The Debtors' service address in these chapter 11 cases is 173 Bridge Plaza North, Fort Lee, NJ 07024.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

[3]    Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at Gibbins and are based on information provided by them.

2.     I am the co-founder, Principal, and authorized representative of Gibbins and have served as the Debtors' CRO since December 19, 2023.  I have over twenty-five years of experience specializing in restructuring, with more than twenty years focused on the healthcare industry, and have advised clients on business strategy and planning, financial analysis, cash management, crisis management, market analysis, and operational improvement, both in and out of court.  Prior to founding Gibbins, I was a managing director at Healthcare Management Partners and before that a managing director in the healthcare industry group at Alvarez & Marsal.

3.     Gibbins is a leading healthcare restructuring advisory firm and has more than three decades of experience as financial advisors.  The Debtors selected Gibbins because of its extensive background in financial consulting, financial reporting, financial statements, business valuations, and taxation.  Additionally, the Debtors value the firm's specialization in small-to-medium sized operations and its familiarity and experience with similarly sized clients in chapter 11 cases.

## DISINTERESTEDNESS AND ELIGIBILITY

4.     Gibbins, together with its affiliates (the "Firm"), uses certain procedures (the "Firm Procedures") to determine Gibbins's relationships, if any, to parties that may have a connection to a client debtor.  In implementing the Firm Procedures, the following actions were taken to identify parties that may have connections to the Debtors and to determine the Firm's relationship with such parties.

a)  Gibbins requested and obtained from the Debtors extensive lists of interested parties and significant creditors (the "Potential Parties in Interest").[4]  The list of Potential Parties in Interest that Gibbins reviewed is annexed hereto as **Schedule A**.  The Potential Parties in Interest reviewed include, among others, the Debtors and their non-filing affiliates, pre-petition and proposed post-petition lenders, current and recent officers and directors, significant customers and suppliers, parties holding ownership interests in the Debtors, significant

---

[4]  As may be necessary, Gibbins will supplement this Declaration if it becomes aware of a relationship that may adversely affect Gibbins's retention in these cases or would otherwise require disclosure.

counterparties to material agreements, significant litigation claimants, and certain professionals related to the engagement.

b) Gibbins then compared the names of each of the Potential Parties in Interest to the names of the Firm's clients.

c) An email was issued to all Firm professionals requesting disclosure of information regarding (i) any known personal connections between the respondent and/or the Firm, on the one hand, and the parties identified on the Potential Parties in Interest, including the Debtors, on the other hand; (ii) any known connection or representation by the respondent and/or the Firm of any Potential Parties in Interest in matters relating to the Debtors; and (iii) any other conflict or reason why the Firm may be unable to represent the Debtors.

d) Known connections between former or recent clients of the Firm and the Potential Parties in Interest were compiled for purposes of preparing this Declaration. These connections are listed in **Schedule B** annexed hereto.

5.      As a result of the Firm Procedures, I have thus far ascertained that, except as may be set forth herein, upon information and belief, if retained, Gibbins:

a) is neither a creditor of the Debtors (including by reason of unpaid fees for pre-petition services), an equity security holder of the Debtors (except that Firm employees may own *de minimis* amounts representing not more than 0.01% of the equity interests in the related entity), nor an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code;

b) is not and has not been, within two years before the Petition Date, a director, officer (other than by virtue of Gibbins employees, both pre- and post-petition, as described in the Application), or an employee of the Debtors; and

c) does not have any interest materially adverse to the interests of the Debtors' estates, or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason.

6.      As can be expected with respect to any professional services firm, the Firm provides services to many clients with interests in chapter 11 cases. To the best of my knowledge, except as indicated below, the Firm's services for such clients do not relate to the Debtors' chapter 11 cases.

3

7.     Gibbins has worked on chapter 11 cases previously with (a) Edwin Clark, a representative of the Debtors; (b) Pillsbury Winthrop Shaw Pittman LLP, the Debtors' proposed chapter 11 counsel; (c) SSG Advisors, LLC, the Debtors' proposed investment bankers; and (d) Kroll Restructuring Administration LLC, the Court-approved claims agent in these chapter 11 cases, but all such matters are wholly unrelated to these chapter 11 cases.

8.     Further, as part of its diverse practice, the Firm appears in numerous cases and proceedings, and participates in transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who represent claimants and parties in interest in the Debtors' chapter 11 cases.  Moreover, the Firm has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of which may be involved in these proceedings.  Based on Gibbins's current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Debtors in matters upon which Gibbins is to be employed, and none are in connection with these cases.

9.     Accordingly, to the best of my knowledge, Gibbins is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, in that Gibbins: (a) is not a creditor, equity security holder, or insider of the Debtors; (b) was not, within two years before the Petition Date, a director, officer, or employee of the Debtors; and (c) does not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders.

10.     If any new material relevant facts or relationships regarding Gibbins's disinterestedness are discovered or arise, Gibbins will promptly file a supplemental declaration with the Court.

4

## COMPENSATION

11.     Subject to Court approval of the Application and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable orders of this Court, Gibbins will seek from the Debtors payment for compensation on an hourly basis, as well as reimbursement of actual and necessary expenses incurred by Gibbins.  Gibbins's customary hourly rates as charged in bankruptcy and non-bankruptcy matters of this type by the professionals assigned to this engagement are outlined in the Application and Engagement Letter. These hourly rates are adjusted at such times when Gibbins generally adjusts its standard hourly rates.

12.     To the best of my knowledge, (a) no commitments have been made or received by Gibbins with respect to compensation or payment in connection with these cases, other than in accordance with applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and (b) Gibbins has no agreement with any other entity to share with such entity any compensation received by Gibbins in connection with these chapter 11 cases.

13.     By reason of the foregoing, I believe that Gibbins is eligible for retention by the Debtors pursuant to the Bankruptcy Code and the applicable Bankruptcy Rules and Local Rules.

4935-8533-6656

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: August 15, 2025

**GIBBINS ADVISORS, LLC**

By:   */s/ Ronald M. Winters*
Name:  Ronald M. Winters
Title:   Managing Director

6

4935-8533-6656

## Exhibit 1

*Engagement Letter*



*As of* December 19, 2023

Partners Pharmacy Services, LLC
50 Lawrence Road
Springfield, New Jersey 07081
Attention: Chief Executive Officer

Ladies and Gentlemen:

This letter confirms and sets forth the terms and conditions of the engagement between Gibbins Advisors, LLC ("**GA**") and Partners Pharmacy Services, LLC (together with its affiliates, assigns and successors, the "**Company**"), including the scope of the services to be performed and the basis of compensation for those services. Upon (x) execution of this letter by each of the parties below, (y) receipt of the retainer described below, and (z) receipt of the Certificate of Insurance described paragraph 10 below, this letter will constitute an agreement between the Company and GA (the "**Agreement**").

1. Description of Services:

   (a) Officers.  In connection with this engagement, GA shall make available to the Company:

      i. **Ronald Winters** to serve as the Chief Restructuring Officer (the "CRO"; and

      ii. GA will provide additional GA professionals as required (collectively, with the CRO, the "Engagement Personnel"), to assist the CRO in the execution of the duties set forth more fully herein.

   (b) Duties.  GA shall provide the following consulting services to the Company at the direction of the Company's Board of Directors (the "**Board**"), with day-to-day direction given by Edwin Clark (the "**Responsible Officer**"), in connection with the Board's efforts in seeking to improve the Company's financial and operating performance and shall assist the Company its reorganization efforts. It  is anticipated that GA's activities shall include the following:

      i. Assistance in performing a general financial review of historical and projected financial information;

      ii. Assistance in review of the Company's monthly financial statements and guidance on relevant matters;

      iii. Assistance with developing (to the extent required), modifying and managing Company's 13-week cash flow projection;

      iv. Assistance with the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursements analysis of various asset and liability accounts, and analysis of

Partners Pharmacy Services, LLC
Attention: Chief Executive Officer
*As of* December 19, 2023

Page 2

<blockquote>
proposed transactions;
</blockquote>

    v.    Assistance with communications and negotiations with lenders and other stakeholders regarding financial performance, strategy, and/or other topics relevant to the scope of this assignment;

    vi.    Assistance in evaluating, developing and summarizing restructuring or strategic alternatives for the Board;

    vii.    Assistance with transaction counterparty diligence support and negotiations with transaction counterparties in collaboration with the Board and other Company professionals;

    viii.    Subject to the direction and instruction of the Board, evaluate the possibility of the Company commencing the Bankruptcy Cases and emerge from bankruptcy as effectively and efficiently as possible under the circumstances, and as necessary:

1. Assistance with preparation and negotiation of any cash collateral and/or Debtor in Possession (DIP) cash flow forecast and resultant cash and/or financing requirements;
2. Assist the Company in identifying, negotiating, and closing DIP financing;
3. Assist and support the Company in identifying, negotiating, and closing asset sales;
4. Assistance (in collaboration with counsel) with preparation of petitions and schedules and statements for bankruptcy filing;
5. Provide testimony and assist in development of reporting requirements in bankruptcy court;
6. Provide assistance to the operations and cashflow management during the bankruptcy process;
7. Provide assistance to management in evaluating and responding to parties during negotiations including landlords, vendors, potential buyers, and other key constituents;
8. Assist in the development of analysis related to lease assumptions, rejections, modification or terminations;
9. Assist the Company in interaction with the unsecured creditor or other committee(s) (if any); and
10. Assistance related to drafting and confirming a plan of reorganization, if necessary;

    ix.    Assistance with such other activities as are requested by the Company and agreed to by GA.

In rendering its services to the Company, GA will report directly to the Responsible Officer and the Board and will make recommendations to and consult with the Responsible Officer and other senior officers as the Board or the Responsible Officer directs.

(c)    The engagement will be led by **Ronald Winters**, a Principal of GA, and supported by other GA professionals.

Partners Pharmacy Services, LLC
Attention: Chief Executive Officer
*As of* December 19, 2023

Page 3

    (d)   In connection with the services to be provided hereunder, from time to time GA may utilize the services of employees of its affiliates and independent contractors.

    (e)   GA personnel providing services to the Company may also work with other GA clients in conjunction with unrelated matters.

2.  <u>Information Provided by the Company and Forward-Looking Statements</u>

The Company shall use all reasonable efforts to: (i) provide GA with access to management and other representatives of the Company; and (ii) furnish all data, material, and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that GA reasonably requests in connection with the services to be provided to the Company. GA shall rely, without further independent verification, on the accuracy and completeness of all publicly available information and all information that is furnished by or on behalf of the Company and reviewed by GA in connection with the services performed for the Company. The Company acknowledges and agrees that GA is not responsible for the accuracy or completeness of such information and shall not be responsible for any inaccuracies or omissions therein. GA is under no obligation to update data submitted to it or to review any other areas unless specifically requested by the Board to do so.

You understand that the services to be rendered by GA may include the preparation of projections and other forward-looking statements, and numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections. In addition, GA will be relying on information provided by the Company in the preparation of those projections and other forward-looking statements.

3.  <u>Limitation of Duties</u>

GA makes no representation or guarantee that, inter alia, (i) an appropriate restructuring proposal or strategic alternative can be formulated for the Company, (ii) any restructuring proposal or strategic alternative presented to the Company's management or the Board or the Responsible Officer will be more successful than all other possible restructuring proposals or strategic alternatives, (iii) restructuring is the best course of action for the Company, or (iv) if formulated, that any proposed restructuring plan or strategic alternative will be accepted by any of the Company's creditors or other stakeholders or constituents. Further, GA does not assume any responsibility for the Company's decision to pursue, or not to pursue, any business strategy, or to effect, or not to effect, any transaction. GA shall be responsible for assistance with the implementation only of the restructuring proposal or strategic alternative approved by the Board or the Responsible Officer and only to the extent and in the manner authorized by and directed by the Board or the Responsible Officer and agreed to by GA.

Partners Pharmacy Services, LLC
Attention: Chief Executive Officer
*As of* December 19, 2023

Page 4

4. <u>Compensation</u>

(a) For services described in Paragraph 1, GA will receive fees as follows:

 (i) For services for the period <u>prior to February 1, 2024</u>, GA shall receive fees of $10,000.

 (ii) For services other than described in paragraph 4(a)(i) (period commencing February 1, 2024) GA shall receive fees at the following hourly rates:

| Gibbins Advisors 2024 Rates | |
| --- | --- |
| **GA Professional\*** | **Hourly Rates\*\*** |
| Managing Director / Principal\*\*\* | $675 – $810 |
| Director / Senior Director | $495 – $635 |
| Associate / Senior Associate | $360 – $470 |
| Data Analyst | $200 – $305 |

 \* And contractors so designated by GA.
 \*\* Such rates adjusted at such times when GA generally
 adjusts it standard hourly rates.
 \*\*\* The hourly rate for Ronald Winters is $775.

(b) Fee shall be invoiced monthly or more frequently at the discretion of GA:

(c) In addition, GA will be reimbursed for its reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging, duplicating, computer research, messenger and telephone charges. All fees and expenses will be billed on a monthly basis or, at GA's discretion, more frequently. Invoices are payable upon receipt.

(d) The Company shall promptly remit to GA a retainer in the amount of $50,000, which shall be credited against any amounts due at the termination of this engagement and returned upon the satisfaction of all obligations hereunder.

5. <u>Term</u>

(a) This Agreement will apply from the commencement of the services referred to in Section 1 and may be terminated by either party without cause upon not less than 30 days' prior written notice to the other party.

(b) GA normally does not withdraw from an engagement unless its client (in this case, the Company) misrepresents or fails to disclose material facts, fails to pay fees or expenses, or makes it unethical or unreasonably difficult for GA to continue performance of the engagement, or unless other material cause exists. On termination of the Agreement, any fees and expenses due to GA shall be remitted promptly (including fees and expenses that accrued prior to but are invoiced subsequent to such termination), and any unexpended retainer shall be returned to the Company.

Partners Pharmacy Services, LLC
Attention: Chief Executive Officer
*As of* December 19, 2023

Page 5

    (c)   The provisions of this Agreement that give the parties rights or obligations beyond its termination shall survive and continue to bind the parties.

6. <u>Relationship of the Parties</u>

The parties intend that an independent contractor relationship will be created by this engagement letter. Neither GA nor any of its personnel or agents is to be considered an employee or agent of the Company and the personnel and agents of GA are not entitled to any of the benefits that the Company provides for the Company employees. The Company acknowledges and agrees that GA's engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, the SEC or other state or national professional or regulatory body.

7. <u>No Third Party Beneficiary.</u>

The Company acknowledges that all advice (written or oral) provided by GA to the Company in connection with this engagement is intended solely for the benefit and use of the Company (limited to its Board and management) in considering the matters to which this engagement relates. The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without GA's prior approval (which shall not be unreasonably withheld), except as required by law.

8. <u>Conflicts</u>

GA is not currently aware of any relationship that would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware. Because GA and its affiliates and contractors comprise a consulting firm (the "<u>Firm</u>") that serves clients on a global basis in numerous cases, both in and out of court, it is possible that the Firm may have rendered or will render services to or have business associations with other entities or people which had or have or may have relationships with the Company, including creditors of the Company. The Firm will not be prevented or restricted by virtue of providing the services under this Agreement from providing services to other entities or individuals, including entities or individuals whose interests may be in competition or conflict with the Company's, provided the Firm makes appropriate arrangements to ensure that the confidentiality of information is maintained.

9. <u>Confidentiality/Non-Solicitation</u>

GA shall keep as confidential all non-public information received from the Company in conjunction with this engagement, except: (i) as requested by the Company or its legal counsel; (ii) as required by legal proceedings; or (iii) as

Partners Pharmacy Services, LLC
Attention: Chief Executive Officer
*As of* December 19, 2023

Page 6

reasonably required in the performance of this engagement All obligations as
to non-disclosure shall cease as to any part of such information to the extent
that such information is or becomes public other than as a result of a breach of
this provision. The Company, on behalf of itself and its subsidiaries and
affiliates and any person which may acquire all or substantially all of its assets
agrees that, until two (2) years subsequent to the termination of this
engagement, it will not solicit, recruit, hire or otherwise engage any employee
of GA or any of its affiliates who worked on this engagement while employed
by GA or its affiliates ("**Solicited Person**"). Should the Company or any of its
subsidiaries or affiliates or any person who acquires all or substantially all of
its assets extend an offer of employment to or otherwise engage any Solicited
Person and should such offer be accepted, GA shall be entitled to a fee from
the Company equal to the Solicited Person's hourly client billing rate at the
time of the offer multiplied by 2,000 hours. The Company acknowledges and
agrees that this fee fairly represents the loss that GA will suffer if the
Company breaches this provision. The fee shall be payable at the time of the
Solicited Person's acceptance of employment or engagement.

10. Indemnification and Limitations on Liability

The attached indemnification and limitation on liability agreement is
incorporated herein by reference and shall be executed upon the acceptance of
this Agreement. Termination of this engagement shall not affect these
indemnification and limitation on liability provisions, which shall remain in
full force and effect.

The Company shall indemnify the Engagement Personnel acting as officers
(the "Indemnified Professionals") to the same extent as the most favorable
indemnification it extends to its officers or directors, whether under the
Company's bylaws, its certificate of incorporation, by contract or otherwise,
and no reduction or termination in any of the benefits provided under any
such indemnities shall affect the benefits provided to the Indemnified
Professionals. The Indemnified Professionals shall be covered as officers
under the Company's existing director and officer liability insurance policy.
As a condition of GA accepting this engagement, a Certificate of Insurance
evidencing such coverage shall be furnished to GA prior to the effective date
of this Agreement. The Company shall give thirty (30) days' prior written
notice to GA of cancellation, non-renewal, or material change in coverage,
scope, or amount of such director and officer liability policy. The Company
shall also maintain such insurance coverage for the Indemnified Professionals
for a period of not less than six years following the date of the termination of
the Indemnified Professionals' services hereunder. The provisions of this
section are in the nature of contractual obligations and no change in applicable
law or the Company's charter, bylaws or other organizational documents or
policies shall affect the Indemnified Professionals' rights hereunder. The
attached indemnity and limitation on liability provisions are incorporated

Partners Pharmacy Services, LLC
Attention: Chief Executive Officer
*As of* December 19, 2023

Page 7

herein and the termination of this agreement or the engagement shall not affect those provisions, which shall remain in full force and effect.

11. <u>Miscellaneous</u>

This Agreement (together with the attached indemnity provisions), including, without limitation, the construction and interpretation of thereof and all claims, controversies and disputes arising under or relating thereto, shall be governed and construed in accordance with the laws of the State of New York, without regard to principles of conflict of law that would defer to the laws of another jurisdiction. The Company and GA agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the engagement or the performance or non-performance of GA hereunder. The Company and GA agree, to the extent permitted by applicable law, that the United States District Court for the Southern District of New York (or, as applicable, the United States Bankruptcy Court for such District) shall have exclusive jurisdiction over any litigation arising out of this Agreement; to submit to the personal jurisdiction of the United States District and Bankruptcy Courts for the Southern District of New York; and to waive any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue within the State of New York for any litigation arising in connection with this Agreement.

This Agreement shall be binding upon GA and the Company, their respective heirs, successors, and assignees, and any heir, successor, or assignee of a substantial portion of GA's or the Company's respective businesses and/or assets, including any Chapter 11 Trustee. This Agreement incorporates the entire understanding of the parties with respect to the subject matter hereof and may not be amended or modified except in writing executed by the Company and GA. Notwithstanding anything herein to the contrary, GA may reference or list the Company's name and/or logo and/or a general description of the services in GA's marketing materials, including, without limitation, on GA's website.

*Please turn to following page*

Partners Pharmacy Services, LLC
Attention: Chief Executive Officer
*As of* December 19, 2023

Page 8

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge
your agreement with its terms.

Very truly yours,

GIBBINS ADVISORS, LLC

By: _____
      Ronald Winters
      Principal

Accepted & Agreed:

PARTNERS PHARMACY SERVICES,
LLC.

By: _____
      Name: EDWIN CLARK
      Title: CFO

# INDEMNIFICATION AGREEMENT

This indemnity is made part of an agreement, dated as of December 19, 2023 (which, together with any renewals, modifications or extensions thereof, is herein referred to as the "Agreement") by and between Gibbins Advisors, LLC ("GA") and Partners Pharmacy Services, LLC. and its affiliates, successors and assigns (collectively, the "Company").

A.      The Company agrees to defend, indemnify and hold harmless each of GA, its affiliates and their respective shareholders, members, managers, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others (including employees of GA, based on their then-current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, that such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct.  The Company also agrees that (a) no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the engagement of GA, except to the extent that any such liability for losses, claims, damages, liabilities or expenses is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct and (b) in no event will any Indemnified Party have any liability to the Company for special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity).  The Company further agrees that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

B.      These indemnification provisions shall be in addition to any liability which the Company may otherwise have to the Indemnified Parties, under the Agreement or otherwise. In the event that, at any time whether before or after termination of the engagement or the Agreement, as a result of or in connection with the Agreement or GA's and its personnel's role under the Agreement, GA or any Indemnified Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or GA or any of its personnel (including former employees) or any other Indemnified Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or

report on any material within such Indemnified Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Company will reimburse the Indemnified Party for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate the Indemnified Party for the time expended by its personnel based on such personnel's then-current hourly rate.

C.      If any action, proceeding or investigation is commenced as to which any Indemnified Party proposes to demand indemnification hereunder, such Indemnified Party will notify the Company with reasonable promptness; provided, however, that any failure by such Indemnified Party to notify the Company will not relieve the Company from its obligations hereunder, except to the extent that such failure shall have actually prejudiced the defense of such action.  The Company shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under the Agreement, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Each Indemnified Party hereby undertakes, and the Company hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor.  If any such action, proceeding or investigation in which an Indemnified Party is a party is also against the Company, the Company may, in lieu of advancing the expenses of separate counsel for such Indemnified Party, provide such Indemnified Party with legal representation by the same counsel who represents the Company, provided that such counsel is reasonably satisfactory to such Indemnified Party, at no cost to such Indemnified Party; provided, however, that if such counsel or counsel to the Indemnified Party shall determine that due to the existence of actual or potential conflicts of interest between such Indemnified Party and the Company such counsel is unable to represent both the Indemnified Party and the Company, then the Indemnified Party shall be entitled to use separate counsel of its own choice, and the Company shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefor.  Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense. The Company will be liable for any settlement of any claim against an Indemnified Party made with the Company's written consent, which consent shall not be unreasonably withheld.

D.      In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the relative fault of the Company, on the one hand, and the Indemnified Parties, on the other hand, in connection with the statements, acts or omissions which resulted in the losses, claims, damages, liabilities and costs giving rise to the indemnification claim and other relevant equitable considerations shall be considered; and further provided that in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnified Parties pursuant to the Agreement.  No person found liable

for a fraudulent misrepresentation shall be entitled to contribution hereunder from any person who is not also found liable for such fraudulent misrepresentation.

E.      In the event the Company and GA seek judicial approval for the assumption of the Agreement or authorization to enter into a new engagement agreement pursuant to either of which GA would be engaged by the Company, the Company shall promptly pay expenses reasonably incurred by the Indemnified Parties, including attorneys' fees and expenses, in connection with any motion, action or claim made either in support of or in opposition to any such retention or authorization, whether in advance of or following any judicial disposition of such motion, action or claim, promptly upon submission of invoices therefor and regardless of whether such retention or authorization is approved by any court.   The Company will also promptly pay the Indemnified Parties for any expenses reasonably incurred by them, including attorneys' fees and expenses, in seeking payment of all amounts owed it under the Agreement (or any new engagement agreement) whether through submission of a fee application or in any other manner, without offset, recoupment or counterclaim, whether as a secured claim, an administrative expense claim, an unsecured claim, a prepetition claim or a postpetition claim.

F.      Neither termination of the Agreement nor termination of GA's engagement nor the filing of a petition under Chapter 7 or 11 of the United States Bankruptcy Code (nor the conversion of an existing case to one under a different chapter) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.

G.      The rights provided herein shall not be deemed exclusive of any other rights to which the Indemnified Parties may be entitled under the charter documents, operating agreement or bylaws of the Company, any other agreements, any vote of equityholders or disinterested directors or managers of the Company, any applicable law or otherwise.

PARTNERS PHARMACY SERVICES, LLC.
on behalf of itself and its affiliates

GIBBINS ADVISORS, LLC

By: _____
    Name:   Edwin Clank
    Title:   CFO

By: _____
    Ronald M. Winters
    Principal

## <span style="text-decoration: underline;">SCHEDULE A</span>

*Potential Parties in Interest*

## POTENTIAL PARTIES IN INTEREST

**Debtors**
Arrow Envoy Holdings, LLC
Arrow Pharmacy Holdings LLC
Partners of Connecticut, LLC d/b/a Partners Pharmacy
Partners of Florida, LLC d/b/a Advanced Pharmacy
Partners of Massachusetts, LLC
Partners of New York, LLC
Partners of Pennsylvania, LLC
Partners Pharmacy of Maryland, LLC d/b/a Advanced Pharmacy
Partners Pharmacy of Texas, LLC d/b/a Advanced Pharmacy
Partners Pharmacy of Virginia, LLC
Partners Pharmacy Services, LLC f/k/a Aveta Pharmacy Services, LLC
Partners Pharmacy Shell Point, LLC
Partners Pharmacy, L.L.C. d/b/a Discover RX
Solutions Homecare, L.L.C.

**Non-Debtors Affiliates**
Care One Ancillary Holdings, LLC
Care One, LLC
Health Resources Partners, LLC
HRP Capital Inc.
North American Medical Management-New Jersey, Inc.

**Prospective Buyer**
CS One, LLC

**Secured Creditors/Lenders**
CS One, LLC
Cardinal Health 110, LLC d/b/a ParMed Pharmaceuticals*
Cardinal Health 112, LLC
Cardinal Health, Inc.

**Banks**
First Citizens Bank

**Current Directors & Officers**
Daniel E. Straus
David Baruch
Derek Corriveau
James Matthews
Joseph S. Straus
Harvey Tepner

**Former Directors & Officers**
Anthony Spero

4935-8533-6656

Patrick Downey
Thomas McKinney

**Current Shareholders**
Care Solutions, LLC (f/k/a Aveta Ancillary Services, LLC)

**Top 30 Unsecured Creditors**
24/7 Xpress Enterprises, LLC
50 Lawrence EFP LLC
Access
Allied Medical Waste
ANDA
Baxter Healthcare Corp
CAPSA Solutions, LLC
Cardinal Health 110, LLC d/b/a ParMed Pharmaceuticals*
Central Admixture Pharmacy Service, Inc.
CohnReznick LLP
First Financial Corporate Leasing, LLC
Integrated Medical Systems Inc.
Interchange RX, LLC
Kasowitz Benson Torres LLP
Kinray Inc
Konica Minolta
McKesson Corporation.
Medbank
Medline Industries, Inc
Meriplex Solutions, LLC
Moderna US Inc
Omnicell Inc
Partners Acquisition SRX LLC
PointClickCare, Inc
RemedyRepack, Inc
SoftWriters, INC.
Specialty RX, Inc.
StatimRx, LLC
Strategic Delivery Solutions, LLC
Trinity Healthcare Solutions, LLC
Wells Fargo Vendor Financial Services LLC

**Significant Customers**
Care One Management, LLC
Division of Developmental Disabilities of the New Jersey Department of Human Services
Division of Behavioral Health Services of the New Jersey Department of Health
New Jersey Department of Military and Veterans Affairs

**Insurance**
Arch Insurance Company
Continental Insurance Company of New Jersey
Corvus
Liberty Mutual
Safety National Casualty Group
The Standard Insurance

**Landlords**
Aster Group
CBRE (CP Oakley)
Eckstein Properties LLC
Industrial Builders & Realty
Somerset Properties, Inc.

**Litigation Parties**
Anda, Inc.
Dawn-Michele Blalock
Estate of Richard Francis Rogan
Integrated Medical Systems, Inc.
McKesson Corporation
McKesson Medical-Surgical Minnesota Supply Inc.
Nevada Generation Strategic, LLC d/b/a Nevada Infusion

**Ordinary Course Professionals**
Ranalli & Zaniel, PC
The Denver Law Firm

**Debtors' Professionals**
Kroll Restructuring Administration LLC
Pillsbury Winthrop Shaw Pittman LLP
Gibbins Advisors, LLC
SSG Advisors, LLC

**Taxing & Regulatory Authorities**
Albert Uresti, Bexar County Tax Assessor/Collector (Texas)
Aldine Independent School District (Texas)
Ann Harris Bennett, Tax Assessor-Collector (Texas)
Bexar County Tax Assessor/Collector (Texas)
Bloomfield Tax Collector (Connecticut)
Brazoria Co. M.U.D. No. 17 (Texas)
Cameron County Tax Assessor/Collector (Texas)
Carmen P. Turner, Fort Bend County Tax Assessor/Collector (Texas)
City Of Garland (Texas)
City of Marlborough (Massachusetts)
City of Newton Treasury Department (Massachusetts)

Clear Creek I.S.D. Tax Office (Texas)
Collin County Tax Assessor/Collector (Texas)
Dallas County Tax Office (Texas)
Dennis W. Hollingsworth, St. Johns County Tax Collector (Florida)
El Paso County Tax Assessor/Collector (Texas)
Ellis County Tax Assessor/Collector (Texas)
Fairfax County Department of Tax Administration (Texas)
Fort Bend CO. M.U.D. #50 (Texas)
Fort Bend County Tax Assessor/Collector (Texas)
Galveston County Tax Assessor/Collector (Texas)
Harris County Tax Assessor/Collector (Texas)
Hays County Tax Assessor/Collector (Texas)
Hill Cad Tax Collections, Mike McKibben, TX Assessor/Collector
Hill County Tax Assessor/Collector (Texas)
Hill County Tax Office (Texas)
Hillsborough County Tax Collector (Florida)
Jim Overton, Duval County Tax Collector (Florida)
John Power, Alachua County Tax Collector (Texas)
John R. Ames, Tax Assessor/Collector (Texas)
Johnson County Tax Assessor/Collector (Texas)
Kenneth L. Maun, McKinney (Texas)
Kristin R. Bulanek, Brazoria County Tax Assessor/Collector (Texas)
Lee County Tax Collector (Florida)
Limestone County Tax Assessor/Collector (Texas)
Llano County Tax Assessor/Collector (Texas)
Lubbock County Tax Assessor/Collector (Texas)
Manatee County Tax Collector (Florida)
McLennan County Tax Assessor/Collector (Texas)
Mesquite Tax Office (Texas)
Michelle French, Denton County Tax Assessor/Collector (Texas)
Monica Madrigal, Webb County Assessor/Collector(Texas)
Montgomery County Tax Assessor/Collector (Texas)
New Jersey Department of Revenue
Orange County Tax Collector (Florida)
Pinellas County Tax Collector (Texas)
Polk County Tax Collector (Florida)
Randy H. Riggs, McLennan County Tax Assessor/Collector (Texas)
Richardson Independent School District Tax Office (Texas)
Rockwall County Tax Assessor/Collector (Texas)
Scott Porter, Johnson County, Tax Assessor/Collector (Texas)
Seminole County, Tax Collector (Florida)
Sharon W. Jordan, Suwannee County Tax Collector (Florida)
Somervell County, Tax Assessor/Collector (Texas)
South Fire District (Connecticut)
Tammy J. McRae (Texas)
Tarrant County Tax Assessor/Collector (Texas)

Texas City I.S.D. Tax Office (Texas)
Texas Comptroller of Public Accounts
Town of Chatham Treasurer/Tax Collector (Massachusetts)
Town of Farmington (Connecticut)
Town of Marlborough Tax Collector's Office (Massachusetts)
Town of Wytheville Treasurer's Office (Virginia)
United States Treasury
Washington County Treasurer's Office (Virginia)
Whitney I.S.D. Tax Office (Texas)
Wichita County Tax Assessor/Collector (Texas)
Will Roberts, Volusia County Tax Collector (Florida)
Williamson County Tax Assessor/Collector (Texas)
Woodlands Metro Center M.U.D. (Texas)

**Utility Providers**
ADT Commercial LLC d/b/a Everon
Confires Fire Protection
Connecticut Natural Gas Corp.
Eversource
Fluent Stream
JCP&L
Meriplex
National Grid
New Jersey American Water
NRJ
PPL Electric Co
PSE&G
Ready Fresh
Reliant
The Connecticut Water Company
UGI Utilities
Waste Management
Windstream

**Bankruptcy Judges & Clerks**
Hon. Alfredo R. Pérez
Hon. Christopher M. Lopez
Hon. Eduardo V. Rodriguez
Hon. Jeffrey P. Norman
Hon. Marvin Isgur
Nathan Ochsner

**United States Trustee's Office**
  Houston, TX
Alethea Caluza
Alicia Barcomb

4935-8533-6656

Alina Samko-Yu
Andrew Jimenez
Christopher R. Travis
Christy Simmons
Glenn Otto
Gwen Smith
Ha Nguyen
Ivette Gerhard
Jana Whitworth
Jayson B. Ruff
Linda Motton
Millie Aponte Sall
Samantha Chilton
Vianey Garza
Yasmine Rivera
   San Antonio, TX
Adrian Duran
Aubrey Thomas
Carey A. Tompkins
Erin Coughlin
Genny Henicke
Jeremy Flannery
Jessica L. Hanzlik
Jim Rose
Omar E. Jones
   Austin, TX
Carolyn Feinstein
Catherine L. Sughrue
Gary Wright
Rebekah Csabi
Shane P. Tobin
Tisha Savannah

## <u>SCHEDULE B</u>

*Disclosures*

| **Disclosure of Relationship**[1] | **Potential Parties in Interest** |
|---|---|
| Gibbins Advisors ("GA") and/or GA professionals (at GA or at prior employer(s)) have been involved in matters (as advisor or interim management of a company, or advisor to a committee or secured lender) in which the entity has been a vendor to the subject company | <ul><li>Cardinal entities</li><li>Konica Minolta</li><li>McKesson entities</li><li>Medline Industries</li><li>Partners Acquisition SRX LLC[2]</li><li>PointClick Care</li><li>Specialty RX, Inc.[2]</li><li>United States Treasury[3]</li><li>Wells Fargo</li><li>Waste Management</li></ul> |
| GA and/or GA professionals (at GA or prior at prior employer(s)) have been involved in a matter where this individual controlled the client | <ul><li>Daniel E. Straus</li></ul> |
| GA and/or GA professionals (at Gibbins or at prior employers) have been involved in matters in which the entity has been a professional or governmental entity | <ul><li>Kroll Restructuring Administration LLC</li><li>Pillsbury Winthrop Shaw Pittman LLP</li><li>SSG Advisors, LLC</li><li>Kasowitz Benson Torres LLP</li><li>CohnReznick LLP</li><li>United States Trustee's Office (Austin; Shane Tobin)</li></ul> |
| Entity is a previous and current GA client (through counsel) | <ul><li>First Citizens Bank</li></ul> |
| Individual was supervisor of GA Principal Ronald Winters at an earlier employer | <ul><li>Harvey L. Tepner</li></ul> |

---

[1]   GA will supplement the disclosure if it becomes aware of other relationships.
[2]   In connection with pre-petition engagement with Debtors.
[3]   In addition, GA and GA professionals on this engagement file tax returns and/or pay taxes to the United States of America.